## DECLARATION OF RYAN ROLLINSON

I, Ryan Rollinson, declare as follows:

1. I am a resident of the State of Illinois. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2. I am currently employed by the Illinois Department of Human Services (IDHS) as the Chief of Staff for the Division of Mental Health (DMH).

3. As DMH Chief of Staff, I am responsible for overseeing all operations of the division, which includes funding mental health centers and providers, operating seven state psychiatric hospitals and the Treatment and Detention Center, and providing a statewide safety net for individuals experiencing mental illness.

4. Our agency recently received four award terminations from the U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration (SAMHSA). Two of the terminated awards had already reached their end date at the time of the termination notice, but two awards (with a total value greater than $50 million) were still in effect. All terminations were "for cause" based on the end of the COVID pandemic, rather than failure of IDHS to follow the terms or conditions of the grants. Each award termination uses the same identical form language stating that "[t]hese grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants. Now that the pandemic is over, the grants are no longer necessary." Descriptions of the two awards terminated before their end date and the effects of these terminations follow.

**Community Mental Health Block Grant (ARPA)**

5.      In May 2021, SAMHSA awarded IDHS a Community Mental Health Services Block Grant for the period of September 1, 2021 through September 30, 2025. The total amount of the award was $50,217,012.

6.      SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments, dated May 17, 2021, is attached as Exhibit A.

7.      Since September 2021, IDHS has used the ARPA Community Mental Health Block Grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and IDHS's grant application.

8.      IDHS has expended funds from this grant to support two critical mental health programs across Illinois. The first program is a mobile crisis response service, providing a continuum of services for individuals experiencing mental health crises. The second program supports individuals who have experienced "first episode psychosis," using a specialized treatment approach for individuals between the ages of 14 and 40 to promote recovery, reduce the chance of relapse, and improve the long-term course of the illness. Dozens of providers across the state depend on IDHS's grant funding to provide these critical services every day.

9.      As of March 24, 2025, the ARPA Community Mental Health Block Grant awarded to IDHS had $20,500,716 remaining in funds committed by SAMHSA. IDHS intended to expend $19,155,650 of those funds by the grant's end date of September 30, 2025, in order to continue funding mobile crisis response and first episode psychosis services in Illinois. IDHS also planned to use these funds to satisfy its obligations to providers for work performed before

March 24, 2025, who would ordinarily have been paid through a draw-down of those funds but for the notice of grant termination.

10.     IDHS has fully performed all of its obligations with respect to this grant, including making timely submissions to SAMHSA and complying with the terms and conditions set forth in the notice of grant award.

11.     On March 24, 2025, without any prior notice or indication, SAMHSA informed IDHS that effective that same day its ARPA Mental Health Block Grant was being terminated. A true and correct copy of the grant award termination correspondence is attached as Exhibit B.

12.     SAMHSA's purported basis for the grant termination was that SAMHSA sought to "reduce the overall Federal spending," stating that "the pandemic is over[ and] the grants are no longer necessary." SAMHSA provided no further information or clarification about the basis for the termination of this grant.

13.     SAMHSA subsequently provided a superseding notice of termination on March 28, 2025, that repeated the same purported justification for the grant termination.

14.     The process by which SAMHSA notified IDHS of this grant termination was unusual in that IDHS was not provided with any other notice or warning from any contacts at SAMHSA, who in the past have typically notified IDHS before sending similar notices. The notice was also unusual because it was not signed by any particular SAMHSA official.

15.     IDHS relied and acted upon its expectation and understanding that HHS would fulfill its commitment to provide ARPA Mental Health Block Grant funding it had awarded to IDHS. The lack of any prior notice and the sudden, same-day termination of the anticipated funding has caused IDHS hardship in the administration of the programs supported by that funding. For example, IDHS does not know whether it can fulfill its outstanding obligations to

providers who performed work in the programs funded by this grant before the date of termination.

16.     The termination of this grant will cause severe and irrevocable harm to individuals in Illinois. The ARPA Mental Health Block Grant funding supported mobile crisis response units that assist people at risk of suicide. Without that funding, providers will simply be unable to help people in suicidal crisis. And individuals who would otherwise qualify for assistance pursuant to the "first episode psychosis" program will not receive the care they need, increasing the risk that they will suffer more severe or recurring mental health crises.

17.     Before the grant award termination on March 24, 2025, SAMHSA had never provided IDHS with notice, written or otherwise, that the grant administered by IDHS was in any way unsatisfactory.

