# UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF RHODE ISLAND

|  |  |
|---|---|
| STATE OF COLORADO; et al., | |
| *Plaintiffs,* | |
| v. | No. 1:25-cv-_____ |
| U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; et al., | |
| *Defendants.* | |

## DECLARATION OF BROOKE DOYLE

Pursuant to 28 U.S.C. § 1746, I, Brooke Doyle, hereby declare as follows:

1.　　I am a resident of Massachusetts.  I am over the age of 18 and have personal knowledge of all the facts stated herein, except as to those matters stated upon information and belief; as to those matters, I believe them to be true.  If called as a witness, I could and would testify competently to the matters set forth below.

2.　　In 2020, I was appointed as the Commissioner for the Massachusetts Department of Mental Health (DMH).

3.　　DMH provides or regulates access to services and supports to meet the mental health needs of individuals of all ages; enabling them to live, work and participate in their communities.

4.　　As the DMH Commissioner, I am responsible for oversight of all aspects of DMH operations including funding administered by the federal Substance Abuse and Mental Health Services Administration (SAMHSA).

1

5.     I submit this declaration in connection with the Termination Notices issued by SAMHSA on March 24, 2025, March 28, 2025, and March 29, 2025.

6.     Public Law 117-2, the American Rescue Plan Act of 2021 (ARPA), directed SAMHSA to provide additional funds to support states through Block Grants to address the effects of the COVID-19 pandemic for Americans with mental illness and substance use disorders.

7.     Attached as Exhibit A is a true copy of a letter dated May 18, 2021, from SAMHSA sent to the DMH Commissioner.  The SAMHSA letter states that the COVID-19 pandemic exposed and exacerbated severe and pervasive health and social inequities in America, including the critical importance of supporting people with mental illness and substance use disorders.

8.     SAMHSA awarded DMH $28,589,013 on or about May 17, 2021, unique federal award identification number (FAIN) B09SM085362 ("Affected Grant"), and required the expenditure of those funds on or before September 30, 2025, pursuant to federal Mental Health Block Grant (MHBG)  42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart I: Block Grants for Community Mental Health Services for adults with serious mental illness (SMI) and children with serious emotional disturbance (SED).  Attached as Exhibit B is a true copy of the Notice of Award dated May 17, 2021 for FAIN B09SM085362 issued to the Massachusetts DMH by SAMHSA.  DMH spent $14,796,069 under the Affected Grant prior to the current fiscal year.

9.     In accordance with the MHBG rule, in the current fiscal year, DMH has awarded contracts and encumbered $13,792,944 for services to 27 providers/organizations to be expended on or before September 30, 2025, for a range of crucial community mental health services to support populations with SMI and SED, including services to address First Episode Psychosis (FEP) needs and targeted initiatives for those with SMI and SED.  As of March 24, 2025,

$4,825,567.00 has been expended, and all of the remaining funds are encumbered to be used before September 30, 2025.

10. On Monday, March 24, 2025, DMH received an email from SAMHSA stating:

> Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.

This was SAMHSA's first termination notice. Attached as Exhibit C is a true copy of the March 24, 2025 SAMHSA email with the subject line, "B09SM083978: Termination Notice for COVID-19 Grant Funding" ("First Termination Notice").

11. On Friday, March 28, 2025, DMH received a second email from SAMHSA that purported to "replace[] and supersede[] the previous notice." This email provided a different explanation as to why the Affected Grant was terminated:

> The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

Attached as Exhibit D is a true copy of the March 28, 2025 SAMHSA email with the subject line, "B09SM085890: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)" ("Second Termination Notice").

12. The Second Termination Notice acknowledges that, "Reimbursements after termination are allowable if the reimbursements result from obligations which were properly

incurred on or before March 24, 2025." However, the notice identifies no process for obtaining such reimbursements.

13.     On Saturday, March 29, 2025, DMH received via email a Notice of Award letter from SAMHSA dated March 28, 2025, regarding the Affected Grant, showing on page 1, line 27, the original amount awarded to DMH $28,589,013 reduced to $0, with a Project End Date changed to 03/24/2025 from the original Project End Date of 09/30/2025. Attached as Exhibit E is a true copy of the Notice of Award letter dated March 28, 2025 ("Third Termination Notice"). The Third Termination Notice provides the same basis for termination as the Second Termination Notice. It establishes a multi-step process for obtaining reimbursement for costs incurred by DMH before the effective date of the termination, March 24, 2025, none of which existed prior to the Third Termination Notice.

14.     The new process requires the following steps:

Step One: No later than 90 days from the effective date of the termination letter, DMH must submit any request for reimbursement in an email to wendy.pang@samhsa.hhs.gov, katrina.morgan@samhsa.hhs.gov, and SAMHSAgrants@samhsa.hhs.gov, stating the amount requested and certifying in the email that all costs claimed for reimbursement are allowable, allocable, reasonable, and necessary and were incurred on or before the effective date of the termination, in accordance with 45 CFR 96.30.

Step Two: "If approved, a follow-up email will be sent to you to submit your payment request to PMS only requesting the amount approved in SAMHSA's email response." The Third Termination Notice does not identify a process for reviewing SAMHSA's initial determination since only approvals will be communicated to DMH.

Step Three:  Despite the fact that SAMHSA has already reviewed and approved the payment in Step Two, "Once you submit your payment request to PMS it will be reviewed for accuracy and either approved for drawdown or returned."  The Third Termination Notice does not identify a process for reviewing SAMHSA's secondary determination.

15.     The process SAMHSA has established to request reimbursement for grant funds obligated prior to the termination of the Affected Grant will result in unnecessary delay and denial of payments to DMH it has relied on.

16.     DMH has committed the remaining funds awarded by SAMHSA under the Affected Grant through grants awarded to support crisis flexible support teams that serve youth and young adults.  The termination of the Affected Grant by SAMHSA creates an immediate risk to providers that have relied on those grant funds to operate for programs that support a variety of critically important services to individuals and families facing the challenges of mental illness, including intensive in-home services for young adults and trauma-informed care and services for individuals and families, among other programs.

