## <u>DECLARATION OF SARAH ADELMAN</u>

I, Sarah Adelman, pursuant to 28 U.S.C. § 1746, hereby declare that the following is true and correct:

1.     I am a resident of the State of New Jersey. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.     I am currently employed as the Commissioner of the New Jersey Department of Human Services ("NJDHS").  I have been employed as Commissioner since January 2021.  Prior to becoming the NJDHS Commissioner, I served as the NJDHS's Deputy Commissioner overseeing the Developmental Disabilities, Aging Services, and Medicaid Divisions.  Before that, I served in management roles at a statewide  health care organization.

3.     NJDHS is New Jersey's largest agency, serving approximately 2.1 million New Jersey residents. NJDHS serves many people in New Jersey including but not limited to individuals with a substance use disorder ("SUD") and individuals with a serious mental illness ("SMI").[1] Through one of NJDHS's largest of its eight divisions, the Division of Mental Health and Addiction Services provides through contracted agencies a significant majority of the essential direct-care programs and services designed to  combat the opioid, addiction and mental health crisis.   NJDHS is obligated to ensure that New Jerseyans are provided with, and connected to, necessary  mental health and addiction prevention, treatment and recovery support services.

---

[1] NJ DHS also serves older residents, individuals, and families with low incomes; people with developmental disabilities, or late-onset disabilities; people who are blind, visually impaired, deaf, hard of hearing, or deaf-blind; parents needing child care services, child support and/or healthcare for children; and families facing catastrophic medical expenses for their children.

4.      On the evening of March 24, 2025, I was notified that four grants awarded to NJDHS by the U.S. Department of Health and Human Services ("HHS"), Substance Abuse and Mental Health Services Administration ("SAMHSA") had been terminated, purportedly effective retroactive to the close of business that same day. The total value of the now-terminated awards is approximately $78 million, and includes Supplemental Community Mental Health Block Grant ("CMHBG") and Supplemental Substance Use Prevention Treatment and Recovery Services Block Grant ("SUPTRS") funds appropriated under the American Rescue Plan Act (ARP).

5.      HHS asserted that the terminations were "for cause" because the awards were initially intended to ameliorate the effects of COVID-19 pandemic. Each termination notice included the same identical form language stating that, "The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary." The federal government has never argued or alleged that NJDHS failed to comply with the terms and conditions of these grants.

6.      On March 28, 2025, NJDHS received updated notices regarding the cancellation of these grants, confirming that they had been terminated "for cause" and that "[t]he end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements." A true and correct copy of the corresponding Notice of Terminations and their attachments, dated March 28, 2025, are attached as Exhibit A.

7.      These abrupt terminations will have an immediate and substantial impact on NJDHS's continuum of care and the State's Block Grant funded contracts for SUD and SMI services.  Because of these terminations, NJDHS must terminate funding for approximately two hundred eight-five (285) contracted agencies and initiatives, participating in approximately forty-

3

five (45) direct care treatment, support and preventive programs.  Those agencies will have to cease providing critical SMI and SUD services, including but not limited to crisis intervention and integrated behavioral health treatment services that allow for immediate intervention for New Jerseyans who are experiencing mental health and/or substance use crises.  Moreover, because of these program disruptions, individuals who are currently receiving treatment for mental health and/or substance use disorders will be abruptly terminated from their providers with no assurances of appropriate transition. This will place their lives at significant risk.

<u>**The Community Mental Health Services Block Grant**</u>
<u>**American Rescue Plan Supplemental Award**</u>

8.      In 2021, HHS, through SAMHSA, invited the State Mental Health Authority to submit applications for supplemental CMHBG funding allocated under the American Rescue Plan Act ("ARP").

9.      The CMHBG's objective is to support grantees in carrying out plans for providing comprehensive community mental health services. According to SAMHSA, grantees of CMHBG grants can be flexible in the use of funds for both new and unique programs or to supplement their current activities, subject however to certain set-aside requirements for crisis services and first episode psychosis. The CMHBG program is authorized by sections 1911-1920 of Title XIX, Part B, Subpart I and III of the Public Health Service ("PHS") Act.

10.      The ARP funding for the CMHBG was designed to "improve and enhance the mental health… service array that serves the community."  Use of this supplemental ARP funding was not restricted to COVID-19 purposes.  To the contrary, block grant funds were "provided to support state priorities."  A true and correct copy of SAMHSA's ARPA Guidance, dated May 18, 2021, is attached as Exhibit B.

11.    As set out in its CMHBG grant application, NJDHS proposed to use ARP funding to provide authorized services that would include, among other things, evidence-based practices for early serious mental illness; up to twenty-four hour care; ambulatory and community outpatient care.  Express provision was made for the requisite set-asides for both crisis care and first episode psychosis.  The initial application and proposed budget identified a total of fifteen (15) programs and initiatives.

12.    On May 17, 2021, through a formal Notice, SAMHSA awarded NJDHS $39,121,366 in CMHBG supplemental ARP funding. The award period was from September 1, 2021 to September 30, 2025. The SAMHSA Notice of Award set forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments, dated May 17, 2021, is attached as Exhibit C.

13.    Since receiving the award, NJDHS has used the CMHBG Supplemental ARP funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and NJDHS's grant application and SAMHSA-approved spending plan.

14.    More specifically, NJDHS has used and expended CMHBG Supplemental ARP funds to provide critical access to mental health treatment and support services for thousands of New Jerseysans. For example, with these funds, New Jersey began the process to develop the necessary software and infrastructure needed to connect the public, and coordinate the care between the 988 Suicide and Crisis Lifeline and four (4) locally-based crisis contact centers.  The crisis contact centers provide critical 24/7 call, chat, and text services to connect individuals experiencing a mental health crisis with life-saving services.

15.    Funding was also allocated to numerous Peer support programs, including the Psychiatric Emergency Screening Services Peer Support initiative.  The Peer initiatives employ

individuals with lived experience.  In FY23 alone, approximately 67,000 individuals were served by the designated screening and outreach programs across all 21 counties in the state. From May 2023 to December 2023, 2,745 individuals who underwent multiple screenings and had visits to emergency rooms for psychiatric reasons received support from peer specialists funded by ARP funds. Those engaged in this initiative demonstrated a reduction in both the need for screenings and hospitalizations. Specifically, 85% of active consumers during the period did not experience repeat hospitalizations or psychiatric screenings/emergency room visits, while 95% did not require hospitalization at all.

16.    NJDHS has relied, and intended to continue to rely, upon the total amount of CMHBG ARP funds awarded and committed to NJDHS from SAMHSA – that is, $39,121,366. The NJDHS funding plan has also relied, and intended to continue to rely, upon the performance end date of September 30, 2025.  NJDHS has undertaken concerted effort to ensure the proper allocation of these resources; it verifies subaward ceilings, tracks expenditures and when necessary, seeks SAMHSA budget modification approval in order to ensure that these valuable federal resources are maximized.  As detailed in NJDHS's approved budget, any unexpended funds were to be used to, among other things, support and further develop the State's crisis continuum of care.  The abrupt loss of Block Grant funding devastates current crisis planning efforts and notably, is shuttering operational programs ***and*** programs being developed. Ironically, this abrupt termination of funding is upending the very programs and services it was helping to create.

17.    The CMHBG, including the supplemental ARP funding, operates on a reimbursement basis.  NJDHS draws down funds only after it receives, reviews, and approves its contracted providers' reports of expense.  Therefore, current records regarding NJ DHS's federal

draw downs are ***not*** reflective of the work performed or the expenses incurred, and reliance upon the draw-downs is misplaced.   Historically, NJDHS has utilized nearly all of its block grant resources, and consistent with its approved spending plan, it has every expectation that the MHBG ARP funds will not be unique.

18.     Since the May 2021 award of the supplemental CMHBG ARP funds, NJDHS has remained compliant with all requirements of the CMHBG.  These requirements include submission of annual implementation reports (which captures all CMHBG funds, including ARP funds) no later than December 1st (or next business day) of each year (unless otherwise extended by SAMHSA).  NJDHS timely filed its implementation reports for fiscal years 2021, 2022, 2023 and 2024.

19.     In addition, NJDHS also timely filed, and requested revision as necessary, its CMHBG grant application and project description.

20.     Each of NJDHS's implementation reports and grant applications described in detail both the past and planned use of the funds, including in particular the supplemental CMHBG ARP funds.  The reports and applications detailed each and every initiative—both those that were directly related to COVID-19 mitigation and prevention strategies as well as those that were not—and how the funding would be used to support that initiative.  Furthermore, each and every time NJDHS sought to modify its use of funds, NJDHS obtained approval in writing from SAMHSA before doing so.

21.     On March 24, 2025, without any prior notice or indication, and notwithstanding NJDHS's ongoing compliance with SAMHSA's requirements, SAMHSA informed NJDHS that effective March 24, 2025, its CMHBG Supplemental ARP funding was being terminated. A true and correct copy of the grant award termination notice is attached as Exhibit D.

22.    The purported basis for the grant termination, according to SAMHSA, was that these grants were issued for a limited purpose to ameliorate the effects of the pandemic, and since the pandemic has come to an end, there is cause to terminate COVID-related grants.

23.    NJDHS relied and acted upon its expectation and understanding that SAMHSA would fulfill its commitment to provide the supplemental CMHBG ARP funding it had awarded to NJDHS through the September 2025 termination date. In reliance on these funds, NJDHS has already awarded and contracted funds to various subrecipients and sub-contractors to carry out the implementation of NJDHS's proposed use of these funds, including all set-aside requirements, such as crisis services.

24.    In addition, NJDHS—which does not provide direct care to the public, but instead engages contracted providers to ensure the provision of mental health services to thousands of New Jerseyans—also entered into approximately forty-two (42) contracts or agreements based on the expectation of continued supplemental CMHBG ARP funding.  Many of these contracted entities provide direct mental health treatment to the public, and are reliant on NJDHS's fulfillment of its payment obligations to do so.  Subaward obligations include, but are not limited to, facility costs and staff expenses.

25.    The abrupt cessation of supplemental CMHBG ARP funding, which is the result of HHS's de-authorization of the expenditure of supplemental ARP funds after March 24, 2025, will cause significant harm to NJDHS, its contracted agencies, and the programs administered as described above, including but not limited to crisis services. Without the continued funding from the supplemental CMHBG ARP funding, NJDHS will not have sufficient state funds to continue operating critical services, including services that provide life-saving linkages between trained professionals and individuals expressing suicidal ideation.

26.     Termination of funding will also harm New Jerseyans directly, particularly to those individuals who are currently receiving care from NJDHS's contracted providers under the supplemental ARP funding.  Without the ability to pay these providers for services provided after March 24, 2025, NJDHS has no authority or ability to ensure that these individuals are being appropriately transitioned to other services or counselors.  This abrupt cessation of funding and resulting disruption of services endangers their lives.

