UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF COLORADO; STATE OF RHODE ISLAND; STATE OF CALIFORNIA; STATE OF MINNESOTA; STATE OF WASHINGTON; STATE OF ARIZONA; STATE OF CONNECTICUT; STATE OF DELAWARE; DISTRICT OF COLUMBIA; STATE OF HAWAII; STATE OF ILLINOIS; OFFICE OF THE GOVERNOR *ex rel.* Andy Beshear, in his official capacity as Governor of the COMMONWEALTH OF KENTUCKY; STATE OF MAINE; STATE OF MARYLAND; COMMONWEALTH OF MASSACHUSETTS; STATE OF MICHIGAN; STATE OF NEVADA; STATE OF NEW JERSEY; STATE OF NEW MEXICO; STATE OF NEW YORK; STATE OF NORTH CAROLINA; STATE OF OREGON; JOSH SHAPIRO, in his official capacity as Governor of the COMMONWEALTH OF PENNSYLVANIA; and STATE OF WISCONSIN,<br><br>           Plaintiffs,<br><br>   v.<br><br>U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,<br><br>           Defendants. | Case No. 1:25-cv-00121 |

**DEFENDANTS' EMERGENCY MOTION FOR RECONSIDERATION AND REQUEST TO VACATE THE ENTRY OF THE TEMPORARY RESTRAINING ORDER, OR IN THE ALTERNATIVE, FOR A STAY PENDING APPEAL**

On April 5, 2025, this Court entered a Temporary Restraining Order ("TRO") as to grants administered by the United States Department of Health and Human Services ("HHS") to 24 states. (ECF No. 54). As the Court's Order notes, the Plaintiff States', in their motion for a temporary restraining order ("TRO"), *see* ECF No. 4, "ask the Court to temporarily restrain [HHS] from immediately and summarily terminating $11 billion in public health grants appropriated by Congress to fund various public health programs." (ECF No. 54 at 2). The Court ordered that Defendants "are hereby fully restrained from implementing or enforcing funding terminations that were issued to Plaintiff States, including their local health jurisdictions . . . [and] shall immediately cease withholding any funds based on the Public Health Terminations and shall make such funds available and process all payments . . . ." (*Id.* at 14).

This Court's Order did not address whether it has jurisdiction over the states' claims for wrongfully terminated grants and awards under the Administrative Procedure Act ("APA"). On April 4, 2025, only hours before the Court entered its TRO, the Supreme Court granted the government's application for a stay pending appeal in *Department of Education v. California*, 604 U.S. ___ (2025), No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) (per curiam). In light of the Supreme Court's opinion, the United States respectfully requests that the Court reconsider its April 5, 2025 Order and vacate the entry of the TRO, or in the alternative, stay the application of the TRO

pending appeal, because the Supreme Court's opinion in *Department of Education v. California* bears directly on the question of this Court's jurisdiction over this case. As in the case before this Court, in *Department of Education v. California,* a group of states challenged the federal government's alleged refusal to continue paying money under grants the government had terminated, alleging violations of the APA. The Supreme Court granted the government's request for a stay, allowing the government to continue to withhold payments as the case proceeded, because it found the district court likely lacked jurisdiction to hear plaintiffs' APA claims. The Supreme Court's decision directly addresses the question of whether this Court has jurisdiction to consider Plaintiffs' claims in this case under the APA.

## I.   The Tucker Act

When a party seeks to access funding that it believes the government is obligated to pay under a contract or grant, the proper remedy is typically suit under the Tucker Act, not the APA. The Tucker Act provides that the "United States Court of Federal Claims shall have jurisdiction to render judgment upon any claim against the United States founded" on "any express or implied contract with the United States." 28 U.S.C. § 1491(a). The Tucker Act vests exclusive jurisdiction over a case in the Court of Federal Claims where the plaintiffs are effectively seeking damages for breach of contract. *See, e.g., Burgos v. Milton*, 709 F.2d 1, 3 (1st Cir. 1987); *Am. Sci. & Eng'g, Inc. v. Califano*, 571 F.2d 58, 62 (1st Cir. 1978). Under these circumstances, courts have routinely held that "grant agreements [are] contracts when the standard conditions for a contract are satisfied." *Columbus Reg'l Hosp. v.*

*United States*, 990 F.3d 1330, 1338 (Fed. Cir. 2021); *see also San Juan City Coll. v. United States*, 391 F.3d 1357, 1360-62 (Fed. Cir. 2004) (treating a "Program Participation Agreement" and related grants under the Higher Education Act as a contract).