**Community Mental Health Block Grant (ARPA Mitigation)**

18.     In August 2021, SAMHSA awarded IDHS an ARPA Mitigation Block Grant for the period of September 1, 2021 through September 30, 2025. The total amount of the award was $1,728,152.

19.     SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments, dated August 10, 2021, is attached as Exhibit C.

20.     Since September 2021, IDHS has used the ARPA Mitigation Block Grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and IDHS's grant application.

21.     IDHS has expended funds from this grant to offer personal protective equipment and other virus-mitigation materials to mental health and substance use disorder community

providers. The purpose of this program is to ensure that providers offering critical mental health and other services to patients can minimize the spread of dangerous respiratory illnesses.

22.     As of March 24, 2025, the ARPA Mitigation Block Grant awarded to IDHS had $295,424 remaining in funds committed by SAMHSA. IDHS intended to expend $105,511 of those funds by the grant's end date of September 30, 2025, in order to continue offering personal protective equipment and similar materials to medical providers.

23.     IDHS has fully performed all of its obligations with respect to this grant, including making timely submissions to SAMHSA and complying with the terms and conditions set forth in the notice of grant award.

24.     On March 24, 2025, without any prior notice or indication, SAMHSA informed IDHS that effective that same day its ARPA Mitigation Block Grant was being terminated. A true and correct copy of the grant award termination correspondence is attached as Exhibit D.

25.     SAMHSA's purported basis for the grant termination was that SAMHSA sought to "reduce the overall Federal spending," stating that "the pandemic is over[ and] the grants are no longer necessary." SAMHSA provided no further information or clarification about the basis for the termination of this grant.

26.     SAMHSA subsequently provided a superseding notice of termination on March 28, 2025, that repeated the same purported justification for the grant termination.

27.     The process by which SAMHSA notified IDHS of this grant termination was unusual in that IDHS was not provided with any other notice or warning from any contacts at SAMHSA, who in the past have typically notified IDHS before sending similar notices. The notice was also unusual because it was not signed by any particular SAMHSA official.

28.     The termination of this grant will cause severe and irrevocable harm to individuals in Illinois. The ARPA Mitigation Block Grant funding supported the provision of critical supplies to medical providers to reduce the risk of respiratory infection. Numerous respiratory illness, including COVID-19 and many others, pose ongoing risks to individuals throughout Illinois, including medical providers. IDHS's role in providing personal protective equipment and other materials to providers offering critical medical services is essential to ensure that those providers can continue to safely and effectively care for their patients.

29.     Before the grant award termination on March 24, 2025, SAMHSA had never provided IDHS with notice, written or otherwise, that the grant administered by IDHS was in any way unsatisfactory.

30.     SAMHSA's immediate and sudden termination of both the ARPA Mental Health Block Grant and the ARPA Mitigation Block Grant undermines vital programs and threatens IDHS' ability to fulfill its role in protecting mental and public health in Illinois.


I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 28, 2025, in Chicago, Illinois.

_____
Ryan Rollinson

# Exhibit A

Department of Health And Human Services
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, ILLINOIS DEPARTMENT OF
100 S GRAND AVE E

SPRINGFIELD, IL 62704

**2. Congressional District of Recipient**
13

**3. Payment System Identifier (ID)**
1364163567A1

**4. Employer Identification Number (EIN)**
364163567

**5. Data Universal Numbering System (DUNS)**
067919071

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
David  Albert

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Mental Health Services
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Steven  Fry

Center for Mental Health Services
Steven.Fry@samhsa.hhs.gov
240-276-0567

## Federal Award Information

**11. Award Number**
1B09SM085355-01

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085355

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

| Summary Federal Award Financial Information | |
|---|---:|
| **19. Budget Period Start Date** 09/01/2021 **– End Date** 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $50,217,012 |
| 20 a.  Direct Cost Amount | $50,217,012 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $50,217,012 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $50,217,012 |
| **26. Project Period Start Date** 09/01/2021 **– End Date** 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $50,217,012 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.



Notice of Award

MHBG                                                                      **Issue Date:**   05/17/2021
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Mental Health Services

**Award Number:**  1B09SM085355-01
**FAIN:**          B09SM085355-01
**Contact Person:** David  Albert

**Program:** Block Grants for Community Mental Health Services

HUMAN SERVICES, ILLINOIS DEPARTMENT OF
100 S GRAND AVE E

SPRINGFIELD, IL 62704

**Award Period:**  09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a
grant in the amount of      $50,217,012 (see "Award Calculation" in Section I) to
HUMAN SERVICES, ILLINOIS DEPARTMENT OF in support of the above referenced
project. This award is pursuant to the authority of Subparts I&III,B,Title XIX,PHS
Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of
other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the
grantee when funds are drawn down or otherwise obtained from the grant payment
system.