17.     The termination of the Affected Grant by SAMHSA without any advance notice, more than six months prior to the planned completion of the Affected Grant on September 30, 2025, jeopardizes the health and well-being of individuals and families dealing with SMI and SED who have been receiving care funded by the Affected Grant.   The continuation of funding through the original end date for the Affected Grant is needed to ensure an orderly completion of current services and transition to alternative services as may be appropriate.


I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 30, 2025, at Boston, Massachusetts.

Brooke Doyle, M.Ed., LMHC
Department of Mental Health
Commissioner

EXHIBIT A



May 18, 2021

Dear Single State Authority Director and State Mental Health Commissioner:

Public Law 117-2, the American Rescue Plan Act of 2021 (ARPA), signed by President Biden on March 11, 2021, directed the Substance Abuse and Mental Health Services Administration (SAMHSA) to provide additional funds to support states through Block Grants to address the effects of the COVID -19 pandemic for Americans with mental illness and substance use disorders. The COVID-19 pandemic has exposed and exacerbated severe and pervasive health and social inequities in America, including the critical importance of supporting people with mental illness and substance use disorders. As the pandemic swept through the states, societal stress and distress over this newly emerging disaster created the need for nimble and evolving policy and planning in addressing mental and substance use disorder services. SAMHSA, through this guidance, is asking states to improve and enhance the mental health and substance use service array that serves the community.

ARPA allocated $1.5 billion each for Mental Health Block Grant (MHBG) and Substance Abuse Prevention and Treatment Block (SABG) grants to the states. States have until September 30, 2025, to expend these funds. Federal block grant monies are provided to support state priorities and SAMHSA asks that states consider the following in developing an ARPA Funding Plan.

## A. MHBG Guidance

States must spend the MHBG funds based on 42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart I: Block Grants for Community Mental Health Services for adults with serious mental illness (SMI) and children with serious emotional disturbance (SED). () Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to coronavirus.

The MHBG allocation requires states to set aside ten percent (10%) of their total allocation for first-episode psychosis or early SMI programs.

SAMHSA encourages states to consider a focus on support of a behavioral health crisis continuum. An effective statewide crisis system affords equal access to crisis supports that meet needs anytime, anyplace, and for anyone. This includes those living in remote areas and underserved communities as well as youth, older adults, persons of diverse backgrounds, and other marginalized populations; the crisis service continuum will need to be able to equally and adeptly serve everyone. SAMHSA recommends states consider use of the ARPA MHBG funds to develop, enhance, or improve the following:

- Develop partnerships with the emerging Suicide Lifeline (9-8-8) systems, Law Enforcement, EMS, health care providers, housing authorities, Housing and Urban Development (HUD) Continuum of Care, hospital systems, peer-based recovery organizations, and substance use specific treatment providers, all of whom have a critical role in the crisis continuum.
- Utilize five percent of funds for crisis services, as described in the FY 2021 appropriations language.
- A comprehensive 24/7 crisis continuum for children including screening and assessment; mobile crisis response and stabilization; residential crisis services; psychiatric consultation; referrals and warm hand-offs to home- and community-based services; and ongoing care coordination.
- Provide increased outpatient access, including same-day or next-day appointments, for those in crisis.
- Improve information technology infrastructure, including the availability of broadband and cellular technology for providers, especially in rural and frontier areas; use of GPS, to expedite response times, and to remotely meet with the individual in crisis.
- The adoption and use of health information technology, such as electronic health records, to improve access to and coordination of behavioral health services and care delivery.
- Consider digital platforms, such as Network of Care, which facilitate access to behavioral health services for persons with SMI-SED.
- Advance telehealth opportunities to expand crisis services for hard to reach locations, especially rural and frontier areas. Expand technology options for callers, including the use of texting, telephone, and telehealth. Note: States cannot use the funds to purchase any items for consumers/clients.
- Implement an electronic bed registry that coordinates with existing HHS provider directory efforts and treatment locator system that will help people access information on crisis bed facilities, including their locations, available services, and contact information.
- Support for crisis and school-based services that promote access to care for children with SED.
- Develop medication-assisted treatment (MAT) protocols to assist children and adults who are in crisis, which may leverage telehealth when possible.
- Expand Assisted Outpatient Treatment (AOT) services.
- Develop outpatient intensive Crisis Stabilization Teams to avert and address crisis.
- Technical Assistance for the development of enhanced treatment and recovery support services including planning for Certified Community Behavioral Health Clinics (CCBHC).

SAMHSA requests that the following information is included when submitting the proposals:

1. Identify the needs and gaps of your state's mental health services continuum including prevention, intervention, access to crisis services, treatment, and recovery support services.

2. Identify the needs and gaps of your state's mental health services related to developing a comprehensive crisis continuum. Focus on access to your states services through crisis call centers with local knowledge of available services, availability of mobile crisis response teams and crisis receiving and stabilization services.

3. Describe your state's spending plan proposal, including a budget that addresses the needs and gaps related to crisis and services continuum.

4. Describe how the state will advance the development of crisis and other needed prevention, intervention, treatment and recovery support services so that your state's system is responsive to the needs of your residents with SMI and SED. Refer to the Guidebook on crisis services.

5. Explain how your state plans to collaborate with other departments or agencies to address crisis, treatment, and recovery support services.

6. Describe how the state plans to spend the ten percent set aside for first-episode psychosis/early SMI and, if applicable, the five percent set aside for crisis services.

7. Describe other state priorities or activities that the state plans to fund during the performance period using ARPA funds, with consideration given to disproportionately high rates of MH/SUD in certain communities and disparities in COVID-19 BH-related outcomes by race, ethnicity, and other factors.

8. Describe how the state will use, or consider, health IT standards if using funds for health IT infrastructure or advancement. This includes a description of standards and, as applicable, conformance to Office of the National Coordinator certification criteria in health IT products used or that will be used to support behavioral health clinical priorities and interoperable data exchange. States must use standards identified by the Office of the National Coordinator for Health IT in 45 C.F.R. 170 where applicable and also should consider standards identified in the Interoperability Standards Advisory (https://www.healthit.gov/isa/), including but not limited to those standards described in the, the "Allows for the Exchange of State Prescription Drug Monitoring Program (PDMP) Data" section and the "Social Determinants of Health" section.

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [MH]. Please title this document "ARPA Funding Plan 2021 (MH)."