27.     Prior to the grant award termination on March 24, 2025, SAMHSA had never provided NJDHS with notice, written or otherwise, that the grant administered by SAMHSA was in any way unsatisfactory.

## The Substance Use Prevention, Treatment, and Recovery Services (SUPTRS) Block Grant, Supplemental ARP Funding

28.     In 2021, HHS, through SAMHSA, invited the Single State Agency for Substance Use to submit applications for supplemental SUPTRS Block Grant funding allocated under ARP.

29.     The Substance Use Block Grant ("SUBG") Program's objective is to help plan, implement, and evaluate activities that prevent and treat substance use. The SUBG is authorized by section 1921 of Title XIX, Part B, Subpart II and III of the Public Health Service ("PHS") Act. The PHS Act required the secretary of the HHS to create regulations as a precondition to making funds available to the states and other grantees under the SUBG. Title 45 Code of Federal Regulations Part 96 was published on March 31, 1993, and The Tobacco Regulations for Substance Use Prevention, Treatment, and Recovery Services Block Grant; Final Rule, 61 Federal Register 1492 was published on January 19, 1996.

30.     Like the Supplemental ARP funding for the CMHBG program, use of the Supplemental ARP funding for the SUPTRS Block Grant program also was not restricted to COVID-19 mitigation or prevention strategies.  The ARP funding for the CMHBG was designed

to "improve and enhance the mental health… service array that serves the community."  Block grant funds were "provided to support state priorities."  See Exhibit A.

31.     As set out in its grant proposal, NJDHS intended to use the supplemental SUPTRS ARP funds to provide substance abuse treatment services throughout the state, as well as to provide primary substance abuse prevention services including but not limited to evidence-based practices like awareness and anti-stigma campaigns that limit or minimize exposure to substance use and increase the likelihood that individuals will seek treatment for substance use.

32.     On May 17, 2021, SAMHSA awarded to NJDHS a total of $38,907,646 in SUPTRS Supplemental ARP funding. The period of this award was from September 1, 2021 to September 30, 2025. The same day, SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments, dated May 17, 2021, is attached as Exhibit E.

33.     Since receiving the award, NJDHS has used the supplemental SUPTRS ARP funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and NJDHS's grant application and state spending plan.

34.     More specifically, NJDHS has used and expended supplemental SUPTRS ARP funds to provide evidence-based substance use treatment and primary substance use prevention services for thousands of New Jerseyans. These funds were allocated to enhance prevention services and to develop and staff Prevention Hubs in each of New Jersey's 21 counties, where individuals, local government entities, community organizations, youth, families and community members can obtain information and resources, get connected to outreach events, and do brief screenings and/or be connected to needed services. These 21 Prevention Hubs function as "one-stop shops" to promote effective planning, monitoring, and oversight of efforts to deliver

10

substance use disorder prevention services; to provide support for local entities to promote prevention, including schools, law enforcement, and community-based organizations; to maximize efficiency in local prevention efforts by leveraging the current infrastructure and capacity; to address prevention funding and support gaps expanded by COVID-19; and to ensure prevention resources are available in all 21 counties.

35.    In addition to these Prevention Hubs, NJDHS also distributed supplemental SUPTRS ARP funds to the Governor's Council on Alcoholism and Drug Abuse for the development of a statewide Youth Leadership Program. Through the Youth Leadership Program, prevention program has been planned and implemented for over 1.7 million New Jerseyans statewide, including over 400,000 youth; 30,000 older Americans; and 1.2 million community-wide event participants.  These prevention programs, along with other supplemental SUPTRS ARP-funded prevention services including the Crisis Prevention Warm Line and NJDHS's awareness outreach and efforts, provide crucial access to prevention services statewide.

36.    Like CMHBG, NJDHS has relied, and intended to continue to rely, upon the total amount of SUPTRS ARP funds awarded and committed to NJDHS from SAMHSA – that is, $38,907,646.  The NJDHS funding plan has also relied, and intended to continue to rely, upon the performance end date of September 30, 2025.  Again, NJDHS has undertaken concerted effort to ensure the proper allocation of these resources; it verifies subaward ceilings, tracks expenditures and when necessary, seeks SAMHSA budget modification approval in order to ensure that these valuable federal resources are maximized.  As detailed in NJDHS's approved SUPTRS budget, any unexpended funds were to be used to, among other things, support and further develop the State's SUD crisis continuum of care and prevention services.  The abrupt loss of Block Grant funding devastates NJDHS's Fiscal Year 2024-2025 combined application

plan for the CMHBG and SUPTRS block grants.  Remaining funds were to be used to continue NJDHS's work with the New Jersey Prevention Network as the lead agency across the state to oversee strategic coordination of prevention services. In addition, these funds were to be used to continue to expand New Jersey's use of web-based/mobile tools for risk messaging for adolescents and young adults, particularly in the area of over-the-counter medication use as encouraged by social media, which can lead and have led to deadly overdoses.

37.     Like CMHBG, SUPTRS block grant funding (including the supplemental ARP funding), operates on a reimbursement basis.  NJDHS draws down funds only after it receives, reviews and approves its contracted providers' reports of expense.  Therefore, current records regarding NJ DHS' federal draw-downs are not reflective of the work performed or the expenses incurred, and reliance upon the draw-downs is misplaced.   Historically, NJDHS has utilized nearly all of its block grant resources, and consistent with its approved spending plan, it has every expectation that the SUPTRS ARP funds will be near fully expended.

38.     Since the May 2021 award of the SUPTRS Supplemental ARP funds, NJDHS has remained compliant with all requirements of the grant awards.  These requirements include submission of annual implementation reports (which capture all SUPTRS funds, including ARP funds) no later than December 1st (or next business day) of each year (unless otherwise extended by SAMHSA).  NJDHS timely filed its implementation reports for fiscal years 2021, 2022, 2023, and 2024.

39.     In addition, NJDHS also timely filed, and requested revision as necessary, its SUPTRS grant application and project description.

40.     Each of NJDHS's implementation reports and combined grant applications described in detail both the past and planned use of the funds, including the supplemental

SUPTRS ARP funds.  The reports and applications detailed each and every initiative—both those that were directly related to COVID-19 mitigation and prevention strategies as well as those that were not—and how the funding would be used to support that initiative.  Furthermore, each and every time NJDHS sought to modify its use of funds, NJDHS obtained approval in writing from SAMHSA before doing so.

41.     On March 24, 2025, without any prior notice or indication, and notwithstanding NJDHS's ongoing compliance with SAMHSA's requirements, SAMHSA informed NJDHS that effective March 24, 2025, its supplemental SUPTRS ARP funding was being terminated. A true and correct copy of the grant award termination notice is attached as Exhibit F.

42.     The purported basis for the grant termination, according to SAMHSA, was that these grants were issued for a limited purpose to ameliorate the effects of the pandemic, and since the pandemic has come to an end, there is cause to terminate COVID-related grants.

43.     NJDHS relied and acted upon its expectation and understanding that SAMHSA would fulfill its commitment to provide the SUPTRS Supplemental ARP funding it had awarded to NJDHS through the September 2025 termination date. In reliance on these funds, NJDHS has executed contracts with third-party provider agencies, launched media campaigns to bring awareness across the state to the effectiveness of medication to treat addition, which demonstrated a materially significant and direct relationship with increased call volume to the 988 Crisis and Suicide hotline that links individuals in crisis with substance use services.

44.     The abrupt cessation of supplemental SUPTRS ARP funding, which purports to de-authorize the expenditure of Supplemental ARP funds after March 24, 2025, will cause significant harm.  This unprecedented action will cause a disastrous, and in most instances lasting interruption in behavioral health care, crisis response, medication assisted treatment and

community health services designed to reduce suicide, decrease risk of hospitalization and address the substance use crisis.  Individuals with a SUD will not have alternate or appropriate services immediately available, regardless of need for medication or treatment.  Absent the preservation of these Block grant resources, the health, safety and welfare of the individuals who receive care and rely on these direct care services is put at grave and imminent risk.

45.    Prior to the grant award termination on March 24, 2025, SAMHSA had never provided NJDHS with notice, written or otherwise, that the grant administered by SAMHSA was in any way unsatisfactory.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 28, 2025, at Trenton, New Jersey

_____
Sarah Adelman, Commissioner
New Jersey Department of Human Services

# EXHIBIT A

**From:**      Gerard Hughes (DHS)
**To:**        Sara Gregory
**Subject:**   FW: B08TI083538: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
**Date:**      Friday, March 28, 2025 1:58:36 PM
**Attachments:**  95-8648 BG hearing procedure.pdf

---

**From:** Pang, Wendy (SAMHSA/OFR) <Wendy.Pang@samhsa.hhs.gov>
**Sent:** Friday, March 28, 2025 1:22:56 PM
**To:** Valerie.Mielke@doh.nj.gov <Valerie.Mielke@doh.nj.gov>; Nash-Mccarter, Nekesha (SAMHSA/CSAT) <Nekesha.Nash-mccarter@samhsa.hhs.gov>; Mielke, Valerie <Valerie.Mielke@dhs.nj.gov>
**Cc:** eracorrespondence@od.nih.gov <eracorrespondence@od.nih.gov>
**Subject:** [EXTERNAL] B08TI083538: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

| *** CAUTION *** |
|---|
| This message came from an **EXTERNAL** address (Wendy.Pang@samhsa.hhs.gov). **DO NOT** click on links or attachments unless you know the sender and the content is safe. **New Jersey State Government Employees Should Forward Messages That May Be Cyber Security Risks To** PhishReport@cyber.nj.gov. |

Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated.  This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved."  The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025.  Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR).  Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**

Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov.  The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.

Enclosure

[[Correspondence Token: 3d05a565-5104-4414-9418-f6c799f30bc3]] -- Do not delete or change this line. --
Please 'Reply All' and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

This E-mail, including any attachments, may be intended solely for the personal and confidential use of the sender and recipient(s) named above. This message may include advisory, consultative and/or deliberative material and, as such, would be privileged and confidential and not a public document. Any Information in this e-mail identifying a client of the Department of Human Services is confidential. If you have received this e-mail in error, you must not review, transmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it and you must delete this message. You are requested to notify the sender by return e-mail.