In determining whether "a particular action" is "at its essence a contract action" subject to the Tucker Act or instead a challenge properly brought under the APA, courts have looked at both "the source of the rights upon which the plaintiff bases its claims" and "the type of relief sought (or appropriate)." *Megapulse, Inc. v. Lewis*, 672 F.2d 959, 968 (D.C. Cir. 1982); *see also, e.g.*, *Cohen v. Postal Holdings, LLC*, 873 F.3d 394, 403 (2d Cir. 2017) (applying *Megapulse* test); *Califano*, 571 F.2d at 63 (evaluating whether "the essence of the action is in contract").

## II.    *Department of Education v. California*

In *California v. United States Department of Education*, a group of states filed suit claiming that the Department of Education arbitrarily terminated a set of previously awarded grants in violation of the APA. No. 25-CV-10548-MJJ, 2025 WL 760825, at *1 (D. Mass. Mar. 10, 2025). As in this case, there the plaintiff states challenged the federal government's alleged refusal to continue paying money under particular grants. In the district court, the federal government argued the waiver of sovereign immunity in the APA, 5 U.S.C. § 702, does not extend to the termination of grant funding because those are actions of contract, which are within the exclusive jurisdiction of the Court of Federal Claims under the Tucker Act, 28 U.S.C. § 1491. The district court rejected that argument and entered a temporary restraining order,

like the one the Court issued here, ordering the defendants to "immediately restore Plaintiff States to the pre-existing status quo prior to the termination under all previously awarded [ ] grants for recipients in Plaintiff States." *Id.* at *5.

The United States appealed the temporary restraining order to the First Circuit, where it raised the same issues of jurisdiction under the Tucker Act. The Plaintiffs in this case described that appeal to the First Circuit as follows: "[t]he First Circuit has soundly rejected this argument **under identical circumstances**. *California v. U.S. Dep't of Educ.*, --- F.4th ----, 2025 WL 878431, at *2 (1st Cir. Mar. 21, 2025), *application for stay pending*, No. 24A910 (U.S. Mar. 26, 2025). Where, **as here**, 'the States challenge the Department's actions as insufficiently explained, insufficiently reasoned, and otherwise contrary to law—arguments derived from the Administrative Procedure Act (APA),' [the First Circuit held] those claims are not breach of contract claims covered by the Tucker Act and are instead properly heard in the district court under the APA's waiver of sovereign immunity. *Id.*" (ECF No. 4 at 18 (emphasis added)).

The United States, however, appealed the First Circuit's decision to the United States Supreme Court, which, on April 4, 2025, disagreed with the First Circuit and entered a stay pending appeal. In doing so, the Supreme Court explained that the government is "likely to succeed in showing the District Court lacked jurisdiction to order the payment of money under the APA." Slip. Op. 1-2. Instead, the Supreme Court explained, suits seeking relief like that sought by the *California* plaintiff

states—restoration of funding from allegedly improperly terminated grants—likely belong in the Court of Federal Claims. *See id.* at 2. The Supreme Court held:

> The APA's waiver of sovereign immunity does not apply "if any other statute that grants consent to suit expressly or impliedly forbids the relief which is sought." 5 U. S. C. § 702. Nor does the waiver apply to claims seeking "money damages." *Ibid.* True, a district court's jurisdiction "is not barred by the possibility" that an order setting aside an agency's action may result in the disbursement of funds. *Bowen* v. *Massachusetts*, 487 U. S. 879, 910 (1988). But, as we have recognized, the APA's limited waiver of immunity does not extend to orders "to enforce a contractual obligation to pay money" along the lines of what the District Court ordered here. *Great-West Life & Annuity Ins. Co.* v. *Knudson*, 534 U. S. 204, 212 (2002). Instead, the Tucker Act grants the Court of Federal Claims jurisdiction over suits based on "any express or implied contract with the United States." 28 U. S. C. §1491(a)(1).