If you have any questions about this award, please contact your Grants Management
Specialist and your Government Project Officer listed in your terms and conditions.

Sincerely yours,
Odessa  Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B09SM085355-01

| | |
|---|---|
| **FEDERAL FUNDS APPROVED:** | $50,217,012 |
| **AMOUNT OF THIS ACTION (FEDERAL SHARE):** | $50,217,012 |
| **CUMULATIVE AWARDS TO DATE:** | $50,217,012 |
| **UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:** | $0 |

**Fiscal Information:**

| | |
|---|---|
| **CFDA Number:** | 93.958 |
| **EIN:** | 1364163567A1 |
| **Document Number:** | 21B1ILCMHSC6 |
| **Fiscal Year:** | 2021 |

| IC | CAN | 01 |
|----|-----|-----|
| SM | C96D540 | $50,217,012 |

**PCC:** CMHS / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –    1B09SM085355-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B09SM085355-01

### STANDARD TERMS AND CONDITIONS

**MHBG FY2021 ARPA funding**

  **Remarks:**

This Notice of Award (NoA) provides American Rescue Plan Act of 2021 (ARPA) funding for the Community Mental Health Services (MHBG) Block Grant Program, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2]. Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to coronavirus.

A proposal of the state's spending plan must be submitted by July 2, 2021 via the Web Block Grant Application System (WebBGAS).

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, grantees are required to upload the Plan document (Microsoft Word or pdf), using the associated tab in the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [MH]. Please title this document "ARPA Funding Plan 2021-MH". States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system.

Further information on this is included in the letter from Acting Assistant Secretary for Mental Health and Substance Use, Tom Coderre

**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a MHBG. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**Certification Statement:** By drawing down funds, The recipient agrees to abide by the statutory requirements of all sections of the Mental Health Block Grant (MHBG) (Public Health Service Act, Sections 1911-1920 and sections 1941-1957) (42 U.S.C. 300x-1-300x-9 and 300x-51-300x-67, as amended), and other administrative and legal requirements as applicable for the duration of the award.

**2) Official Form Designee**

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the MHBG Program Officer must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

**3) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**4) Fiscal and administrative requirements**

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

**Fiscal control and accounting procedures** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

ARPA funding is being issued under a separate grant award number and has a unique subaccount in the Payment Management System.  Accordingly, ARPA funds must be tracked and reported separately from  other FY 2021 awarded funds, including COVID-19 Supplemental funding and the Annual Block Grant Allotment.

**Audits** - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

### 5) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351-75.353, Sub-recipient monitoring and management.

### 6) Early Serious Mental Illness Set-Aside

The 21st Century Cures Act, P.L. 114-255 amended Section 1920(c) of the Public Health Service Act (42 U.S.C. 300x 9(c)).   States must set-aside not less than 10 percent of their total MHBG allocation amount for each fiscal year to support evidence-based programs that address the needs of individuals with early serious mental illness, including psychotic disorders, regardless of the age of the individual at onset. In lieu of expending 10 percent of the amount, the State receives for a fiscal year, states have the flexibility to expend not less than 20 percent of such amount by the end of the succeeding fiscal year.

### 7) Executive Pay

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level.  However, no additional funds will be provided to these grant awards.

### 8) Marijuana Restriction:

Grant funds may not be used, directly or indirectly, to purchase, prescribe, or provide marijuana or treatment using marijuana. Treatment in this context includes the treatment of opioid use disorder. Grant funds also cannot be provided to any individual who or organization that provides or permits marijuana use for the purposes of treating substance use or mental disorders. See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended . . . in full accordance with U.S. statutory . . . requirements.); 21 U.S.C. 812(c) (10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana). This prohibition does not apply to those providing such treatment in the context of clinical research permitted by the DEA and under an FDA-approved investigational new drug application where the article being evaluated is marijuana or a constituent thereof that is otherwise a banned controlled substance under federal law.