## B. SABG Guidance

States are required to plan for, expend, and report on the FY 21 SABG ARPA Supplemental Funding based on 42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart II: Block Grants for Prevention and Treatment of Substance Abuse, and 45 CFR, Part 96, Subpart L.

Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the SABG as deemed necessary to facilitate a grantee's response to coronavirus.

Accordingly, all regular provisions of the statute and regulations pertaining to the SABG are fully applicable to the planning and expenditure of the SABG ARPA Supplemental Funding.

This includes, but is not limited to, the definitions, assurances, requirements, and restrictions of the SABG standard funding.

The SABG allocation requires states to expend not less than twenty percent (20%) of their total allocation for substance use disorder (SUD) primary prevention services for individuals who do not require treatment for substance abuse, in accordance with 42 USC 300x-22 and 45 CFR 96.124 and 96.125. The SABG allocation also requires "designated states" to expend five percent (5%) of their total allocation for EIS/HIV Services, in accordance with 42 USC 300x-24(b) and 45 CFR 96.128.

The SUD prevention, intervention, treatment, and recovery support services continuum includes various evidence-based services and supports for individuals, families, and communities. Integral to the SABG are its efforts to support health equity through its priority focus on the provision of SUD prevention, treatment, and recovery support services to identified underserved populations. These underserved and marginalized populations include, but are not limited to, pregnant women and women with dependent children; persons who inject drugs; persons using opioids and/or stimulant drugs associated with drug overdoses; persons at risk for HIV, TB, and Hepatitis; persons experiencing homelessness; persons involved in the justice system; persons involved in the child welfare system; Black, Indigenous, and People of Color (BIPOC); LGBTQ individuals; rural populations; and other underserved groups.

SAMHSA recommends states develop, enhance or improve the following through the SABG ARPA funds:

- Develop and expand the use of FDA-approved medications and digital therapeutics as a part of addiction treatment that can provide interactive, evidence-based behavioral therapies for the treatment of opioid use disorders, alcohol use disorders, and tobacco use disorders, along with the implementation of other evidence-based treatments and practices.
- Provide increased access, including same-day or next-day appointments, and low barrier approaches, for those in need of SUD treatment services.
- Direct critical resources in expanding broad-based state and local community strategies and approaches in addressing the drug overdose epidemic, involving SUD prevention, intervention, treatment, and recovery support services.
- Improve information technology infrastructure, including the availability of broadband and cellular technology for providers, especially in rural and frontier areas, and use of GPS to expedite response times and to remotely meet with the individual in need of services.
- The adoption and use of health information technology to improve access to and coordination of SUD prevention, intervention, treatment, and recovery support services and care delivery, consistent with the provisions of HIPAA and 42 CFR, Part 2.
- Advance telehealth opportunities to expand services for hard-to-reach locations, especially rural and frontier areas. Expand technology options for callers, including the use of texting, telephone, and telehealth. Note: States may not use the funds to purchase any items for consumers/clients.

- Enhance the primary prevention infrastructure within your state and communities using the Strategic Prevention Framework planning model and implementing evidence-based practices, the six CSAP prevention strategies with an emphasis on environmental approaches.
- Consider incorporating strategies around adverse childhood experiences to improve substance misuse outcomes among all populations, but especially young adults 18-25 and those over 26 years of age; preventing and reducing marijuana use by youth below the state's legal age of use; and mitigating the impact of increased alcohol access by youth as identified during the COVID-19 pandemic. It is important to identify and address disparities and describe how you are incorporating equitable approaches.
- Support expansion of peer-based recovery support services (e.g. recovery community organizations, recovery community centers, recovery high schools, collegiate recovery programs, recovery residences, alternative peer group programs) to ensure a recovery orientation which expands support networks and recovery services. These programs are helping people sustain their recovery, engaging families and significant others, bridging the gap between treatment and long-term recovery, and supporting people reentering the community from incarceration.

SAMHSA requests that the following information is included when submitting the proposals:

1. Identify the needs and gaps of your state's SUD services continuum, related to developing a comprehensive prevention, intervention, treatment, and recovery support services continuum.
2. Describe how your state's spending plan proposal will address the state's substance use disorder services continuum, including a budget that addresses the needs and gaps related to this continuum.
3. Describe your state's progress in addressing the rising drug overdose rate in many parts of the country, and what steps the state will be taking to improve access to SUD treatment, by improving identification of persons in need, reducing barriers to admission to treatment, and strengthening mechanisms to promote client engagement and retention in SUD treatment and recovery support services.
4. Describe your state's progress in implementing the increased and widespread use of FDA approved medications for the treatment of opioid use disorder, alcohol use disorder, and tobacco use disorder, in combination with other substance use disorder evidence-based treatments and practices.
5. Explain how your state plans to collaborate with other departments or agencies to address the SUD services continuum.
6. Describe how the state plans to use SABG ARPA funding to promote health equity among identified underserved populations, and how it plans to address heath disparities in the planning, delivery, and evaluation of SUD prevention, intervention, treatment, and recovery support services.
7. Describe the state's efforts and plans to promote an increased emphasis on the development, delivery, and support of widespread SUD recovery support services, systems, and mechanisms across the state.

8. Describe other state priorities or activities that the state plans to fund during the performance period of September 1, 2021 through September 30, 2025 using ARPA funds.

9. Describe your state plans for enhancing your state's prevention infrastructure which may include incorporating work around ACEs and improving substance misuse outcomes among young adults and older adults. (Primary Prevention set-aside)
   a. The impact of increased access to marijuana and the state's strategies to prevent misuse by the underage population.
   b. Strategies to reduce the COVID-19 impact of increased alcohol accessibility and misuse.
   c. How the state is using equitable strategies to reduce disparities in the state's prevention planning and approaches. Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [SA]. Please title this document "ARPA Funding Plan 2021 (SA)."

10. Describe how the state will use, or considered, health IT standards if using funds for health IT infrastructure or advancement. This includes a description of standards and, as applicable, conformance to Office of the National Coordinator certification criteria in health IT products used or that will be used to support SUD clinical priorities and interoperable data exchange. States must use standards identified by the Office of the National Coordinator for Health IT in 45 C.F.R. 170 where applicable and also should consider standards identified in the Interoperability Standards Advisory (https://www.healthit.gov/isa/), including but not limited to those standards described in the "Allows for the Exchange of State Prescription Drug Monitoring Program (PDMP) Data" section and the "Social Determinants of Health" section.