The October 1994 notice required State Medicaid agencies to specify the reimbursement for the administration of the pediatric vaccines, and, if applicable, submit documentation of equal access, due by April 1 of each year, beginning April 1, 1995 (and which is effective July 1, 1995), as part of its obstetrical/pediatric payment rate State Medicaid plan amendment submittal. The notice also stated that if the State Medicaid agency elected to pay the maximum regional amount statewide, it need only specify this in its State plan amendment submittal (no additional documentation would have been needed). However, if the State Medicaid agency elected to vary the vaccine administration fee by geographic areas within the State, the State must list the administration fee, specify the methodology, and provide data for each geographic area where the maximum charges are not applied. Additionally, the notice stated that, because of the October 1, 1994 implementation date, the State plan amendment must have been submitted by December 31, 1994, and have been effective October 1, 1994. For the interim period of October 1, 1994, through March 31, 1995, the notice provided that States may claim Federal matching funds for the costs of administration of vaccines to Medicaid-eligible children using the maximum charges or lower fees established on the basis of the guidance provided in the notice. For this interim State plan amendment, the State would have been required to submit the methodology to document access to immunizations but would not have been required to supply supporting data by which Medicaid beneficiary access to immunizations was assured. Beginning April 1, 1995, documentation of equal access to immunizations would have been required to be included as part of the yearly obstetrical/pediatric State plan amendment submittal in accordance with section 1926 of the Social Security Act.

## II. Rescission of Access Guidelines

As a result of our preliminary review of public comments on the October 1994 notice regarding the documentation of access requirements, we are rescinding the requirement that States use the access guidelines to provide assurances of equal access, pending further evaluation.

Following are some of the problems the commenters identified with the access requirements:

• Difficulties in obtaining current data on the number of children in the general population who have received immunizations, despite the fact that States have data on the number of Medicaid children who have been immunized.

• Difficulties in obtaining private insurance information only on administration fee reimbursement. It is unlikely that private insurance companies will have a reimbursement rate that only covers the provider's costs for administration of the immunization.

• Difficulties in obtaining useable data currently. These problems stem from the fact that some States have not yet implemented the VFC Program for private providers.

• Difficulties in obtaining VFC Program reimbursement data. Due to the October 1, 1994, implementation date, most of the claims data that would be used to document access in April 1995 would reflect provider participation based on the current reimbursement system rather than reimbursement through the VFC program.

• Difficulties in obtaining reliable and meaningful measures of access. Commenters urged HCFA to develop meaningful measures of access for vaccines and for all other obstetrical and pediatric services.

As a result of the rescission of the access guidelines, States will not be required to provide a methodology or data to document that payment levels are sufficient to enlist enough providers so that immunizations under the State plan are available to Medicaid recipients at least to the extent that those services are available to the general population.

HCFA is forming a workgroup that will examine alternative measures of access to vaccines. After this examination is completed, we will evaluate the various suggestions of the group and formulate specific guidelines for States. These guidelines, along with responses to all other timely public comments on the October 3, 1994, notice, will be published in a final **Federal Register** document.

In accordance with the provisions of Executive Order 12866, this notice has been reviewed by the Office of Management and Budget.

(Catalog of Federal Domestic Assistance Program No. 93.778, Medical Assistance Program)

Dated: February 5, 1995.

**Bruce C. Vladeck,**

*Administrator, Health Care Financing Administration.*

Dated: March 2, 1995.

**Donna E. Shalala,**

*Secretary.*

[FR Doc. 95–8646 Filed 4–4–95; 4:13 am]

**BILLING CODE 4120–01–P**

## Substance Abuse and Mental Health Services Administration

## Hearing Procedures for Certain Issues Related to the Substance Abuse Prevention and Treatment and the Community Mental Health Services Block Grant Programs

**AGENCY:** Substance Abuse and Mental Health Services Administration (SAMHSA), HHS.

**ACTION:** Notice.

**SUMMARY:** SAMHSA administers two block grant programs: the Substance Abuse Prevention and Treatment (SAPT) Block Grant Program and the Community Mental Health Services (CMHS) Block Grant Program, both of which are authorized by Title XIX of the Public Health Service (PHS) Act. Section 1945(e) of the PHS Act provides a State the opportunity for a hearing on certain noncompliance issues relating to the block grants prior to the Secretary taking final action against the State. To the extent that the hearing procedures contained in 45 CFR part 96, subpart E, 42 CFR part 50, subpart D, or 45 CFR part 16 do not apply to the noncompliance issue raised, the guidelines established below for hearings will apply to assist in providing a prompt and orderly hearing. When these procedures are applicable, the State will be provided a copy of the procedures with the notice of noncompliance.

These procedures are currently effective. However, we are inviting comments from the public on the procedures and such comments are to be sent to the information contact person identified immediately below within 60 days from the date of this publication. Comments received will be carefully considered and may cause the procedures to be revised.

**FOR FURTHER INFORMATION CONTACT:** Richard Kopanda, Acting Executive Officer, SAMHSA, 5600 Fishers Lane, Room 12–105, Rockville, MD 20857, Telephone No. (301) 443–3875.

## Hearing Procedures

*Sec. 1. Limitations on Issues Subject to Review During the Hearing*

The scope of review shall be limited to (a) the facts relevant to the noncompliance at issue, and (b) the necessary interpretations of those facts, any applicable regulations, and other relevant law. The legal validity of any regulations or statutes shall not be subject to review under these procedures.

*Sec. 2. The Request for a Hearing and the Hearing Official's Response*

(a) The State must submit a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 days of the date of the notice of noncompliance (which will set forth the reasons for the finding of noncompliance and be accompanied by a copy of these hearing procedures), unless some other time period is agreed to by the parties. The written notice must be sent to *(name and address of person identified in the letter to the State)*. The written notice requesting a hearing must include a copy of the notice of noncompliance and a brief statement of why the decision of noncompliance is wrong.

(b) Within ten days after receiving the request for review, SAMHSA will send an acknowledgment, identify the hearing official and advise the State of the next steps.

*Sec. 3. The Procedures for Development of the Hearing File and Submission of Written Argument*

The procedures for development and the submission of written argument are as follows:

(a) *State's documents and briefs.* Within 30 days after receiving the acknowledgment of the request for a hearing, the State shall submit to the hearing official the following (with a copy of SAMHSA at the address listed in sec. 2):

(1) A written statement, not to exceed 20 double-spaced pages, explaining why the Government's determination of noncompliance is wrong.

(2) A review file containing the documents supporting the State's argument, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(b) *SAMHSA's Documents and Brief.* Within 30 days after receiving the State's submission, SAMHSA shall submit to the hearing official the following (with a copy to the State):

(1) A written statement, not exceeding 20 double-spaced pages in length, responding to the State's brief.

(2) A review file containing documents supporting the Government's decision of noncompliance, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(c) *The State's Reply Brief.* Within 15 days after receiving SAMHSA's submission, the State may submit a short reply not to exceed 10 double-spaced pages (with a copy to SAMHSA at the address listed in sec. 2).

*Sec. 4. Opportunity for Oral Presentation*

(a) *Electing Oral Presentation.* Either the Federal Government or the State may request the opportunity for an oral presentation by submitting such a request in writing to the hearing official on or before the date the State is to submit its reply brief under section 3(c). The hearing official will grant the request if the official determines that a genuine and substantial issue of fact has been raised by the material submitted and that the consideration of the issue will benefit from an oral presentation. The hearing official may also upon his or her initiative request an oral presentation by the parties.

(b) *Preliminary Conference.* The hearing official may hold a prehearing conference (usually a telephone conference call) to consider any of the following: Simplifying and clarifying issues; stipulations and admissions; limitations on evidence and witnesses that will be presented at the hearing; time allotted for each witness and the hearing altogether; scheduling the hearing; and any other matter that will assist in the review process. Normally, this conference will be conducted informally. The hearing official may, at his or her discretion, produce a written document summarizing the conference or transcribe the conference, either of which will be made a part of the record.

(c) *Time and Place of Oral Presentation.* The hearing official will attempt to schedule the oral presentation, if granted, within 30 days of the date of the last reply brief. The oral presentation will be held at a time and place determined by the hearing official following consultation with the parties.

(d) *Conduct of the Oral Presentation.*

(1) *General.* The hearing official is responsible for conducting the oral presentation. The hearing official may be assisted by one or more of his or her employees or consultants in conducting the oral presentation and hearing the evidence. While the oral presentation will be kept as informal as possible, the hearing official may take all necessary steps to ensure an orderly proceeding.

(2) *Admission of Evidence.* The formal rules of evidence do not apply and the hearing official will generally admit all testimonial evidence unless it is clearly irrelevant, immaterial, or unduly repetitious. Each party may make an opening and closing statement, may present witnesses as agreed upon in the prehearing conference or otherwise, and may question the opposing party's witnesses. Since the parties have ample opportunity to prepare the review file, a party may introduce additional documentation during the oral presentation only with the permission of the hearing official. The hearing official may question witnesses directly and take such other steps necessary to ensure an effective and efficient consideration of the evidence, including setting time limitations on direct and cross-examinations.

(3) *Transcripts.* The hearing official may have the oral presentation transcribed and, if so transcribed, the transcript shall be made a part of the record. Either party may request a copy of the transcript and the requesting party shall be responsible for paying for its copy of the transcript.

(e) *Obstruction of Justice or Making of False Statements.* Obstruction of justice or the making of false statements by a witness or any other person may be the basis for a criminal prosecution under 18 U.S.C. 1505, 1001, or related statutes or regulations.

(f) *Post-hearing Procedures.* At his or her discretion, the hearing official may require or permit the parties to submit post-hearing briefs or proposed findings and conclusions. Each party may submit comments on any major prejudicial errors in the transcript.

*Sec. 5. Burden of Proof*

In all cases, the Government bears the burden of proving by a preponderance of the evidence that the State has not complied with the relevant provisions of the law. However, if a State is required to expend or otherwise account for money in a particular manner, the State shall have the burden of producing audible records to show how the money was spent or otherwise accounted for or there will be a presumption created that the State did not expend or otherwise account for the funds correctly.

*Sec. 6. Ex Parte Communications*

Except for minor or routine administrative and procedural matters, a party shall not communicate with the hearing official or his or her staff on the matter without notice to the other party. All written communications to the hearing official shall simultaneously be submitted to the other party.

*Sec. 7. Transmission of Written Communications and Calculation of Deadlines*

(a) Because of the importance of a timely review, all written communications are to be transmitted by facsimile or overnight express mail.

The date of transmission (for facsimile) or the day following mailing (for overnight mail) will be considered the date of receipt.

(b) In counting days, include Saturdays, Sundays, and holidays. However, if a due date falls on a Saturday, Sunday, or Federal holiday, then the due date is the next Federal working day.

*Sec. 8. Appointment of and Authority and Responsibilities of Hearing Official*

There shall only be one hearing official appointed to the case and that hearing official shall be appointed by the Administrator of SAMHSA. In addition to any other authority specified in these procedures, the hearing official shall have the authority to issue orders; examine witnesses; take all steps necessary for the conduct of an orderly hearing; rule on requests and motions; grant extensions of time for good reasons; dismiss for failure to meet deadlines or other requirements; order the parties to submit relevant information or witnesses; remand a case for further action by the respondent; waive or modify these procedures in a specific case, usually with notice to the parties; reconsider a decision where a party promptly alleges a clear error of fact or law; and to take any other action necessary to resolve disputes in accordance with the objectives of these procedures.