*Id.* Importantly, the Supreme Court also went beyond the jurisdictional question to conclude that the remaining stay factors were met, because the government will be harmed if it is unable to "recover the grant funds once they are disbursed." *Id.* That harm to the federal government was likely because, the Supreme Court noted, "[n]o grantee 'promised to return withdrawn funds should its grant termination be reinstated,' and the District Court declined to impose bond." By contrast, grant recipients "would not suffer irreparable harm while the TRO is stayed" because if the plaintiff states ultimately prevail, "they can recover any wrongfully withheld funds through suit in an appropriate forum." *Id.*

### III. The Supreme Court's Decision Mandates Reconsideration of this Courts' Order

As in the *California* matter, so too here. The parties appear to agree that facts of the *California* matter are indistinguishable from those presented here with respect

to the question of whether the Tucker Act applies. In their motion for a temporary restraining order in this case, Plaintiffs described the circumstances presented in that case as "identical" to those in this matter for purposes of the Tucker Act jurisdictional question. (ECF No. 4 at 18). And Plaintiffs went further to emphasize that this case also presents "identical circumstances" on the question of whether the Plaintiff States have an appropriate remedy by seeking "money damages" if the Court of Federal Claims later determines that their claims for improper grant terminations have merit. (*Id.* at 19). In those "identical circumstances," the United States Supreme Court has now concluded that 5 U. S. C. § 702 likely *does* apply, because the Plaintiff States effectively seek "money damages" in matters where they challenge the termination of grant funding. Slip. Op. 1-2.

Now that the Supreme Court has stayed the temporary restraining order pending appeal in *California*, a case Plaintiffs here describe twice as presenting "identical circumstances," (*Id.*), this Court should reconsider the temporary retraining order it entered only hours after the Supreme Court's decision. The circumstances remain "identical," but the Supreme Court has now clarified that the Tucker Act *does* apply, and the Court of Federal Claims has exclusive jurisdiction over Plaintiffs' claims.

The Supreme Court's decision underscores that this Court lacks jurisdiction to consider Plaintiffs' enforcement motion relating to nonpayment of various HHS grants. Plaintiffs' motion sought, and this Court's Order provided, a judicial order compelling continued payment of funds under those particular HHS grants—which

is precisely the type of "order[] to enforce a contractual obligation to pay money" that the Supreme Court has now confirmed is not available in an APA suit. *California*, Slip Op. at 2.

In light of the Supreme Court's decision, reconsideration of the TRO is warranted because the Defendants are likely to succeed in showing the Court lacks jurisdiction. *See United States v. Allen*, 573 F.3d 42, 53 (1st Cir. 2009) (recognizing that "motions for reconsideration are appropriate" when "there has been an intervening change in the law" or "the original decision was based on a manifest error of law"); *see also United States ex rel. Nargol v. DePuy Orthopaedics, Inc.*, 69 F.4th 1, 11 (1st Cir. 2023).[1]

Therefore, the Court should vacate its prior Order entered at ECF No. 54; deny Plaintiffs' enforcement motion in this action, ECF No. 4, and instead permit Plaintiffs to pursue whatever remedies may be available to them under the Tucker Act through lawsuits in the Court of Federal Claims. In the alternative, the Court should stay the entry of the TRO to allow the federal government time to appeal the Order.

---

[1] Other Judges in this district have already recognized the importance of the Supreme Court's April 4, 2025 decision in other matters concerning funding pauses and terminations brought by multistate coalitions like the one in this case. Today, Chief Judge McConnell entered a Text Order temporarily staying its enforcement order in *The State of New York et al. v. Trump et al*, 25-CV-00029-JJM-PAS, "In light of the recent Supreme Court Order . . . and the Defendants' Motion for Reconsideration . . . until such time as the Court can adequately address the Motion for Reconsideration." *See* April 7, 2025 Text Order.

Dated: April 7, 2025

Respectfully submitted,

U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES; ROBERT F. KENNEDY, JR., in his official capacity as Secretary of Health and Human Services,

By their Attorneys,

SARA MIRON BLOOM
Acting United States Attorney

*/s/ Leslie J. Kane*
LESLIE J. KANE
Assistant United States Attorney
One Financial Plaza, 17th Floor
Providence, RI 02903
(401) 709-5000
Leslie.Kane@usdoj.gov

CERTIFICATION OF SERVICE

      I hereby certify that, on April 7, 2025, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rules Gen 304.

                                            */s/ Leslie J. Kane*
                                            LESLIE J. KANE
                                            Assistant United States Attorney