### 9) SAM and DUNS Requirements

THIS AWARD IS SUBJECT TO REQUIREMENTS AS SET FORTH IN 2 CFR 25.110 CENTRAL CONTRACTOR REGISTRATION CCR) (NOW SAM) AND DATA UNIVERSAL NUMBER SYSTEM (DUNS) NUMBERS. 2 CFR Part 25 - Appendix A4
System of Award Management (SAM) and Universal Identifier Requirements
A. Requirement for System of Award Management:
Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.
B. Requirement for unique entity identifier If you are authorized (reference project description) to make subawards under this award, you:
1. Must notify potential subrecipients that no entity (see definition in paragraph C of this award term) may receive a subaward from you, unless the entity has provided its unique entity identifier to you.
2. May not make a subaward to an entity, unless the entity has provided its unique entity identifier to you.
C. Definitions. For purposes of this award term:
1. System of Award Management (SAM) means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found at the SAM Internet site (currently at: http://www.sam.gov).
2. Unique entity identifier means the identifier required for SAM registration to uniquely identify business entities.
3. Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:
a. A governmental organization, which is a state, local government, or Indian Tribe; b. A foreign public entity; c. A domestic or foreign nonprofit organization; d. A domestic or foreign for-profit organization; and e. A Federal agency, but only as a sub-recipient under an award or sub-award to a nonfederal entity.
4. Sub-award:

a. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible sub-recipient. b. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.330). c. A sub-award may be provided through any legal agreement, including an agreement that you consider a contract.

5. Sub-recipient means an entity that: a. Receives a sub-award from you under this award; and b. Is accountable to you for the use of the federal funds provided by the sub-award.

**10) Federal Financial Accountability and Transparency Act (FFATA)**

Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170

a. Reporting of first tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170. 320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation

information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b. 1. of this award term:

i. As part of your registration profile at https://www.sam.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if

i. in the subrecipient's preceding fiscal year, the subrecipient received (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c. 1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in 2 CFR part 25:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. __. 210 of the attachment to OMB Circular A-133, Audits of States, Local Governments, and Nonprofit Organizations).

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that: i. Receives a subaward from you (the recipient) under this award; and ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified. vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000. [75 FR 55669, Sept. 14, 2010, as amended at 79 FR 75879, Dec. 19, 2014]

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information

related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

### 12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:  a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the

use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

**15) Accessibility Provisions**

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

**16) Audits**

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.
Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

**Reporting Requirements:**

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual

responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

### Annual Report

Reporting on the ARPA funding is required.  States must prepare and submit their respective reports utilizing WebBGAS.  Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of MHBG grants.

Your assigned MHBG Program Official will provide further guidance and additional submission information.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

### Staff Contacts:

Steven  Fry, Program Official
**Phone**: 240-276-0567  **Email**: Steven.Fry@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

# Exhibit B

**Hazinski, John**

| | |
|---|---|
| **From:** | Albert, David  <David.Albert@Illinois.gov> |
| **Sent:** | Monday, March 24, 2025 6:23 PM |
| **To:** | Blair, Tiffany; Morrow, Adam; Schomberg, John F; Khatkhate, Priya; Wellbaum, Joseph; Grindle, Robert J. |
| **Cc:** | Rollinson, Ryan; Dunlap, Brock |
| **Subject:** | FW: [External] B09SM085355: Termination Notice for COVID-19 Grant Funding |

#3 of 3.

David Albert, PhD (he/him/his)
Director, Division of Mental Health
Illinois Department of Human Services
401 South Clinton St., 2nd Floor
Chicago, IL 60607
Office: (312) 793-1326
Mobile: (312) 533-1864
Fax: (312) 814-2964
Email: david.albert@illinois.gov

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Monday, March 24, 2025 4:50 PM
**To:** Albert, David <David.Albert@Illinois.gov>
**Cc:** Kisha.Ledlow@samhsa.hhs.gov; wendy.pang@samhsa.hhs.gov; eracorrespondence@od.nih.gov
**Subject:** [External] B09SM085355: Termination Notice for COVID-19 Grant Funding

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 012a1144-3f37-4b04-8ae9-7de7997ae760]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

# Exhibit C

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

**Notice of Award**
FAIN# B09SM085883
**Federal Award Date**
08/10/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, ILLINOIS DEPARTMENT OF
100 S GRAND AVE E

SPRINGFIELD, IL 62704

**2. Congressional District of Recipient**
13

**3. Payment System Identifier (ID)**
1364163567A1

**4. Employer Identification Number (EIN)**
364163567

**5. Data Universal Numbering System (DUNS)**
067919071

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
DAVID  ALBERT

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Mental Health Services
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Kent  Forde