States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system. Upon submission, SAMHSA will review the proposal to ensure it is complete and responsive. Proposals must be submitted to WebBGAS by Friday, July 2, 2021, 11:59 EST.

SAMHSA is ready and willing to assist you in addressing the needs of individuals with mental illness and substance use disorders. Please feel free to contact your SAMHSA state project officers and grants management specialists with any questions that you may have.

Sincerely,

Tom Coderre
Acting Assistant Secretary for
 Mental Health and Substance Use

# EXHIBIT B

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

**Notice of Award**
FAIN# B09SM085362
**Federal Award Date**
05/17/2021

## Recipient Information

**1. Recipient Name**
MENTAL HEALTH, MASSACHUSETTS DEPT OF
25 STANIFORD ST

BOSTON, MA 02114

**2. Congressional District of Recipient**
08

**3. Payment System Identifier (ID)**
1046002284B6

**4. Employer Identification Number (EIN)**
046002284

**5. Data Universal Numbering System (DUNS)**
878369362

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Brooke  Doyle

**8. Authorized Official**

joan.mikula@massmail.state.ma.us

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Mental Health Services
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Steven  Dettwyler

Center for Mental Health Services
Steven.Dettwyler@samhsa.hhs.gov
240-276-0311

## Federal Award Information

**11. Award Number**
1B09SM085362-01

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085362

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $28,589,013 |
| 20 a.  Direct Cost Amount | $28,589,013 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $28,589,013 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $28,589,013 |
| **26. Project Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $28,589,013 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**
Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.


**Award Number:**   1B09SM085362-01
**FAIN:**           B09SM085362-01
**Contact Person:** Brooke  Doyle

**Program:** Block Grants for Community Mental Health Services

MENTAL HEALTH, MASSACHUSETTS DEPT OF
25 STANIFORD ST

BOSTON, MA 02114

**Award Period:**   09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a grant in the amount of      $28,589,013 (see "Award Calculation" in Section I) to MENTAL HEALTH, MASSACHUSETTS DEPT OF in support of the above referenced project. This award is pursuant to the authority of Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.

Sincerely yours,
Odessa  Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B09SM085362-01

**FEDERAL FUNDS APPROVED:** $28,589,013

**AMOUNT OF THIS ACTION (FEDERAL SHARE):** $28,589,013

**CUMULATIVE AWARDS TO DATE:** $28,589,013

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:** $0

**Fiscal Information:**

**CFDA Number:** 93.958
**EIN:** 1046002284B6
**Document Number:** 21B2MACMHSC6
**Fiscal Year:** 2021

| IC | CAN | 01 |
|----|-----|-----|
| SM | C96D540 | $28,589,013 |

**PCC:** CMHS / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION – 1B09SM085362-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B09SM085362-01

## STANDARD TERMS AND CONDITIONS

**MHBG FY2021 ARPA funding**

**Remarks:**

This Notice of Award (NoA) provides American Rescue Plan Act of 2021 (ARPA) funding for the Community Mental Health Services (MHBG) Block Grant Program, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2]. Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to coronavirus.

A proposal of the state's spending plan must be submitted by July 2, 2021 via the Web Block Grant Application System (WebBGAS).

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, grantees are required to upload the Plan document (Microsoft Word or pdf), using the associated tab in the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [MH]. Please title this document "ARPA Funding Plan 2021-MH". States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system.

Further information on this is included in the letter from Acting Assistant Secretary for Mental Health and Substance Use, Tom Coderre

### Standard Terms of Award:

### 1) Acceptance of the Terms of an Award

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a MHBG. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**Certification Statement:** By drawing down funds, The recipient agrees to abide by the statutory requirements of all sections of the Mental Health Block Grant (MHBG) (Public Health Service Act, Sections 1911-1920 and sections 1941-1957) (42 U.S.C. 300x-1-300x-9 and 300x-51-300x-67, as amended), and other administrative and legal requirements as applicable for the duration of the award.

### 2) Official Form Designee

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the MHBG Program Officer must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

### 3) Availability of Funds

Funds provided under this grant must be obligated and expended by September 30, 2025.

### 4) Fiscal and administrative requirements

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

**Fiscal control and accounting procedures** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

ARPA funding is being issued under a separate grant award number and has a unique subaccount in the Payment Management System. Accordingly, ARPA funds must be tracked and reported separately from other FY 2021 awarded funds, including COVID-19 Supplemental funding and the Annual Block Grant Allotment.

**Audits** - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

### 5) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351-75.353, Sub-recipient monitoring and management.

### 6) Early Serious Mental Illness Set-Aside

The 21st Century Cures Act, P.L. 114-255 amended Section 1920(c) of the Public Health Service Act (42 U.S.C. 300x 9(c)). States must set-aside not less than 10 percent of their total MHBG allocation amount for each fiscal year to support evidence-based programs that address the needs of individuals with early serious mental illness, including psychotic disorders, regardless of the age of the individual at onset. In lieu of expending 10 percent of the amount, the State receives for a fiscal year, states have the flexibility to expend not less than 20 percent of such amount by the end of the succeeding fiscal year.

### 7) Executive Pay

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level. However, no additional funds will be provided to these grant awards.

### 8) Marijuana Restriction:

Grant funds may not be used, directly or indirectly, to purchase, prescribe, or provide marijuana. Treatment in this context includes the treatment of opioid use disorder. Grant funds also cannot be provided to any individual who or organization that provides or permits marijuana use for the purposes of treating substance use or mental disorders. See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended . . . in full accordance with U.S. statutory . . . requirements.); 21 U.S.C. 812(c) (10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana). This prohibition does not apply to those providing such treatment in the context of clinical research permitted by the DEA and under an FDA-approved investigational new drug application where the article being evaluated is marijuana or a constituent thereof that is otherwise a banned controlled substance under federal law.