*Sec. 9. Administrative Record*

The administrative record of review consists of the review file including the government's notice and the State's request for a hearing; other submissions by the parties; transcripts or other records of any meetings, conference calls, or oral presentation; evidence submitted at the oral presentation; and orders and other documents issued by the hearing official.

*Sec. 10. Written Recommendation*

(a) *Issuance of Recommendation.* The hearing official shall issue a written recommendation on the case which will be transmitted to the Secretary for a final decision. The written recommendation will set forth the reasons for the recommendation and describe the basis therefore in the record. The hearing official will send a copy of the recommendation to the State and SAMHSA.

(b) *Date of Recommendation.* The hearing official will attempt to issue his or her recommendation within 15 days of the date of the oral presentation, the date on which the transcript is received, or the date of the last submission by either party, whichever is later. If there is no oral presentation, the recommendation will normally be issued within 15 days of the date of receipt of the last reply brief. Once issued, the hearing official will immediately communicate the recommendation to each party.

Dated: March 28, 1995.

**Nelba Chavez,**

*Administrator.*

[FR Doc. 95–8648 Filed 4–7–95; 8:45 am]

**BILLING CODE 4162–20–M**

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

[Docket No. N–95–3910]

## Office of Administration; Notice of Submissions of Proposed Information Collections to OMB

**AGENCY:** Office of Administration, HUD.

**ACTION:** Notices.

**SUMMARY:** The proposed information collection requirements described below have been submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comment on the subject proposals.

**ADDRESSES:** Interested persons are invited to submit comment regarding these proposals. Comments must be received within thirty (30) days from the date of this Notice. Comments should refer to the proposal by name and should be sent to: Joseph F. Lackey, Jr., OMB Desk Officer, Office of Management and Budget, New Executive Office Building, Washington, DC 20503.

**FOR FURTHER INFORMATION CONTACT:** Kay F. Weaver, Reports Management Officer, Department of Housing and Urban Development, 451 7th Street, Southwest, Washington, DC 20410,

telephone (202) 708–0050. This is not a toll-free number. Copies of the proposed forms and other available documents submitted to OMB may be obtained from Ms. Weaver.

**SUPPLEMENTARY INFORMATION:** The Department has submitted the proposals for the collections of information, as described below, to OMB for review, as required by the Paperwork Reduction act (44 U.S.C. Chapter 35).

The Notices list the following information: (1) The title of the information collection proposal; (2) the office of the agency to collect the information; (3) the description of the need for the information and its proposed use; (4) the agency form number, if applicable; (5) what members of the public will be affected by the proposal; (6) an estimate of the total number of hours needed to prepare the information submission including number of respondents, frequency of response, and hours of response; (7) whether the proposal is new or an extension, reinstatement, or revision of an information collection requirement; and (8) the names and telephone numbers of an agency official familiar with the proposal and of the OMB Desk Officer for the Department.

**Authority:** Section 3507 of the Paperwork Reduction Act, 44 U.S.C. 3507; Section 7(d) of the Department of Housing and Urban Development Act, 42 U.S.C. 3535(d).

Dated: April 3, 1995.

**David S. Cristy,**

*Acting Director, Information Resources, Management Policy and Management Division.*

## Notice of Submission of Proposed Information Collection to OMB

*Proposal:* Financial Statement.

*Office:* Housing.

*Description Of The Need For The Information And Its Proposed Use:* This form is used by HUD in determining factors involved when compromises are reached with borrowers to lighten the financial burdens in given cases of Title I Home Improvement and Mobile Home Loans.

*Form Number:* HUD–56142.

*Respondents:* Individuals or Households.

*Reporting Burden:*

| | Number of respondents | × | Frequency of response | × | Hours per response | = | Burden hours |
|---|---|---|---|---|---|---|---|
| HUD–56142 .................................................. | 1,258 | | 1 | | 1 | | 1,258 |

**From:** Gerard Hughes (DHS)
**To:** Sara Gregory
**Subject:** FW: [EXTERNAL] B08TI083956: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
**Date:** Friday, March 28, 2025 1:58:50 PM
**Attachments:** 95-8648 BG hearing procedure.pdf

---

**From:** wendy.pang@samhsa.hhs.gov <wendy.pang@samhsa.hhs.gov>
**Sent:** Friday, March 28, 2025 12:50:51 PM
**To:** valerie.mielke@dhs.state <valerie.mielke@dhs.state>; Mielke, Valerie
<Valerie.Mielke@dhs.nj.gov>
**Cc:** Nekesha.Nash-McCarter@samhsa.hhs.gov <Nekesha.Nash-McCarter@samhsa.hhs.gov>;
wendy.pang@samhsa.hhs.gov <wendy.pang@samhsa.hhs.gov>; eracorrespondence@od.nih.gov
<eracorrespondence@od.nih.gov>
**Subject:** [EXTERNAL] B08TI083956: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

**\*\*\* CAUTION \*\*\***

This message came from an **EXTERNAL** address **(wendy.pang@samhsa.hhs.gov)**. **DO NOT** click on links or attachments unless you know the sender and the content is safe. **New Jersey State Government Employees Should Forward Messages That May Be Cyber Security Risks To PhishReport@cyber.nj.gov.**

Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated. This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025. Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**

Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov. The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.


Enclosure

[[Correspondence Token: 0e76ffd8-7f49-4e56-b5f9-99aea897cd44]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

This E-mail, including any attachments, may be intended solely for the personal and confidential use of the sender and recipient(s) named above. This message may include advisory, consultative and/or deliberative material and, as such, would be privileged and confidential and not a public document.

Any Information in this e-mail identifying a client of the Department of Human Services is confidential. If you have received this e-mail in error, you must not review, transmit, convert to hard copy, copy, use or disseminate this e-mail or any attachments to it and you must delete this message. You are requested to notify the sender by return e-mail.

The October 1994 notice required State Medicaid agencies to specify the reimbursement for the administration of the pediatric vaccines, and, if applicable, submit documentation of equal access, due by April 1 of each year, beginning April 1, 1995 (and which is effective July 1, 1995), as part of its obstetrical/pediatric payment rate State Medicaid plan amendment submittal. The notice also stated that if the State Medicaid agency elected to pay the maximum regional amount statewide, it need only specify this in its State plan amendment submittal (no additional documentation would have been needed). However, if the State Medicaid agency elected to vary the vaccine administration fee by geographic areas within the State, the State must list the administration fee, specify the methodology, and provide data for each geographic area where the maximum charges are not applied. Additionally, the notice stated that, because of the October 1, 1994 implementation date, the State plan amendment must have been submitted by December 31, 1994, and have been effective October 1, 1994. For the interim period of October 1, 1994, through March 31, 1995, the notice provided that States may claim Federal matching funds for the costs of administration of vaccines to Medicaid-eligible children using the maximum charges or lower fees established on the basis of the guidance provided in the notice. For this interim State plan amendment, the State would have been required to submit the methodology to document access to immunizations but would not have been required to supply supporting data by which Medicaid beneficiary access to immunizations was assured. Beginning April 1, 1995, documentation of equal access to immunizations would have been required to be included as part of the yearly obstetrical/pediatric State plan amendment submittal in accordance with section 1926 of the Social Security Act.

## II. Rescission of Access Guidelines

As a result of our preliminary review of public comments on the October 1994 notice regarding the documentation of access requirements, we are rescinding the requirement that States use the access guidelines to provide assurances of equal access, pending further evaluation.

Following are some of the problems the commenters identified with the access requirements:

• Difficulties in obtaining current data on the number of children in the general population who have received immunizations, despite the fact that States have data on the number of Medicaid children who have been immunized.

• Difficulties in obtaining private insurance information only on administration fee reimbursement. It is unlikely that private insurance companies will have a reimbursement rate that only covers the provider's costs for administration of the immunization.

• Difficulties in obtaining useable data currently. These problems stem from the fact that some States have not yet implemented the VFC Program for private providers.

• Difficulties in obtaining VFC Program reimbursement data. Due to the October 1, 1994, implementation date, most of the claims data that would be used to document access in April 1995 would reflect provider participation based on the current reimbursement system rather than reimbursement through the VFC program.

• Difficulties in obtaining reliable and meaningful measures of access. Commenters urged HCFA to develop meaningful measures of access for vaccines and for all other obstetrical and pediatric services.

As a result of the rescission of the access guidelines, States will not be required to provide a methodology or data to document that payment levels are sufficient to enlist enough providers so that immunizations under the State plan are available to Medicaid recipients at least to the extent that those services are available to the general population.

HCFA is forming a workgroup that will examine alternative measures of access to vaccines. After this examination is completed, we will evaluate the various suggestions of the group and formulate specific guidelines for States. These guidelines, along with responses to all other timely public comments on the October 3, 1994, notice, will be published in a final **Federal Register** document.

In accordance with the provisions of Executive Order 12866, this notice has been reviewed by the Office of Management and Budget.

(Catalog of Federal Domestic Assistance Program No. 93.778, Medical Assistance Program)

Dated: February 5, 1995.

**Bruce C. Vladeck,**

*Administrator, Health Care Financing Administration.*

Dated: March 2, 1995.

**Donna E. Shalala,**

*Secretary.*

[FR Doc. 95–8646 Filed 4–4–95; 4:13 am]

**BILLING CODE 4120–01–P**

## Substance Abuse and Mental Health Services Administration

## Hearing Procedures for Certain Issues Related to the Substance Abuse Prevention and Treatment and the Community Mental Health Services Block Grant Programs

**AGENCY:** Substance Abuse and Mental Health Services Administration (SAMHSA), HHS.

**ACTION:** Notice.

**SUMMARY:** SAMHSA administers two block grant programs: the Substance Abuse Prevention and Treatment (SAPT) Block Grant Program and the Community Mental Health Services (CMHS) Block Grant Program, both of which are authorized by Title XIX of the Public Health Service (PHS) Act. Section 1945(e) of the PHS Act provides a State the opportunity for a hearing on certain noncompliance issues relating to the block grants prior to the Secretary taking final action against the State. To the extent that the hearing procedures contained in 45 CFR part 96, subpart E, 42 CFR part 50, subpart D, or 45 CFR part 16 do not apply to the noncompliance issue raised, the guidelines established below for hearings will apply to assist in providing a prompt and orderly hearing. When these procedures are applicable, the State will be provided a copy of the procedures with the notice of noncompliance.

These procedures are currently effective. However, we are inviting comments from the public on the procedures and such comments are to be sent to the information contact person identified immediately below within 60 days from the date of this publication. Comments received will be carefully considered and may cause the procedures to be revised.

**FOR FURTHER INFORMATION CONTACT:** Richard Kopanda, Acting Executive Officer, SAMHSA, 5600 Fishers Lane, Room 12–105, Rockville, MD 20857, Telephone No. (301) 443–3875.