Center for Mental Health Services
kent.forde@samhsa.hhs.gov
240-276-2096

## Federal Award Information

**11. Award Number**
1B09SM085883-01

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085883

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

**19. Budget Period Start Date** 09/01/2021 **– End Date** 09/30/2025

| | |
|---|---|
| **20. Total Amount of Federal Funds Obligated by this Action** | $1,728,152 |
| 20 a.  Direct Cost Amount | $1,728,152 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $1,728,152 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $1,728,152 |

**26. Project Period Start Date** 09/01/2021 **– End Date** 09/30/2025

| | |
|---|---|
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $1,728,152 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.





| | Notice of Award | |
|---|---|---|
| MHBG | | **Issue Date:** 08/10/2021 |

Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Mental Health Services

**Award Number:** 1B09SM085883-01
**FAIN:** B09SM085883-01
**Contact Person:** DAVID ALBERT

**Program:** Block Grants for Community Mental Health Services

HUMAN SERVICES, ILLINOIS DEPARTMENT OF
100 S GRAND AVE E

SPRINGFIELD, IL 62704

**Award Period:** 09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a grant in the amount of $1,728,152 (see "Award Calculation" in Section I) to HUMAN SERVICES, ILLINOIS DEPARTMENT OF in support of the above referenced project. This award is pursuant to the authority of Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.


Sincerely yours,
Odessa Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B09SM085883-01

**FEDERAL FUNDS APPROVED:**                              $1,728,152

**AMOUNT OF THIS ACTION (FEDERAL SHARE):**              $1,728,152

**CUMULATIVE AWARDS TO DATE:**                          $1,728,152

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:**                 $0

**Fiscal Information:**
**CFDA Number:**        93.958
**EIN:**                1364163567A1
**Document Number:**    21B3ILCMHSC6
**Fiscal Year:**        2021

| IC | CAN | 01 |
|----|-----|-----|
| SU | C96D210 | $1,728,152 |

**PCC:** CMHS / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –        1B09SM085883-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B09SM085883-01

**STANDARD TERMS AND CONDITIONS**

**MHBG FY2021 ARP Mitigation**

**Remarks:**

This Notice of Award (NoA) provides one-time funding made available by the American Rescue Plan Act of 2021, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2], available at  https://www.congress.gov/117/bills/hr1319/BILLS-117hr1319enr.pdf.

This funding is available to expand dedicated testing and mitigation resources for people with mental health and substance use disorders.  These funds will provide resources and flexibility for states to prevent, prepare for, and respond to the coronavirus disease 2019 (COVID-19) public health emergency and ensure the continuity of services to support individuals connected to the behavioral health system.

**Required Plan Submission:**

**Due by October 1, 2021. COVID-19 Response Workplan and Overview**

States must submit separate plans for expending these funds for both MHBG and SABG.  States must explain the types of activities, including expenditures.  Provide a detailed plan on how the state plan to implement COVID-19 testing and mitigation activities within the public mental health and or substance abuse system.

**Due by October 1, 2021.  COVID-19 Response Budget and Budget Justification**

States must submit a budget and a budget justification capturing all expenses, including costs for administration at the state level and a plan to distribute it to providers, and subsequent reasons for the expenses in narrative format.

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority. Please title this document "COVID Mitigation Funding Plan 2021(MH)" for MHBG and "COVID Mitigation Funding Plan 2021 (SA)" for SABG."

States must upload separate proposals based on Mental Health Block Grant and Substance Abuse Block Grant guidance into the WebBGAS system.  Upon submission, SAMHSA will review the proposal to ensure it is complete and responsive.  Proposals must be submitted to WebBGAS by Friday, October 1, 2021.

**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**2) Official Form Designee**

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the MHBG Program Officer

must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

**3) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**4) Fiscal and administrative requirements**

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

***Fiscal control and accounting procedures*** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

Audits - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

Financial settlement - The State must repay to the Department amounts found after audit resolution to have been expended improperly. In the event that repayment is not made voluntarily, the Department will undertake recovery.

5) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351 75.353, Sub-recipient monitoring and management.

**6) Executive Pay**

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level.  However, no additional funds will be provided to these grant awards.

**7) Marijuana Restriction**

SAMHSA grant funds may not be used to purchase, prescribe, or provide marijuana or treatment using marijuana.  See, e.g., 45 C.F.R. 75.300(a)

(requiring HHS to ensure that Federal funding is expended in full accordance with U.S. statutory and public policy requirements); 21 U.S.C. 812(c)(10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana).