### 9) SAM and DUNS Requirements

THIS AWARD IS SUBJECT TO REQUIREMENTS AS SET FORTH IN 2 CFR 25.110 CENTRAL CONTRACTOR REGISTRATION CCR) (NOW SAM) AND DATA UNIVERSAL NUMBER SYSTEM (DUNS) NUMBERS. 2 CFR Part 25 - Appendix A4
System of Award Management (SAM) and Universal Identifier Requirements
A. Requirement for System of Award Management:
Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.
B. Requirement for unique entity identifier If you are authorized (reference project description) to make subawards under this award, you:
1. Must notify potential subrecipients that no entity (see definition in paragraph C of this award term) may receive a subaward from you, unless the entity has provided its unique entity identifier to you.
2. May not make a subaward to an entity, unless the entity has provided its unique entity identifier to you.
C. Definitions. For purposes of this award term:
1. System of Award Management (SAM) means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found at the SAM Internet site (currently at: http://www.sam.gov).
2. Unique entity identifier means the identifier required for SAM registration to uniquely identify business entities.
3. Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:
a. A governmental organization, which is a state, local government, or Indian Tribe; b. A foreign public entity; c. A domestic or foreign nonprofit organization; d. A domestic or foreign for-profit organization; and e. A Federal agency, but only as a sub-recipient under an award or sub-award to a nonfederal entity.
4. Sub-award:

a. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible sub-recipient. b. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.330). c. A sub-award may be provided through any legal agreement, including an agreement that you consider a contract.

5. Sub-recipient means an entity that: a. Receives a sub-award from you under this award; and b. Is accountable to you for the use of the federal funds provided by the sub-award.

## 10) Federal Financial Accountability and Transparency Act (FFATA)

Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170

a. Reporting of first tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170. 320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation

information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b. 1. of this award term:

i. As part of your registration profile at https://www.sam.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if

i. in the subrecipient's preceding fiscal year, the subrecipient received (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c. 1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in 2 CFR part 25:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. __. 210 of the attachment to OMB Circular A-133, Audits of States, Local Governments, and Nonprofit Organizations).

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that: i. Receives a subaward from you (the recipient) under this award; and ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified. vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000. [75 FR 55669, Sept. 14, 2010, as amended at 79 FR 75879, Dec. 19, 2014]

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information

related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

## 12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

## 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

## 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the

use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

## 15) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

## 16) Audits

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.
Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

## Reporting Requirements:

## Federal Financial Report (FFR)

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual

responsible for FFR submission does not already have an account with PMS, please [contact PMS](#) to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR). After ninety (90) days, letter of credit accounts are locked. SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period. Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period. Recipients (late) withdrawal requests occurring after the aforementioned periods are denied. In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

### Annual Report

Reporting on the ARPA funding is required. States must prepare and submit their respective reports utilizing WebBGAS. Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of MHBG grants.

Your assigned MHBG Program Official will provide further guidance and additional submission information.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Steven Dettwyler, Program Official
**Phone**: 240-276-0311 **Email:** Steven.Dettwyler@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

EXHIBIT C

Redacted

---

**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Monday, March 24, 2025 5:49:59 PM
**To:** Doyle, Brooke (DMH) <brooke.doyle@mass.gov>; Doyle, Brooke (DMH) <brooke.doyle@mass.gov>
**Cc:** ESTHER.URENA@SAMHSA.HHS.GOV <ESTHER.URENA@SAMHSA.HHS.GOV>; wendy.pang@samhsa.hhs.gov <wendy.pang@samhsa.hhs.gov>; eracorrespondence@od.nih.gov <eracorrespondence@od.nih.gov>
**Subject:** B09SM083978: Termination Notice for COVID-19 Grant Funding

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system.  Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020

(H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 15911a15-2753-4f71-abe7-e8640ef8d870]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

EXHIBIT D

Redacted

---

**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Friday, March 28, 2025 1:06 PM
**To:** Calvert, Deirdre C (DPH) <Deirdre.C.Calvert@mass.gov>; Doyle, Brooke (DMH)
<brooke.doyle@mass.gov>
**Cc:** ESTHER.URENA@SAMHSA.HHS.GOV; wendy.pang@samhsa.hhs.gov;

eracorrespondence@od.nih.gov

**Subject:** B09SM085890: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

CAUTION: This email originated from a sender outside of the Commonwealth of Massachusetts mail system. Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated. This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025. Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**


Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov.  The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.


Enclosure

[[Correspondence Token: d6d2f99c-4aad-4bda-8b78-2217d0cea99a]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

# EXHIBIT E

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

**Notice of Award**
FAIN# B09SM085362
**Federal Award Date**
03/28/2025

## Recipient Information

**1. Recipient Name**
MASSACHUSETTS DEPARTMENT OF
MENTAL HEALTH
25 STANIFORD ST
BOSTON, MA 02114

**2. Congressional District of Recipient**
08

**3. Payment System Identifier (ID)**
1046002284B6

**4. Employer Identification Number (EIN)**
046002284

**5. Data Universal Numbering System (DUNS)**
878369362

**6. Recipient's Unique Entity Identifier**
YVCJTJD2RLJ4

**7. Project Director or Principal Investigator**
Brooke  Doyle

Brooke.Doyle@mass.gov

**8. Authorized Official**
Brook Doyle
Brooke.Doyle@mass.gov

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Specialist
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Esther  Urena
Program Official
ESTHER.URENA@SAMHSA.HHS.GOV
240-276-

## Federal Award Information

**11. Award Number**
6B09SM085362-01M001

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085362

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
Amendment

**18. Is the Award R&D?**
No

| Summary Federal Award Financial Information | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – **End Date** 03/24/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $0 |
| 20 a.  Direct Cost Amount | $0 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $0 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $0 |
| **26. Project Period Start Date** 09/01/2021 – **End Date** 03/24/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $28,589,013 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Katrina  Morgan

## 30. Remarks

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.



MHBG                                              **Issue Date:**   03/28/2025
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Mental Health Services

**Award Number:**  6B09SM085362-01M001
**FAIN:**                B09SM085362-01
**Contact Person:** Brooke  Doyle

**Program:** Block Grants for Community Mental Health Services

MASSACHUSETTS DEPARTMENT OF MENTAL HEALTH
25 STANIFORD ST

BOSTON, MA 02114

**Award Period:**  09/01/2021 – 03/24/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a     grant in the amount of $0 (see "Award Calculation" in Section I) to MASSACHUSETTS DEPARTMENT OF MENTAL HEALTH in support of the above referenced project. This award is pursuant to the authority of Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.