## Hearing Procedures

*Sec. 1. Limitations on Issues Subject to Review During the Hearing*

The scope of review shall be limited to (a) the facts relevant to the noncompliance at issue, and (b) the necessary interpretations of those facts, any applicable regulations, and other relevant law. The legal validity of any regulations or statutes shall not be subject to review under these procedures.

*Sec. 2. The Request for a Hearing and the Hearing Official's Response*

(a) The State must submit a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 days of the date of the notice of noncompliance (which will set forth the reasons for the finding of noncompliance and be accompanied by a copy of these hearing procedures), unless some other time period is agreed to by the parties. The written notice must be sent to *(name and address of person identified in the letter to the State).* The written notice requesting a hearing must include a copy of the notice of noncompliance and a brief statement of why the decision of noncompliance is wrong.

(b) Within ten days after receiving the request for review, SAMHSA will send an acknowledgment, identify the hearing official and advise the State of the next steps.

*Sec. 3. The Procedures for Development of the Hearing File and Submission of Written Argument*

The procedures for development and the submission of written argument are as follows:

(a) *State's documents and briefs.* Within 30 days after receiving the acknowledgment of the request for a hearing, the State shall submit to the hearing official the following (with a copy of SAMHSA at the address listed in sec. 2):

(1) A written statement, not to exceed 20 double-spaced pages, explaining why the Government's determination of noncompliance is wrong.

(2) A review file containing the documents supporting the State's argument, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(b) *SAMHSA's Documents and Brief.* Within 30 days after receiving the State's submission, SAMHSA shall submit to the hearing official the following (with a copy to the State):

(1) A written statement, not exceeding 20 double-spaced pages in length, responding to the State's brief.

(2) A review file containing documents supporting the Government's decision of noncompliance, tabbed and reasonably organized, and accompanied by an index identifying each document. Only essential documents should be submitted to the hearing official.

(c) *The State's Reply Brief.* Within 15 days after receiving SAMHSA's

submission, the State may submit a short reply not to exceed 10 double-spaced pages (with a copy to SAMHSA at the address listed in sec. 2).

*Sec. 4. Opportunity for Oral Presentation*

(a) *Electing Oral Presentation.* Either the Federal Government or the State may request the opportunity for an oral presentation by submitting such a request in writing to the hearing official on or before the date the State is to submit its reply brief under section 3(c). The hearing official will grant the request if the official determines that a genuine and substantial issue of fact has been raised by the material submitted and that the consideration of the issue will benefit from an oral presentation. The hearing official may also upon his or her initiative request an oral presentation by the parties.

(b) *Preliminary Conference.* The hearing official may hold a prehearing conference (usually a telephone conference call) to consider any of the following: Simplifying and clarifying issues; stipulations and admissions; limitations on evidence and witnesses that will be presented at the hearing; time allotted for each witness and the hearing altogether; scheduling the hearing; and any other matter that will assist in the review process. Normally, this conference will be conducted informally. The hearing official may, at his or her discretion, produce a written document summarizing the conference or transcribe the conference, either of which will be made a part of the record.

(c) *Time and Place of Oral Presentation.* The hearing official will attempt to schedule the oral presentation, if granted, within 30 days of the date of the last reply brief. The oral presentation will be held at a time and place determined by the hearing official following consultation with the parties.

(d) *Conduct of the Oral Presentation.*

(1) *General.* The hearing official is responsible for conducting the oral presentation. The hearing official may be assisted by one or more of his or her employees or consultants in conducting the oral presentation and hearing the evidence. While the oral presentation will be kept as informal as possible, the hearing official may take all necessary steps to ensure an orderly proceeding.

(2) *Admission of Evidence.* The formal rules of evidence do not apply and the hearing official will generally admit all testimonial evidence unless it is clearly irrelevant, immaterial, or unduly repetitious. Each party may make an opening and closing statement, may present witnesses as agreed upon in the

prehearing conference or otherwise, and may question the opposing party's witnesses. Since the parties have ample opportunity to prepare the review file, a party may introduce additional documentation during the oral presentation only with the permission of the hearing official. The hearing official may question witnesses directly and take such other steps necessary to ensure an effective and efficient consideration of the evidence, including setting time limitations on direct and cross-examinations.

(3) *Transcripts.* The hearing official may have the oral presentation transcribed and, if so transcribed, the transcript shall be made a part of the record. Either party may request a copy of the transcript and the requesting party shall be responsible for paying for its copy of the transcript.

(e) *Obstruction of Justice or Making of False Statements.* Obstruction of justice or the making of false statements by a witness or any other person may be the basis for a criminal prosecution under 18 U.S.C. 1505, 1001, or related statutes or regulations.

(f) *Post-hearing Procedures.* At his or her discretion, the hearing official may require or permit the parties to submit post-hearing briefs or proposed findings and conclusions. Each party may submit comments on any major prejudicial errors in the transcript.

*Sec. 5. Burden of Proof*

In all cases, the Government bears the burden of proving by a preponderance of the evidence that the State has not complied with the relevant provisions of the law. However, if a State is required to expend or otherwise account for money in a particular manner, the State shall have the burden of producing audible records to show how the money was spent or otherwise accounted for or there will be a presumption created that the State did not expend or otherwise account for the funds correctly.

*Sec. 6. Ex Parte Communications*

Except for minor or routine administrative and procedural matters, a party shall not communicate with the hearing official or his or her staff on the matter without notice to the other party. All written communications to the hearing official shall simultaneously be submitted to the other party.

*Sec. 7. Transmission of Written Communications and Calculation of Deadlines*

(a) Because of the importance of a timely review, all written communications are to be transmitted by facsimile or overnight express mail.

The date of transmission (for facsimile) or the day following mailing (for overnight mail) will be considered the date of receipt.

(b) In counting days, include Saturdays, Sundays, and holidays. However, if a due date falls on a Saturday, Sunday, or Federal holiday, then the due date is the next Federal working day.

*Sec. 8. Appointment of and Authority and Responsibilities of Hearing Official*

There shall only be one hearing official appointed to the case and that hearing official shall be appointed by the Administrator of SAMHSA. In addition to any other authority specified in these procedures, the hearing official shall have the authority to issue orders; examine witnesses; take all steps necessary for the conduct of an orderly hearing; rule on requests and motions; grant extensions of time for good reasons; dismiss for failure to meet deadlines or other requirements; order the parties to submit relevant information or witnesses; remand a case for further action by the respondent; waive or modify these procedures in a specific case, usually with notice to the parties; reconsider a decision where a party promptly alleges a clear error of fact or law; and to take any other action necessary to resolve disputes in accordance with the objectives of these procedures.

*Sec. 9. Administrative Record*

The administrative record of review consists of the review file including the government's notice and the State's request for a hearing; other submissions by the parties; transcripts or other records of any meetings, conference calls, or oral presentation; evidence submitted at the oral presentation; and orders and other documents issued by the hearing official.

*Sec. 10. Written Recommendation*

(a) *Issuance of Recommendation.* The hearing official shall issue a written recommendation on the case which will be transmitted to the Secretary for a final decision. The written recommendation will set forth the reasons for the recommendation and describe the basis therefore in the record. The hearing official will send a copy of the recommendation to the State and SAMHSA.

(b) *Date of Recommendation.* The hearing official will attempt to issue his or her recommendation within 15 days of the date of the oral presentation, the date on which the transcript is received, or the date of the last submission by either party, whichever is later. If there is no oral presentation, the recommendation will normally be issued within 15 days of the date of receipt of the last reply brief. Once issued, the hearing official will immediately communicate the recommendation to each party.

Dated: March 28, 1995.

**Nelba Chavez,**
*Administrator.*

[FR Doc. 95–8648 Filed 4–7–95; 8:45 am]

**BILLING CODE 4162–20–M**

---

# DEPARTMENT OF HOUSING AND URBAN DEVELOPMENT

**[Docket No. N–95–3910]**

## Office of Administration; Notice of Submissions of Proposed Information Collections to OMB

**AGENCY:** Office of Administration, HUD.

**ACTION:** Notices.

**SUMMARY:** The proposed information collection requirements described below have been submitted to the Office of Management and Budget (OMB) for review, as required by the Paperwork Reduction Act. The Department is soliciting public comment on the subject proposals.

**ADDRESSES:** Interested persons are invited to submit comment regarding these proposals. Comments must be received within thirty (30) days from the date of this Notice. Comments should refer to the proposal by name and should be sent to: Joseph F. Lackey, Jr., OMB Desk Officer, Office of Management and Budget, New Executive Office Building, Washington, DC 20503.

**FOR FURTHER INFORMATION CONTACT:** Kay F. Weaver, Reports Management Officer, Department of Housing and Urban Development, 451 7th Street, Southwest, Washington, DC 20410,

telephone (202) 708–0050. This is not a toll-free number. Copies of the proposed forms and other available documents submitted to OMB may be obtained from Ms. Weaver.

**SUPPLEMENTARY INFORMATION:** The Department has submitted the proposals for the collections of information, as described below, to OMB for review, as required by the Paperwork Reduction act (44 U.S.C. Chapter 35).

The Notices list the following information: (1) The title of the information collection proposal; (2) the office of the agency to collect the information; (3) the description of the need for the information and its proposed use; (4) the agency form number, if applicable; (5) what members of the public will be affected by the proposal; (6) an estimate of the total number of hours needed to prepare the information submission including number of respondents, frequency of response, and hours of response; (7) whether the proposal is new or an extension, reinstatement, or revision of an information collection requirement; and (8) the names and telephone numbers of an agency official familiar with the proposal and of the OMB Desk Officer for the Department.

**Authority:** Section 3507 of the Paperwork Reduction Act, 44 U.S.C. 3507; Section 7(d) of the Department of Housing and Urban Development Act, 42 U.S.C. 3535(d).

Dated: April 3, 1995.

**David S. Cristy,**
*Acting Director, Information Resources, Management Policy and Management Division.*

## Notice of Submission of Proposed Information Collection to OMB

*Proposal:* Financial Statement.

*Office:* Housing.

*Description Of The Need For The Information And Its Proposed Use:* This form is used by HUD in determining factors involved when compromises are reached with borrowers to lighten the financial burdens in given cases of Title I Home Improvement and Mobile Home Loans.

*Form Number:* HUD–56142.

*Respondents:* Individuals or Households.