**8) Anti-discrimination**

You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

• You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

• For information on your specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see* http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

• HHS funded health and education programs must be administered in an environment free of sexual harassment, *see* https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

• For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

**9) System for Award Management (SAM)**

**This award is subject to requirement set forth in 2 CFR 25.110**

Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.  This requirement flows down to subrecipients and contractors under awards or subawards.   SAM website: **System for Award Management (SAM)**

**10) Federal Financial Accountability and Transparency Act (FFATA)**

**Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170**

The Federal Funding Accountability and Transparency Act (FFATA) was signed on September 26, 2006.

Unless you are exempt, you must report each action that obligates $25,000 or more in Federal funds.  The FFATA Subaward Reporting System (FSRS) is the reporting tool federal prime awardees (i.e. prime contractors and prime grants recipients) must use to capture and report subaward and executive compensation data regarding their first-tier subawards to meet the FFATA reporting requirements.  Prime contract awardees must report against sub-contracts awarded.  Prime grant awardees will report against sub-grants awarded.  The sub-award information you enter in FSRS will display on [USASpending.gov](USASpending.gov) associated with the prime award. This furthers federal spending transparency.

You must report each obligating action to [http://www.fsrs.gov](http://www.fsrs.gov)

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

> U.S. Department of Health and Human Services Office of Inspector General

> ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

> SW, Cohen Building Room5527 Washington, DC 20201

> Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: [MandatoryGranteeDisclosures@oig.hhs.gov](MandatoryGranteeDisclosures@oig.hhs.gov)

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

**12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175**

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in

effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

### 15) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

### 16) Audits

Version: 203 - 1/27/2021 10:14 PM | Generated on: 8/11/2021 12:18 AM

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.

Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

### Reporting Requirements:

**Annual Report**

Reporting on the ARPA funding is required.  After the end of each fiscal year,  a FY annual report is required on December 31, until the funds expire, and states must upload a narrative report including activities and expenditures.  States must prepare and submit their respective reports utilizing WebBGAS.  Your assigned MHBG Program Official will provide further guidance and additional submission information.

Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of MHBG grants.

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix
XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative
agreements, and procurement contracts with cumulative total value greater than
$10,000,000 must report and maintain information in the System for Award Management
(SAM) about civil, criminal, and administrative proceedings in connection with the
award or performance of a Federal award that reached final disposition within the most
recent five-year period. The recipient must also make semiannual disclosures regarding
such proceedings. Proceedings information will be made publicly available in the
designated integrity and performance system (currently the Federal Awardee
Performance and Integrity Information System (FAPIIS)). Full reporting requirements
and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Kent  Forde, Program Official
**Phone**: 240-276-2096  **Email:** kent.forde@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

# Exhibit D

**Hazinski, John**

---

| | |
|---|---|
| **From:** | Albert, David <David.Albert@Illinois.gov> |
| **Sent:** | Monday, March 24, 2025 6:23 PM |
| **To:** | Blair, Tiffany; Morrow, Adam; Schomberg, John F; Khatkhate, Priya; Wellbaum, Joseph; Grindle, Robert J. |
| **Cc:** | Rollinson, Ryan; Dunlap, Brock |
| **Subject:** | FW: [External] B09SM085883: Termination Notice for COVID-19 Grant Funding |

Forwarding #1 of 3….

David Albert, PhD (he/him/his)
Director, Division of Mental Health
Illinois Department of Human Services
401 South Clinton St., 2nd Floor
Chicago, IL 60607
Office: (312) 793-1326
Mobile: (312) 533-1864
Fax: (312) 814-2964
Email: david.albert@illinois.gov

State of Illinois - CONFIDENTIALITY NOTICE: The information contained in this communication is confidential, may be attorney-client privileged or attorney work product, may constitute inside information or internal deliberative staff communication, and is intended only for the use of the addressee. Unauthorized use, disclosure or copying of this communication or any part thereof is strictly prohibited and may be unlawful. If you have received this communication in error, please notify the sender immediately by return e-mail and destroy this communication and all copies thereof, including all attachments. Receipt by an unintended recipient does not waive attorney-client privilege, attorney work product privilege, or any other exemption from disclosure.

---

**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Monday, March 24, 2025 4:50 PM
**To:** Albert, David <David.Albert@Illinois.gov>
**Cc:** Kisha.Ledlow@samhsa.hhs.gov; wendy.pang@samhsa.hhs.gov; eracorrespondence@od.nih.gov
**Subject:** [External] B09SM085883: Termination Notice for COVID-19 Grant Funding

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 45b9bb3a-eaca-4598-87cb-93bbcf2bb9e4]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.