Sincerely yours,
Katrina  Morgan
Grants Management Officer
Division of Grants Management
katrina.morgan@samhsa.hhs.gov
See additional information below

Version: 25 - 2/15/2024 9:51 AM | Generated on 3/29/2025 12:18 AM

**SECTION I – AWARD DATA – 6B09SM085362-01M001**

| | |
|---|---|
| **FEDERAL FUNDS APPROVED:** | $28,589,013 |
| **AMOUNT OF THIS ACTION (FEDERAL SHARE):** | $0 |
| **CUMULATIVE AWARDS TO DATE:** | $28,589,013 |
| **UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:** | $0 |

<u>Fiscal Information:</u>
CFDA Number:                       93.958
EIN:                                       1046002284B6
Document Number:              21B2MACMHSC6
Fiscal Year:                           2021

| IC | CAN | 01 |
|---|---|---|
| SM | C96D540 | $0 |

**PCC:** CMHS / **OC:** 4115

**SECTION II – PAYMENT/HOTLINE INFORMATION –        6B09SM085362-01M001**

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

**SECTION III – TERMS AND CONDITIONS – 6B09SM085362-01M001**

# **REMARKS**

## **Termination of CRSSA & ARP Awards - Non-Discretionary**

<u>**Block Grant** Notice of Award (NoA) Terms for Terminating COVID-19 Awards (CRSSA and ARP)</u>

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. 300x-55 permit termination if the state has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved.   The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

<u>REPORTING REQUIREMENTS</u>

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025.  Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation

process no later than 90 calendar days after the termination effective date.  **SAMHSA does not approve extensions to the post-award 90 calendar day reconciliation/liquidation period.**

RESTRICTION ON THE DRAWDOWN OF FUNDS

The related Payment Management System account has been restricted from drawing down funding which now requires prior approval from SAMHSA.

PAYMENT REQUEST

Reimbursements after termination are allowable for obligations that were properly incurred on or before the effective date of the termination.

To request reimbursement, your organization must email your cognizant Grants Management Specialists (see contact information below) stating the amount requested and certifying in the email that all costs claimed for reimbursement are allowable, allocable, reasonable, and necessary and were incurred on or before the effective date of the termination, in accordance with 45 CFR 96.30 .

All requests for reimbursement must be submitted **no later than 90 calendar days from the effective date of the termination** to wendy.pang@samhsa.hhs.gov, katrina.morgan@samhsa.hhs.gov, and SAMHSAgrants@samhsa.hhs.gov.  If approved, a follow-up email will be sent to you to submit your payment request to PMS only requesting the amount approved in SAMHSA' s email response. Once you submit your payment request to PMS it will be reviewed for accuracy and either approved for drawdown or returned. SAMHSA does not approve extensions to the 90-calendar day post-award reconciliation/liquidation period.

As a reminder, PMS introduced a new mandatory field in the payment request screen at the subaccount level. This field, limited to 1,000 characters, will capture a justification from the grant recipient explaining the purpose of the payment request.

**Opportunity for Hearing:**

Block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this Notice of Award to: SAMHSAgrants@samhsa.hhs.gov.  The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.

Enclosure



The October 1994 notice required State Medicaid agencies to specify the reimbursement for the administration of the pediatric vaccines, and, if applicable, submit documentation of equal access, due by April 1 of each year, beginning April 1, 1995 (and which is effective July 1, 1995), as part of its obstetrical/pediatric payment rate State Medicaid plan amendment submittal. The notice also stated that if the State Medicaid agency elected to pay the maximum regional amount statewide, it need only specify this in its State plan amendment submittal (no additional documentation would have been needed). However, if the State Medicaid agency elected to vary the vaccine administration fee by geographic areas within the State, the State must list the administration fee, specify the methodology, and provide data for each geographic area where the maximum charges are not applied. Additionally, the notice stated that, because of the October 1, 1994 implementation date, the State plan amendment must have been submitted by December 31, 1994, and have been effective October 1, 1994. For the interim period of October 1, 1994, through March 31, 1995, the notice provided that States may claim Federal matching funds for the costs of administration of vaccines to Medicaid- eligible children using the maximum charges or lower fees established on the basis of the guidance provided in the notice. For this interim State plan amendment, the State would have been required to submit the methodology to document access to immunizations but would not have been required to supply supporting data by which Medicaid beneficiary access to immunizations was assured. Beginning April 1, 1995, documentation of equal access to immunizations would have been required to be included as part of the yearly obstetrical/pediatric State plan amendment submittal in accordance with section 1926 of the Social Security Act.

## II. Rescission of Access Guidelines

As a result of our preliminary review of public comments on the October 1994 notice regarding the documentation of access requirements, we are rescinding the requirement that States use the access guidelines to provide assurances of equal access, pending further evaluation.

Following are some of the problems the commenters identified with the access requirements:

· Difficulties in obtaining current data on the number of children in the general population who have received

immunizations, despite the fact that States have data on the number of Medicaid children who have been immunized.

· Difficulties in obtaining private
insurance information only on administration fee reimbursement. It is unlikely that private insurance companies will have a reimbursement rate that only covers the provider's costs for administration of the immunization.

· Difficulties in obtaining useable
data currently. These problems stem from the fact that some States have not yet implemented the VFC Program for private providers.

· Difficulties in obtaining VFC
Program reimbursement data. Due to the October 1, 1994, implementation date, most of the claims data that would be used to document access in April 1995 would reflect provider participation based on the current reimbursement system rather than reimbursement through the VFC program.

· Difficulties in obtaining reliable and
meaningful measures of access. Commenters urged HCFA to develop meaningful measures of access for vaccines and for all other obstetrical and pediatric services.

As a result of the rescission of the
access guidelines, States will not be required to provide a methodology or data to document that payment levels are sufficient to enlist enough providers so that immunizations under the State plan are available to Medicaid recipients at least to the extent that those services are available to the general population.

HCFA is forming a workgroup that
will examine alternative measures of access to vaccines. After this examination is completed, we will evaluate the various suggestions of the group and formulate specific guidelines for States. These guidelines, along with responses to all other timely public comments on the October 3, 1994, notice, will be published in a final **Federal Register** document.

In accordance with the provisions of
Executive Order 12866, this notice has been reviewed by the Office of Management and Budget.