*Reporting Burden:*

| | Number of respondents | × | Frequency of response | × | Hours per response | = | Burden hours |
|---|---|---|---|---|---|---|---|
| HUD–56142 .................................................................... | 1,258 | | 1 | | 1 | | 1,258 |

# EXHIBIT B

# SAMHSA

Substance Abuse and Mental Health
Services Administration

5600 Fishers Lane • Rockville, MD 20857
www.samhsa.gov • 1-877-SAMHSA-7 (1-877-726-4727)



May 18, 2021

Dear Single State Authority Director and State Mental Health Commissioner:

Public Law 117-2, the American Rescue Plan Act of 2021 (ARPA), signed by President Biden on March 11, 2021, directed the Substance Abuse and Mental Health Services Administration (SAMHSA) to provide additional funds to support states through Block Grants to address the effects of the COVID -19 pandemic for Americans with mental illness and substance use disorders. The COVID-19 pandemic has exposed and exacerbated severe and pervasive health and social inequities in America, including the critical importance of supporting people with mental illness and substance use disorders. As the pandemic swept through the states, societal stress and distress over this newly emerging disaster created the need for nimble and evolving policy and planning in addressing mental and substance use disorder services. SAMHSA, through this guidance, is asking states to improve and enhance the mental health and substance use service array that serves the community.

ARPA allocated $1.5 billion each for Mental Health Block Grant (MHBG) and Substance Abuse Prevention and Treatment Block (SABG) grants to the states. States have until September 30, 2025, to expend these funds. Federal block grant monies are provided to support state priorities and SAMHSA asks that states consider the following in developing an ARPA Funding Plan.

## A.  MHBG Guidance

States must spend the MHBG funds based on 42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart I: Block Grants for Community Mental Health Services for adults with serious mental illness (SMI) and children with serious emotional disturbance (SED). () Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to coronavirus.

The MHBG allocation requires states to set aside ten percent (10%) of their total allocation for first-episode psychosis or early SMI programs.

SAMHSA encourages states to consider a focus on support of a behavioral health crisis continuum. An effective statewide crisis system affords equal access to crisis supports that meet needs anytime, anyplace, and for anyone. This includes those living in remote areas and underserved communities as well as youth, older adults, persons of diverse backgrounds, and other marginalized populations; the crisis service continuum will need to be able to equally and adeptly serve everyone. SAMHSA recommends states consider use of the ARPA MHBG funds to develop, enhance, or improve the following:

- Develop partnerships with the emerging Suicide Lifeline (9-8-8) systems, Law Enforcement, EMS, health care providers, housing authorities, Housing and Urban Development (HUD) Continuum of Care, hospital systems, peer-based recovery organizations, and substance use specific treatment providers, all of whom have a critical role in the crisis continuum.
- Utilize five percent of funds for crisis services, as described in the FY 2021 appropriations language.
- A comprehensive 24/7 crisis continuum for children including screening and assessment; mobile crisis response and stabilization; residential crisis services; psychiatric consultation; referrals and warm hand-offs to home- and community-based services; and ongoing care coordination.
- Provide increased outpatient access, including same-day or next-day appointments, for those in crisis.
- Improve information technology infrastructure, including the availability of broadband and cellular technology for providers, especially in rural and frontier areas; use of GPS, to expedite response times, and to remotely meet with the individual in crisis.
- The adoption and use of health information technology, such as electronic health records, to improve access to and coordination of behavioral health services and care delivery.
- Consider digital platforms, such as Network of Care, which facilitate access to behavioral health services for persons with SMI-SED.
- Advance telehealth opportunities to expand crisis services for hard to reach locations, especially rural and frontier areas. Expand technology options for callers, including the use of texting, telephone, and telehealth. Note: States cannot use the funds to purchase any items for consumers/clients.
- Implement an electronic bed registry that coordinates with existing HHS provider directory efforts and treatment locator system that will help people access information on crisis bed facilities, including their locations, available services, and contact information.
- Support for crisis and school-based services that promote access to care for children with SED.
- Develop medication-assisted treatment (MAT) protocols to assist children and adults who are in crisis, which may leverage telehealth when possible.
- Expand Assisted Outpatient Treatment (AOT) services.
- Develop outpatient intensive Crisis Stabilization Teams to avert and address crisis.
- Technical Assistance for the development of enhanced treatment and recovery support services including planning for Certified Community Behavioral Health Clinics (CCBHC).

SAMHSA requests that the following information is included when submitting the proposals:

1. Identify the needs and gaps of your state's mental health services continuum including prevention, intervention, access to crisis services, treatment, and recovery support services.

2. Identify the needs and gaps of your state's mental health services related to developing a comprehensive crisis continuum. Focus on access to your states services through crisis call centers with local knowledge of available services, availability of mobile crisis response teams and crisis receiving and stabilization services.

3. Describe your state's spending plan proposal, including a budget that addresses the needs and gaps related to crisis and services continuum.

4. Describe how the state will advance the development of crisis and other needed prevention, intervention, treatment and recovery support services so that your state's system is responsive to the needs of your residents with SMI and SED. Refer to the Guidebook on crisis services.

5. Explain how your state plans to collaborate with other departments or agencies to address crisis, treatment, and recovery support services.

6. Describe how the state plans to spend the ten percent set aside for first-episode psychosis/early SMI and, if applicable, the five percent set aside for crisis services.

7. Describe other state priorities or activities that the state plans to fund during the performance period using ARPA funds, with consideration given to disproportionately high rates of MH/SUD in certain communities and disparities in COVID-19 BH-related outcomes by race, ethnicity, and other factors.

8. Describe how the state will use, or consider, health IT standards if using funds for health IT infrastructure or advancement. This includes a description of standards and, as applicable, conformance to Office of the National Coordinator certification criteria in health IT products used or that will be used to support behavioral health clinical priorities and interoperable data exchange.  States must use standards identified by the Office of the National Coordinator for Health IT in 45 C.F.R. 170 where applicable and also should consider standards identified in the Interoperability Standards Advisory (https://www.healthit.gov/isa/), including but not limited to those standards described in the, the "Allows for the Exchange of State Prescription Drug Monitoring Program (PDMP) Data" section and the "Social Determinants of Health" section.

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [MH]. Please title this document "ARPA Funding Plan 2021 (MH)."

**B. SABG Guidance**

States are required to plan for, expend, and report on the FY 21 SABG ARPA Supplemental Funding based on 42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart II: Block Grants for Prevention and Treatment of Substance Abuse, and 45 CFR, Part 96, Subpart L.

Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the SABG as deemed necessary to facilitate a grantee's response to coronavirus.

Accordingly, all regular provisions of the statute and regulations pertaining to the SABG are fully applicable to the planning and expenditure of the SABG ARPA Supplemental Funding.

This includes, but is not limited to, the definitions, assurances, requirements, and restrictions of the SABG standard funding.

The SABG allocation requires states to expend not less than twenty percent (20%) of their total allocation for substance use disorder (SUD) primary prevention services for individuals who do not require treatment for substance abuse, in accordance with 42 USC 300x-22 and 45 CFR 96.124 and 96.125. The SABG allocation also requires "designated states" to expend five percent (5%) of their total allocation for EIS/HIV Services, in accordance with 42 USC 300x-24(b) and 45 CFR 96.128.

The SUD prevention, intervention, treatment, and recovery support services continuum includes various evidence-based services and supports for individuals, families, and communities. Integral to the SABG are its efforts to support health equity through its priority focus on the provision of SUD prevention, treatment, and recovery support services to identified underserved populations. These underserved and marginalized populations include, but are not limited to, pregnant women and women with dependent children; persons who inject drugs; persons using opioids and/or stimulant drugs associated with drug overdoses; persons at risk for HIV, TB, and Hepatitis; persons experiencing homelessness; persons involved in the justice system; persons involved in the child welfare system; Black, Indigenous, and People of Color (BIPOC); LGBTQ individuals; rural populations; and other underserved groups.

SAMHSA recommends states develop, enhance or improve the following through the SABG ARPA funds:

- Develop and expand the use of FDA-approved medications and digital therapeutics as a part of addiction treatment that can provide interactive, evidence-based behavioral therapies for the treatment of opioid use disorders, alcohol use disorders, and tobacco use disorders, along with the implementation of other evidence-based treatments and practices.
- Provide increased access, including same-day or next-day appointments, and low barrier approaches, for those in need of SUD treatment services.
- Direct critical resources in expanding broad-based state and local community strategies and approaches in addressing the drug overdose epidemic, involving SUD prevention, intervention, treatment, and recovery support services.
- Improve information technology infrastructure, including the availability of broadband and cellular technology for providers, especially in rural and frontier areas, and use of GPS to expedite response times and to remotely meet with the individual in need of services.
- The adoption and use of health information technology to improve access to and coordination of SUD prevention, intervention, treatment, and recovery support services and care delivery, consistent with the provisions of HIPAA and 42 CFR, Part 2.
- Advance telehealth opportunities to expand services for hard-to-reach locations, especially rural and frontier areas. Expand technology options for callers, including the use of texting, telephone, and telehealth. Note: States may not use the funds to purchase any items for consumers/clients.

- Enhance the primary prevention infrastructure within your state and communities using the Strategic Prevention Framework planning model and implementing evidence-based practices, the six CSAP prevention strategies with an emphasis on environmental approaches.
- Consider incorporating strategies around adverse childhood experiences to improve substance misuse outcomes among all populations, but especially young adults 18-25 and those over 26 years of age; preventing and reducing marijuana use by youth below the state's legal age of use; and mitigating the impact of increased alcohol access by youth as identified during the COVID-19 pandemic.  It is important to identify and address disparities and describe how you are incorporating equitable approaches.
- Support expansion of peer-based recovery support services (e.g. recovery community organizations, recovery community centers, recovery high schools, collegiate recovery programs, recovery residences, alternative peer group programs) to ensure a recovery orientation which expands support networks and recovery services. These programs are helping people sustain their recovery, engaging families and significant others, bridging the gap between treatment and long-term recovery, and supporting people reentering the community from incarceration.

SAMHSA requests that the following information is included when submitting the proposals:

1. Identify the needs and gaps of your state's SUD services continuum, related to developing a comprehensive prevention, intervention, treatment, and recovery support services continuum.
2. Describe how your state's spending plan proposal will address the state's substance use disorder services continuum, including a budget that addresses the needs and gaps related to this continuum.
3. Describe your state's progress in addressing the rising drug overdose rate in many parts of the country, and what steps the state will be taking to improve access to SUD treatment, by improving identification of persons in need, reducing barriers to admission to treatment, and strengthening mechanisms to promote client engagement and retention in SUD treatment and recovery support services.
4. Describe your state's progress in implementing the increased and widespread use of FDA approved medications for the treatment of opioid use disorder, alcohol use disorder, and tobacco use disorder, in combination with other substance use disorder evidence-based treatments and practices.
5. Explain how your state plans to collaborate with other departments or agencies to address the SUD services continuum.
6. Describe how the state plans to use SABG ARPA funding to promote health equity among identified underserved populations, and how it plans to address heath disparities in the planning, delivery, and evaluation of SUD prevention, intervention, treatment, and recovery support services.
7. Describe the state's efforts and plans to promote an increased emphasis on the development, delivery, and support of widespread SUD recovery support services, systems, and mechanisms across the state.