(Catalog of Federal Domestic Assistance Program No. 93.778, Medical Assistance Program)

Dated: February 5, 1995.

**Bruce C. Vladeck,**

*Administrator, Health Care Financing Administration.*

Dated: March 2, 1995. **Donna E. Shalala,** *Secretary.*

[FR Doc. 95–8646 Filed 4–4–95; 4:13 am]

**BILLING CODE 4120–01–P**

# Substance Abuse and Mental Health Services Administration

**Hearing Procedures for Certain Issues Related to the Substance Abuse Prevention and Treatment and the Community Mental Health Services Block Grant Programs**

**AGENCY:** Substance Abuse and Mental Health Services Administration (SAMHSA), HHS.

**ACTION:** Notice.

**SUMMARY:** SAMHSA administers two block grant programs: the Substance Abuse Prevention and Treatment (SAPT) Block Grant Program and the Community Mental Health Services (CMHS) Block Grant Program, both of which are authorized by Title XIX of the Public Health Service (PHS) Act.

Section 1945(e) of the PHS Act provides a State the opportunity for a hearing on certain noncompliance issues relating to the block grants prior to the Secretary taking final action against the State. To the extent that the hearing procedures contained in 45 CFR part 96, subpart E, 42 CFR part 50, subpart D, or 45 CFR part 16 do not apply to the noncompliance issue raised, the guidelines established below for hearings will apply to assist in providing a prompt and orderly hearing. When these procedures are applicable, the State will be provided a copy of the procedures with the notice of noncompliance.

These procedures are currently effective. However, we are inviting comments from the public on the procedures and such comments are to be sent to the information contact person identified immediately below within 60 days from the date of this publication. Comments received will be carefully considered and may cause the procedures to be revised.

**FOR FURTHER INFORMATION CONTACT:**
Richard Kopanda, Acting Executive Officer, SAMHSA, 5600 Fishers Lane, Room 12–105, Rockville, MD 20857,
Telephone No. (301) 443–3875.

## Hearing Procedures

*Sec. 1. Limitations on Issues Subject to Review During the Hearing*

The scope of review shall be limited to (a) the facts relevant to the noncompliance at issue, and (b) the necessary interpretations of those facts, any applicable regulations, and other relevant law. The legal validity of any regulations or statutes shall not be subject to review under these procedures.

*Sec. 2. The Request for a Hearing and the Hearing Official's Response*

(a) The State must submit a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 days of the date of the notice of noncompliance (which will set forth the reasons for the finding of noncompliance and be accompanied by a copy of these hearing procedures), unless some other time period is agreed to by the parties. The written notice must be sent to *(name and address of person identified in the letter to the State)*. The written notice requesting a hearing must include a copy of the notice of noncompliance and a brief statement of why the decision of noncompliance is wrong.

(b) Within ten days after receiving the request for review, SAMHSA will send an acknowledgment, identify the hearing official and advise the State of the next steps.

*Sec. 3. The Procedures for Development of the Hearing File and Submission of Written Argument*

The procedures for development and the submission of written argument are as follows:

(a) *State's documents and briefs.* Within 30 days after receiving the acknowledgment of the request for a hearing, the State shall submit to the hearing official the following (with a copy of SAMHSA at the address listed in sec. 2):

(1) A written statement, not to exceed 20 double-spaced pages, explaining why the Government's determination of noncompliance is wrong.

(2) A review file containing the documents supporting the State's argument, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(b) *SAMHSA's Documents and Brief.* Within 30 days after receiving the State's submission, SAMHSA shall submit to the hearing official the following (with a copy to the State):

(1) A written statement, not exceeding 20 double-spaced pages in length, responding to the State's brief.

(2) A review file containing documents supporting the Government's decision of noncompliance, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(c) *The State's Reply Brief.* Within 15 days after receiving SAMHSA's

submission, the State may submit a short reply not to exceed 10 double- spaced pages (with a copy to SAMHSA at the address listed in sec. 2).

*Sec. 4. Opportunity for Oral Presentation*

(a) *Electing Oral Presentation.* Either the Federal Government or the State may request the opportunity for an oral presentation by submitting such a request in writing to the hearing official on or before the date the State is to submit its reply brief under section 3(c). The hearing official will grant the request if the official determines that a genuine and substantial issue of fact has been raised by the material submitted and that the consideration of the issue will benefit from an oral presentation. The hearing official may also upon his or her initiative request an oral presentation by the parties.

(b) *Preliminary Conference.* The hearing official may hold a prehearing conference (usually a telephone conference call) to consider any of the following: Simplifying and clarifying issues; stipulations and admissions; limitations on evidence and witnesses that will be presented at the hearing; time allotted for each witness and the hearing altogether; scheduling the hearing; and any other matter that will assist in the review process. Normally, this conference will be conducted informally. The hearing official may, at his or her discretion, produce a written document summarizing the conference or transcribe the conference, either of which will be made a part of the record.

(c) *Time and Place of Oral Presentation.* The hearing official will attempt to schedule the oral presentation, if granted, within 30 days of the date of the last reply brief. The oral presentation will be held at a time and place determined by the hearing official following consultation with the parties.

(d) *Conduct of the Oral Presentation.*

(1) *General.* The hearing official is responsible for conducting the oral presentation. The hearing official may be assisted by one or more of his or her employees or consultants in conducting the oral presentation and hearing the evidence. While the oral presentation will be kept as informal as possible, the hearing official may take all necessary steps to ensure an orderly proceeding.

(2) *Admission of Evidence.* The formal rules of evidence do not apply and the hearing official will generally admit all testimonial evidence unless it is clearly irrelevant, immaterial, or unduly repetitious. Each party may make an opening and closing statement, may present witnesses as agreed upon in the

prehearing conference or otherwise, and may question the opposing party's witnesses. Since the parties have ample opportunity to prepare the review file,
a party may introduce additional documentation during the oral presentation only with the permission of the hearing official. The hearing official may question witnesses directly and take such other steps necessary to ensure an effective and efficient consideration of the evidence, including setting time limitations on direct and cross-examinations.

(3) *Transcripts.* The hearing official
may have the oral presentation transcribed and, if so transcribed, the transcript shall be made a part of the record. Either party may request a copy of the transcript and the requesting party shall be responsible for paying for its copy of the transcript.