8. Describe other state priorities or activities that the state plans to fund during the performance period of September 1, 2021 through September 30, 2025 using ARPA funds.

9. Describe your state plans for enhancing your state's prevention infrastructure which may include incorporating work around ACEs and improving substance misuse outcomes among young adults and older adults. (Primary Prevention set-aside)

    a. The impact of increased access to marijuana and the state's strategies to prevent misuse by the underage population.

    b. Strategies to reduce the COVID-19 impact of increased alcohol accessibility and misuse.

    c. How the state is using equitable strategies to reduce disparities in the state's prevention planning and approaches. Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [SA]. Please title this document "ARPA Funding Plan 2021 (SA)."

10. Describe how the state will use, or considered, health IT standards if using funds for health IT infrastructure or advancement. This includes a description of standards and, as applicable, conformance to Office of the National Coordinator certification criteria in health IT products used or that will be used to support SUD clinical priorities and interoperable data exchange.  States must use standards identified by the Office of the National Coordinator for Health IT in 45 C.F.R. 170 where applicable and also should consider standards identified in the Interoperability Standards Advisory (https://www.healthit.gov/isa/), including but not limited to those standards described in the "Allows for the Exchange of State Prescription Drug Monitoring Program (PDMP) Data" section and the "Social Determinants of Health" section.

States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system. Upon submission, SAMHSA will review the proposal to ensure it is complete and responsive. Proposals must be submitted to WebBGAS by Friday, July 2, 2021, 11:59 EST.

SAMHSA is ready and willing to assist you in addressing the needs of individuals with mental illness and substance use disorders. Please feel free to contact your SAMHSA state project officers and grants management specialists with any questions that you may have.

Sincerely,

/Tom Coderre/

Tom Coderre
Acting Assistant Secretary for
 Mental Health and Substance Use

# EXHIBIT C

Department of Health and Human Services
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

Notice of Award
FAIN# B09SM085372
**Federal Award Date**
05/17/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, NEW JERSEY
DEPARTMENT OF
222 S WARREN ST

TRENTON, NJ 08608

**2. Congressional District of Recipient**
12

**3. Payment System Identifier (ID)**
1216000928E6

**4. Employer Identification Number (EIN)**
216000928

**5. Data Universal Numbering System (DUNS)**
806418257

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Valerie  Mielke

Valerie.Mielke@dhs.nj.gov

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Mental Health Services
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Michelle  Gleason

Center for Mental Health Services
Michelle.Gleason@samhsa.hhs.gov
240-276-1941

## Federal Award Information

**11. Award Number**
1B09SM085372-01

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085372

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – **End Date** 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $39,121,366 |
| 20 a.  Direct Cost Amount | $39,121,366 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $39,121,366 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $39,121,366 |
| **26. Project Period Start Date** 09/01/2021 – **End Date** 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $39,121,366 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.



Notice of Award



MHBG                                              **Issue Date:**   05/17/2021
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Mental Health Services

**Award Number:**  1B09SM085372-01
**FAIN:**         B09SM085372-01
**Contact Person:** Valerie  Mielke

**Program:** Block Grants for Community Mental Health Services

HUMAN SERVICES, NEW JERSEY DEPARTMENT OF
222 S WARREN ST

TRENTON, NJ 08608

**Award Period:**  09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a
grant in the amount of      $39,121,366 (see "Award Calculation" in Section I) to
HUMAN SERVICES, NEW JERSEY DEPARTMENT OF in support of the above
referenced project. This award is pursuant to the authority of Subparts I&III,B,Title
XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and
regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the
grantee when funds are drawn down or otherwise obtained from the grant payment
system.

If you have any questions about this award, please contact your Grants Management
Specialist and your Government Project Officer listed in your terms and conditions.


Sincerely yours,
Odessa  Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B09SM085372-01

**FEDERAL FUNDS APPROVED:**                               $39,121,366

**AMOUNT OF THIS ACTION (FEDERAL SHARE):**    $39,121,366

**CUMULATIVE AWARDS TO DATE:**                      $39,121,366

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:**                                                         $0

**Fiscal Information:**
**CFDA Number:**        93.958
**EIN:**                        1216000928E
                                        6
**Document Number:**    21B1NJCMH
                                        SC6
**Fiscal Year:**              2021

| IC | CAN | 01 |
|----|-----|----|
| SM | C96D540 | $39,121,366 |

**PCC:** CMHS / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –        1B09SM085372-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B09SM085372-01

## STANDARD TERMS AND CONDITIONS

**MHBG FY2021 ARPA funding**

  **Remarks:**

This Notice of Award (NoA) provides American Rescue Plan Act of 2021 (ARPA) funding for the Community Mental Health Services (MHBG) Block Grant Program, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2]. Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to coronavirus.

A proposal of the state's spending plan must be submitted by July 2, 2021 via the Web Block Grant Application System (WebBGAS).

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, grantees are required to upload the Plan document (Microsoft Word or pdf), using the associated tab in the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [MH]. Please title this document "ARPA Funding Plan 2021-MH". States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system.

Further information on this is included in the letter from Acting Assistant Secretary for Mental Health and Substance Use, Tom Coderre

### Standard Terms of Award:

### 1) Acceptance of the Terms of an Award

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a MHBG. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**Certification Statement:** By drawing down funds, The recipient agrees to abide by the statutory requirements of all sections of the Mental Health Block Grant (MHBG) (Public Health Service Act, Sections 1911-1920 and sections 1941-1957) (42 U.S.C. 300x-1-300x-9 and 300x-51-300x-67, as amended), and other administrative and legal requirements as applicable for the duration of the award.

### 2) Official Form Designee

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the MHBG Program Officer must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

### 3) Availability of Funds

Funds provided under this grant must be obligated and expended by September 30, 2025.

### 4) Fiscal and administrative requirements

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

**Fiscal control and accounting procedures** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

ARPA funding is being issued under a separate grant award number and has a unique subaccount in the Payment Management System.  Accordingly, ARPA funds must be tracked and reported separately from  other FY 2021 awarded funds, including COVID-19 Supplemental funding and the Annual Block Grant Allotment.

**Audits** - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

### 5) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351-75.353, Sub-recipient monitoring and management.

### 6) Early Serious Mental Illness Set-Aside

The 21st Century Cures Act, P.L. 114-255 amended Section 1920(c) of the Public Health Service Act (42 U.S.C. 300x 9(c)).   States must set-aside not less than 10 percent of their total MHBG allocation amount for each fiscal year to support evidence-based programs that address the needs of individuals with early serious mental illness, including psychotic disorders, regardless of the age of the individual at onset. In lieu of expending 10 percent of the amount, the State receives for a fiscal year, states have the flexibility to expend not less than 20 percent of such amount by the end of the succeeding fiscal year.

### 7) Executive Pay

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level.  However, no additional funds will be provided to these grant awards.

### 8) Marijuana Restriction:

Grant funds may not be used, directly or indirectly, to purchase, prescribe, or provide marijuana or treatment using marijuana. Treatment in this context includes the treatment of opioid use disorder. Grant funds also cannot be provided to any individual who or organization that provides or permits marijuana use for the purposes of treating substance use or mental disorders. See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended . . . in full accordance with U.S. statutory . . . requirements.); 21 U.S.C. 812(c) (10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana). This prohibition does not apply to those providing such treatment in the context of clinical research permitted by the DEA and under an FDA-approved investigational new drug application where the article being evaluated is marijuana or a constituent thereof that is otherwise a banned controlled substance under federal law.

**9) SAM and DUNS Requirements**

THIS AWARD IS SUBJECT TO REQUIREMENTS AS SET FORTH IN 2 CFR 25.110 CENTRAL CONTRACTOR REGISTRATION CCR) (NOW SAM) AND DATA UNIVERSAL NUMBER SYSTEM (DUNS) NUMBERS. 2 CFR Part 25 - Appendix A4
System of Award Management (SAM) and Universal Identifier Requirements
A. Requirement for System of Award Management:
Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.
B. Requirement for unique entity identifier If you are authorized (reference project description) to make subawards under this award, you:
1. Must notify potential subrecipients that no entity (see definition in paragraph C of this award term) may receive a subaward from you, unless the entity has provided its unique entity identifier to you.
2. May not make a subaward to an entity, unless the entity has provided its unique entity identifier to you.
C. Definitions. For purposes of this award term:
1. System of Award Management (SAM) means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found at the SAM Internet site (currently at: http://www.sam.gov).
2. Unique entity identifier means the identifier required for SAM registration to uniquely identify business entities.
3. Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:
a. A governmental organization, which is a state, local government, or Indian Tribe; b. A foreign public entity; c. A domestic or foreign nonprofit organization; d. A domestic or foreign for-profit organization; and e. A Federal agency, but only as a sub-recipient under an award or sub-award to a nonfederal entity.
4. Sub-award:

a. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible sub-recipient. b. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.330). c. A sub-award may be provided through any legal agreement, including an agreement that you consider a contract.

5. Sub-recipient means an entity that: a. Receives a sub-award from you under this award; and b. Is accountable to you for the use of the federal funds provided by the sub-award.

**10) Federal Financial Accountability and Transparency Act (FFATA)**

Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170

a. Reporting of first tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170. 320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation

information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b. 1. of this award term:

i. As part of your registration profile at https://www.sam.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly compensated executives for the subrecipient's preceding completed fiscal year, if

i. in the subrecipient's preceding fiscal year, the subrecipient received (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c. 1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in 2 CFR part 25:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. __. 210 of the attachment to OMB Circular A-133, Audits of States, Local Governments, and Nonprofit Organizations).

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that: i. Receives a subaward from you (the recipient) under this award; and ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified. vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000. [75 FR 55669, Sept. 14, 2010, as amended at 79 FR 75879, Dec. 19, 2014]

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information

related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

### 12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the

use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

### 15) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

### 16) Audits

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.
Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696


### Reporting Requirements:

### Federal Financial Report (FFR)

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual

responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

**Annual Report**

Reporting on the ARPA funding is required.  States must prepare and submit their respective reports utilizing WebBGAS.  Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of MHBG grants.