(e) *Obstruction of Justice or Making of False Statements.* Obstruction of justice or the making of false statements by a witness or any other person may be the basis for a criminal prosecution under 18 U.S.C. 1505, 1001, or related statutes or regulations.

(f) *Post-hearing Procedures.* At his or
her discretion, the hearing official may require or permit the parties to submit post-hearing briefs or proposed findings and conclusions. Each party may submit comments on any major prejudicial errors in the transcript.

### Sec. 5. Burden of Proof

In all cases, the Government bears the burden of proving by a preponderance of the evidence that the State has not complied with the relevant provisions of the law. However, if a State is required to expend or otherwise account for money in a particular manner, the State shall have the burden of producing audible records to show how the money was spent or otherwise accounted for or there will be a presumption created that the State did not expend or otherwise account for the funds correctly.

### Sec. 6. Ex Parte Communications

Except for minor or routine administrative and procedural matters, a party shall not communicate with the hearing official or his or her staff on the matter without notice to the other party. All written communications to the hearing official shall simultaneously be submitted to the other party.

### Sec. 7. Transmission of Written Communications and Calculation of Deadlines

(a) Because of the importance of a timely review, all written communications are to be transmitted by facsimile or overnight express mail.

The date of transmission (for facsimile) or the day following mailing (for overnight mail) will be considered the date of receipt.

(b) In counting days, include
Saturdays, Sundays, and holidays. However, if a due date falls on a Saturday, Sunday, or Federal holiday, then the due date is the next Federal working day.

### Sec. 8. Appointment of and Authority and Responsibilities of Hearing Official

There shall only be one hearing official appointed to the case and that hearing official shall be appointed by the Administrator of SAMHSA. In addition to any other authority specified in these procedures, the hearing official shall have the authority to issue orders; examine witnesses; take all steps necessary for the conduct of an orderly

copy of the recommendation to the State and SAMHSA.

(b) *Date of Recommendation.* The hearing official will attempt to issue his or her recommendation within 15 days of the date of the oral presentation, the date on which the transcript is received, or the date of the last submission by either party, whichever is later. If there is no oral presentation, the recommendation will normally be issued within 15 days of the date of receipt of the last reply brief. Once issued, the hearing official will immediately communicate the recommendation to each party.

Dated: March 28, 1995. **Nelba Chavez,** *Administrator.*

[FR Doc. 95–8648 Filed 4–7–95; 8:45 am]

**BILLING CODE 4162–20–M**

telephone (202) 708–0050. This is not a toll-free number. Copies of the proposed forms and other available documents submitted to OMB may be obtained from Ms. Weaver.

**SUPPLEMENTARY INFORMATION:** The Department has submitted the proposals for the collections of information, as described below, to OMB for review, as required by the Paperwork Reduction act (44 U.S.C. Chapter 35).

The Notices list the following information: (1) The title of the information collection proposal; (2) the office of the agency to collect the information; (3) the description of the need for the information and its proposed use; (4) the agency form number, if applicable; (5) what members of the public will be affected by the proposal; (6) an estimate of the total hearing; rule on requests and motions; _____ grant extensions of time for good

number of hours needed to prepare the information submission including reasons; dismiss for failure to meet deadlines or other requirements; order the parties to submit relevant information or witnesses; remand a case for further action by the respondent; waive or modify these procedures in a specific case, usually with notice to the parties; reconsider a decision where a party promptly alleges a clear error of fact or law; and to take any other action necessary to resolve disputes in accordance with the objectives of these procedures.

*Sec. 9. Administrative Record*

The administrative record of review consists of the review file including the government's notice and the State's request for a hearing; other submissions by the parties; transcripts or other records of any meetings, conference calls, or oral presentation; evidence submitted at the oral presentation; and orders and other documents issued by the hearing official.

*Sec. 10. Written Recommendation*

(a) *Issuance of Recommendation.* The hearing official shall issue a written recommendation on the case which will be transmitted to the Secretary for a final decision. The written recommendation will set forth the reasons for the recommendation and describe the basis therefore in the record. The hearing official will send a

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. N–95–3910]**

## Office of Administration; Notice of Submissions of Proposed Information Collections to OMB

**AGENCY:** Office of Administration, HUD.

**ACTION:** Notices.

---

**SUMMARY:** The proposed information collection requirements described below have been submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comment on the subject proposals.

**ADDRESSES:** Interested persons are invited to submit comment regarding these proposals. Comments must be received within thirty (30) days from the date of this Notice. Comments should refer to the proposal by name and should be sent to: Joseph F. Lackey, Jr., OMB Desk Officer, Office of Management and Budget, New Executive Office Building, Washington, DC 20503.

**FOR FURTHER INFORMATION CONTACT:**

Kay F. Weaver, Reports Management Officer, Department of Housing and Urban Development, 451 7th Street, Southwest, Washington, DC 20410,

number of respondents, frequency of response, and hours of response; (7) whether the proposal is new or an extension, reinstatement, or revision of an information collection requirement; and (8) the names and telephone numbers of an agency official familiar with the proposal and of the OMB Desk Officer for the Department.

**Authority:** Section 3507 of the Paperwork Reduction Act, 44 U.S.C. 3507; Section 7(d) of the Department of Housing and Urban Development Act, 42 U.S.C. 3535(d).

Dated: April 3, 1995.

**David S. Cristy,**

*Acting Director, Information Resources, Management Policy and Management Division.*

## Notice of Submission of Proposed Information Collection to OMB

*Proposal:* Financial Statement.

*Office:* Housing.

*Description Of The Need For The Information And Its Proposed Use:* This form is used by HUD in determining factors involved when compromises are reached with borrowers to lighten the financial burdens in given cases of Title I Home Improvement and Mobile Home Loans.

*Form Number:* HUD–56142.

*Respondents:* Individuals or Households.

*Reporting Burden:*

| | Number of respondents | | Frequency of response | | Hours per response | = | Burden hours |
|---|---|---|---|---|---|---|---|
| HUD–56142 ...................................................................... | 1,258 | 1 | ponse | 1 | | res | 1,258 |

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Esther  Urena, Program Official
**Phone**: 240-276-  **Email:** ESTHER.URENA@SAMHSA.HHS.GOV

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430