Your assigned MHBG Program Official will provide further guidance and additional submission information.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Michelle  Gleason, Program Official
**Phone**: 240-276-1941  **Email:** Michelle.Gleason@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

# EXHIBIT D

| | |
|---|---|
| **From:** | Mielke, Valerie |
| **To:** | Renee Burawski (DHS); John Fogliano (DHS); David Kensler (DHS) |
| **Subject:** | FW: [EXTERNAL] B09SM085372: Termination Notice for COVID-19 Grant Funding |
| **Date:** | Monday, March 24, 2025 6:06:13 PM |
| **Attachments:** | image001.jpg |
| | image002.png |
| | image003.png |
| | image004.png |
| | image005.png |
| | image006.jpg |
| | image007.jpg |

FYI

**Valerie Mielke**
Deputy Commissioner of Health Services
NJ Department of Human Services



Follow the Department of Human Services at:



**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Monday, March 24, 2025 5:50 PM
**To:** valerie.mielke@dhs.state; Mielke, Valerie <Valerie.Mielke@dhs.nj.gov>
**Cc:** Michelle.Gleason@samhsa.hhs.gov; wendy.pang@samhsa.hhs.gov; eracorrespondence@od.nih.gov
**Subject:** [EXTERNAL] B09SM085372: Termination Notice for COVID-19 Grant Funding

> *** CAUTION ***
>
> This message came from an **EXTERNAL** address (katrina.morgan@samhsa.hhs.gov). **DO NOT** click on links or attachments unless you know the sender and the content is safe. **New Jersey State Government Employees Should Forward Messages That May Be Cyber Security Risks To PhishReport@cyber.nj.gov.**

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy,

public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency
concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222,
Implementing the President's "Department of Government Efficiency" Cost Efficiency
Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and
consistent with applicable law, terminate such grants to reduce the overall Federal spending
**this grant is being terminated effective March 24, 2025**.  These grants were issued for a
limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides
cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no
longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a
Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant
period. Recipients must liquidate all obligations incurred under an award after the end of the
award obligation and expenditure period (i.e., the project period) which also coincides with the
due date for submission of the FINAL SF-425, Federal Financial Report
(FFR). Reimbursements after termination are allowable if it results from obligations which
were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation
process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going
further. Additional information will be provided in the revised Notice of Award that will be
issued to initiate the award period end date.

[[Correspondence Token: 22045128-c843-482f-aad9-d4c2419a21b2]] -- Do not delete or
change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients
or change the subject line.

# EXHIBIT E

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Substance Abuse Treatment

Notice of Award
FAIN# B08TI083956
Federal Award Date
05/17/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, NEW JERSEY
DEPARTMENT OF
222 S WARREN ST

TRENTON, NJ 08608

**2. Congressional District of Recipient**
12

**3. Payment System Identifier (ID)**
1216000928E6

**4. Employer Identification Number (EIN)**
216000928

**5. Data Universal Numbering System (DUNS)**
806418257

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Valerie  Mielke

valerie.mielke@dhs.state

**8. Authorized Official**

Valerie.Mielke@dhs.nj.gov

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Substance Abuse Treatment
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Jessica  Hartman

Center for Substance Abuse Treatment
Jessica.Hartman@samhsa.hhs.gov
240-276-1017

## Federal Award Information

**11. Award Number**
1B08TI083956-01

**12. Unique Federal Award Identification Number (FAIN)**
B08TI083956

**13. Statutory Authority**
Subparts II&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Substance Abuse Prevention & Treatment Block Grant

**15. Assistance Listing Number**
93.959

**16. Assistance Listing Program Title**
Block Grants for Prevention and Treatment of Substance Abuse

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

| Summary Federal Award Financial Information | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – **End Date** 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $38,907,646 |
| 20 a.  Direct Cost Amount | $38,907,646 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $38,907,646 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $38,907,646 |
| - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - | |
| **26. Project Period Start Date** 09/01/2021 – **End Date** 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $38,907,646 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.



| | Notice of Award | |
|---|---|---|
SABG
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

**Issue Date:** 05/17/2021

Center for Substance Abuse Treatment

**Award Number:** 1B08TI083956-01
**FAIN:** B08TI083956-01
**Contact Person:** Valerie Mielke

**Program:** Substance Abuse Prevention & Treatment Block Grant

HUMAN SERVICES, NEW JERSEY DEPARTMENT OF
222 S WARREN ST

TRENTON, NJ 08608

**Award Period:** 09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a grant in the amount of $38,907,646 (see "Award Calculation" in Section I) to HUMAN SERVICES, NEW JERSEY DEPARTMENT OF in support of the above referenced project. This award is pursuant to the authority of Subparts II&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.

Sincerely yours,
Odessa Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B08TI083956-01

**FEDERAL FUNDS APPROVED:**                    $38,907,646

**AMOUNT OF THIS ACTION (FEDERAL SHARE):**     $38,907,646

**CUMULATIVE AWARDS TO DATE:**                 $38,907,646

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:**      $0

**Fiscal Information:**
**CFDA Number:**        93.959
**EIN:**                1216000928E6
**Document Number:**    21B1NJSAPTC6
**Fiscal Year:**        2021

| IC | CAN | 01 |
|----|-----|----|
| TI | C96D570 | $38,907,646 |

**PCC:** SAPT / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –        1B08TI083956-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B08TI083956-01

## STANDARD TERMS AND CONDITIONS

**SABG FY2021 ARPA funding**

  **Remarks:**

This Notice of Award (NoA) provides American Rescue Plan Act (ARPA) Supplemental Funding for the Substance Abuse Prevention and Treatment (SABG) Block Grant Program, in accordance with H.R. 1319 - American Rescue Plan Act of 2021. Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the SABG as deemed necessary to facilitate a grantee's response to coronavirus.

A proposal of the state's spending plan must be submitted by July 2, 2021 via the Web Block Grant Application System (WebBGAS). Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, grantees are required to upload the Plan document (Microsoft Word or pdf), using the associated tab in the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [SA]. Please title this document "ARPA Funding Plan 2021-SA" (States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system.

Further information on this is included in the letter from Acting Assistant Secretary for Mental Health and Substance Use, Tom Coderre.


**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a SABG. Once a recipient accepts an award, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**Certification Statement:**

By drawing down funds, The recipient agrees to abide by the statutory requirements of all sections of the Substance Abuse Prevention and Treatment Block Grant (SABG) (Public Health Service Act, Sections 1921-1935 and sections 1941-1957) (42 U.S.C. 300x-21-300x-35 and 300x-51-300x-67, as amended), and other administrative and legal requirements as applicable for the duration of the award.

**2) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**3) Fiscal and administrative requirements**

This NoA issued is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, as applicable, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

**Fiscal control and accounting procedures** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

ARPA funding is being issued under a separate grant award number and has a unique subaccount in the Payment Management System. Accordingly, ARPA funds must be tracked and reported separately from other FY 2021 awarded funds, including COVID-19 Supplemental funding and the Annual Block Grant Allotment.

**Audits** - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a SABG.

### 4) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351-75.353, Sub-recipient monitoring and management.

### 5) Executive Pay

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level. However, no additional funds will be provided to these grant awards.

### 6) Marijuana Restriction:

Grant funds may not be used, directly or indirectly, to purchase, prescribe, or provide marijuana or treatment using marijuana. Treatment in this context includes the treatment of opioid use disorder. Grant funds also cannot be provided to any individual who or organization that provides or permits marijuana use for the purposes of treating substance use or mental disorders. See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended . . . in full accordance with U.S. statutory . . . requirements.); 21 U.S.C. 812(c) (10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana). This prohibition does not apply to those providing such treatment in the context of clinical research permitted by the DEA and under an FDA-approved investigational new drug application where the article being evaluated is marijuana or a constituent thereof that is otherwise a banned controlled substance under federal law.

**7) SAM and DUNS Requirements**

THIS AWARD IS SUBJECT TO REQUIREMENTS AS SET FORTH IN 2 CFR 25.110 CENTRAL CONTRACTOR REGISTRATION CCR) (NOW SAM) AND DATA UNIVERSAL NUMBER SYSTEM (DUNS) NUMBERS. 2 CFR Part 25 - Appendix A4

System of Award Management (SAM) and Universal Identifier Requirements

A. Requirement for System of Award Management:

Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.

B. Requirement for unique entity identifier If you are authorized (reference project description) to make subawards under this award, you:

1. Must notify potential subrecipients that no entity (see definition in paragraph C of this award term) may receive a subaward from you, unless the entity has provided its unique entity identifier to you.

2. May not make a subaward to an entity, unless the entity has provided its unique entity identifier to you.

C. Definitions. For purposes of this award term:

1. System of Award Management (SAM) means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found at the SAM Internet site (currently at: http://www.sam.gov).

2. Unique entity identifier means the identifier required for SAM registration to uniquely identify business entities.

3. Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:

a. A governmental organization, which is a state, local government, or Indian Tribe; b. A foreign public entity; c. A domestic or foreign nonprofit organization; d. A domestic or foreign for-profit organization; and e. A Federal agency, but only as a sub-recipient under an award or sub-award to a nonfederal entity.

4. Sub-award:

a. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible sub-recipient. b. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.330). c. A sub-award may be provided through any legal agreement, including an agreement that you consider a contract.

5. Sub-recipient means an entity that: a. Receives a sub-award from you under this award; and b. Is accountable to you for the use of the federal funds provided by the sub-award.

**8) Federal Financial Accountability and Transparency Act (FFATA)**

Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170

a. Reporting of first tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170. 320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b. 1. of this award term:

i. As part of your registration profile at https://www.sam.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly

compensated executives for the subrecipient's preceding completed fiscal year, if

i. in the subrecipient's preceding fiscal year, the subrecipient received (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c. 1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in 2 CFR part 25:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. __. 210 of the attachment to OMB Circular A-133, Audits of States, Local Governments, and Nonprofit Organizations).

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that: i. Receives a subaward from you (the recipient) under this award; and ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified. vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000. [75 FR 55669, Sept. 14, 2010, as amended at 79 FR 75879, Dec. 19, 2014]

**9) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email:

MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

### 10) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 11) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 12) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

### 13) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see

http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

**14) Audits**

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.
Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

**Reporting Requirements:**

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA

may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

**Annual Report**

Reporting on the ARPA funding is required. States must prepare and submit their respective reports utilizing WebBGAS. Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of SABG grants.

Your assigned SABG Program Official will provide further guidance and additional submission information.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Jessica  Hartman, Program Official
**Phone**: 240-276-1017  **Email:** Jessica.Hartman@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

# EXHIBIT F

  **RAM** Request for Additional Material   National Institutes of Health Office of Extramural Research 

## View Correspondence

| From: | wendy.pang@samhsa.hhs.gov |
|---|---|
| Sent: | Mon 03/24/2025 5:38 PM |
| To: | valerie.mielke@dhs.state;Valerie.Mielke@dhs.nj.gov |
| Cc: | Nekesha.Nash-mccarter@samhsa.hhs.gov;Wendy.Pang@samhsa.hhs.gov;eracorrespondence@od.nih.gov |
| Subject: | B08TI083956: Termination Notice for COVID-19 Grant Funding |

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President?s Executive Order 14222, Implementing the President?s ?Department of Government Efficiency? Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025.** These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants. Now that the pandemic is over, the grants are no longer necessary. In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 1b9dfa3f-15ce-42f5-9139-9c4e4261c589]] -- Do not delete or change this line. --

Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

**Attachments:** None