## <u>DECLARATION OF MONIQUE MAURICE</u>

I, Monique Maurice, declare as follows:

1.      I am a resident of the State of Colorado. I am over the age of 18 and have personal knowledge of all the facts stated herein, except to those matters stated upon information and belief; as to those matters, I believe them to be true. If called as a witness, I could and would testify competently to the matters set forth below.

2.      I am currently employed by the Colorado Behavioral Health Administration as Chief Financial Officer.

3.      As the Behavioral Health Administration Chief Financial Officer, I am responsible for the oversight, management and stewardship of all funds appropriated to the Colorado Behavioral Health Administration.

4.      The Behavioral Health Administration, on March 24, 2025, received <u>four</u> award terminations from the U.S. Department of Health and Human Services, Substance Abuse and Mental Health Services Administration (SAMHSA). The total value of the terminated awards was $29,684,791. All terminations were "for cause" based on the end of the COVID pandemic, rather than failure of the Behavioral Health Administration to follow the terms or conditions of the grants. Each award termination provided on March 24, 2025, uses identical form language stating that, "[t]hese grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary."

5.      On March 28, 2025, the Behavioral Health Administration received two additional termination notices from SAMHSA each stating it "supersedes" the prior respective notice of termination. The more recent terminations are also "for cause" based on the end of the

COVID pandemic, rather than failure of the Behavioral Health Administration to follow the terms or conditions of the grants. Using identical language, the more recent notices state that, "[t]he termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state 'has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved.' The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements." The Descriptions of each award and the effects of these terminations follow.

6. **Substance Abuse Prevention & Treatment Block Grant (FAIN# B08TI083931) (First Grant for Prevention and Treatment)**

7.     In 2021, SAMHSA invited applications for the First Grant for Prevention and Treatment.

8.     On May 18, 2021, SAMHSA issued guidance outlining the purpose of the award and recommended uses of funds. Guidance indicates that SAMHSA expects recipients of funds to improve and enhance substance use services to account for the societal stress and distress over the emerging pandemic. The guidance received recommended states use funds in the following ways: 1) Develop and expand the use of FDA-approved medications and digital therapeutics as a part of additional treatment that can provide interactive, evidence-based behavioral therapies for the treatment of opioid use disorders, alcohol use disorders, tobacco disorders, along with the implementation of other evidence-based treatments and practices; 2) Provide increased access for those in need of substance use disorder treatment services; 3) Direct critical resources in expanding broad-based state and local community strategies in addressing the overdose epidemic, involving prevention, intervention, treatment and recovery support services; 4) Improve information technology infrastructure to remotely meet with individuals in need of

services particularly in rural or frontier areas; 5) The adoption of health information technology to improve access and coordination of substance use disorder services; 6) Advance telehealth opportunities to expand services for hard-to-reach locations; 7) Enhance the primary prevention infrastructure within the state and communities using the Strategic Prevention Framework planning model and implementing the evidence-based practices; 8) Consider incorporating strategies around adverse childhood experiences to improve substance misuse outcomes among all populations; 9) Support expansion of peer-based recovery support services. ].

9.      As set out in its grant proposal, the Behavioral Health Administration intended to use the First Grant for Prevention and Treatment to enhance services for primary prevention, address service gaps within Tribal populations related to substance use disorder, improved crisis interventions, increase access to substance use treatment modalities, increase access to recovery support services, reduce barriers to treatment admission, increase access to Medication Assisted Treatment, promote client engagement and retention in treatment and recovery support services, expand recovery residence capacity, and support substance use disorder clinical priorities and interoperable data exchange using standards outlined in 45 CFR 170 where applicable.

10.     Colorado received a notice of award indicating the approval of the submitted application on September 17, 2021, and received $23,406,309 in support of the proposed projects. The initial project period established for the grant award was September 1, 2021 through September 30, 2025, and the notice of award indicated 14 standard terms of award. Colorado was not planning on seeking an extension to the grant project period and planned to conclude spending on September 30, 2025.

11.    On May 17, 2021, SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments, dated May 17, 2021, is attached as part of Exhibit A.

12.    Since May 2021, the Behavioral Health Administration has used the First Grant for Prevention and Treatment grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and SAMHSA's grant application.

13.    Colorado has expended funds to address gaps in peer service provision within communities of need; improvements to the Colorado Crisis Line; expansion of recovery support services; peer services for individuals who are considered high acuity; recovery housing assistance; interventions for children, youth, and families; increased programming for pregnant women and women with dependent children; expansion of residential, involuntary commitment and withdrawal management services; enhanced primary prevention services; improvements to the Learning Management System; improvements for data interoperability; and strengthening Colorado's behavioral health workforce. Funds are supporting the state's most vulnerable populations and have been providing life-saving interventions through contracts with numerous subrecipients.

14.    Recipients of funds are required to submit annual reports on December 1st of each year throughout the project period. Colorado has maintained compliance with this requirement and SAMHSA has not communicated any compliance concerns regarding this award.

15.    On March 24, 2025, without any prior notice or indication, SAMHSA informed the Behavioral Health Administration that effective March 24, 2025 its First Grant for Prevention and Treatment was being terminated. A true and correct copy of the grant award termination notice is attached as Exhibit B.

16.     As basis for the termination of the First Grant for Prevention and Treatment,

SAMHSA provided as follows:

>During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses….
>
>On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending this grant is being terminated effective March 24, 2025.   These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

17.     The receipt of the termination notice was irregular, as SAMHSA does not

typically terminate grant awards that are within the period of performance without advance

notice. The notice of termination was received during business hours within Colorado; however,

the notice was sent outside of SAMHSA's business hours at 5:38pm Eastern Time.

18.     The Behavioral Health Administration relied and acted upon its expectation and

understanding that SAMHSA would fulfill its commitment to provide the First Grant for

Prevention and Treatment funding it had awarded to the Behavioral Health Administration. The

Behavioral Health Administration has relied on the availability of these funds to support

vulnerable populations in need of increased behavioral health support and the lack of prior notice

and sudden termination of funding will have a negative impact on subrecipients and citizens of

Colorado. The inability for subrecipients to access funds obligated in State Fiscal Year 2025 contracts will result in financial hardship for subrecipients, unexpected reductions in workforce, and a significant and sudden reduction in behavioral health service access.

19.     The termination of funds will result in harmful impacts to all communities throughout the state of Colorado, and will have a particularly negative impact on the most vulnerable, including individuals experiencing a behavioral health crisis; high risk children, youth and families; pregnant women and women with dependent children in need of substance use services; individuals at risk of fatality due to overdose; increased risk of homelessness for individuals residing in recovery residences; and individuals who receive substance use treatment services.

20.     Prior to the grant award termination on March 24, 2025, SAMHSA did not provide the Behavioral Health Administration with notice, written or otherwise, that the FirstGrant for Prevention and Treatment administered by the Behavioral Health Administration was in any way unsatisfactory.

21. **Substance Abuse Prevention & Treatment Block Grant (FAIN# B08TI084572) (Second Grant for Prevention and Treatment)**

22.     In 2021, SAMHSA invited applications for the Second Grant for Prevention and Treatment.

23.     On August 10, 2021, SAMHSA issued guidance to states which indicated funding was being provided to states to expand testing and mitigation resources to prevent, prepare for, and respond to COVID-19, particularly for people with substance use disorders seeking behavioral health interventions. SAMHSA provided a list of examples of allowable expenses, and further indicated that the list of examples they provided was not exhaustive. The guidance

provided that any activity not included on the list must be directly related to COVID-19 testing and mitigation. The list of examples includes the following: 1) Coordinating with state and local health departments to determine how to better align COVID-19 mitigation efforts; 2) Testing education, establishment of testing sites, test result processing, and engaging in other activities within the CDC Mitigation Framework to address COVID-19; 3) Rapid onsite COVID-19 testing and facilitation of access to testing services and facilitating access to behavioral health services; 4) Behavioral health services for those in short-term housing for people who are at high risk for infection; 5) Testing for staff and consumers in shelters, group homes, residential treatment facilities, day programs, and room and board programs; to include purchase of resources for ongoing testing, hire workers to coordinate resources, and to procure COVID tests and other mitigation supplies such as handwashing stations, hand sanitizer, and masks; 6) Funds may be used to relieve the financial costs for the administration of tests and the purchasing of supplies necessary for administration such as personal protective equipment, supporting mobile mental health units; 7) Utilizing networks to promote awareness of the availability of funds, assist with providers with accessing funds, and ensure resources to mitigate COVID-19 are accessible in under-served, under-resourced, and marginalized communities; 8) Expanding local or tribal programs to implement COVID-response services for those connected to behavioral health services; 9) Providing subawards to eligible entities for programs within the state that are designed to reduce the impact of substance abuse and mental illness; funding could be used for administrative expenses of the facilities to provide onsite testing and mobile health services; 10) Implementing strategies to address consumer hesitancy around testing; 11) Install temporary structures to support testing and mitigation; 12) Education, rehabilitation, prevention, treatment and support services for symptoms occurring after recovery from acute COVID-19; 13) Other

activities to promote COVID-19 testing; 14) Promoting behaviors that prevent the spread of COVID-19; 15) Maintaining healthy environments (clean and disinfect, proper ventilation systems, barriers to support social distancing); 16) Behavioral health services to staff working as contract tracers; 17) Working with consumers to discuss test results, provide instructions for self-isolation, and access patient symptom history; and 18) Conducting contract tracing to notify individuals of their potential contact to the COVID-19 virus.   .

24.     As set out in its grant proposal, the Behavioral Health Administration intended to use the Second Grant for Prevention and Treatment to provide COVID-19 testing and mitigation to substance use treatment and behavioral health crisis organizations to enhance the safety of consumers and reduce the risk of infection.

25.      Colorado received a notice of award on August 10, 2021 indicating approval of Colorado's proposed activities and awarded $970,369 to use within the project period of September 1, 2021 through September 30, 2025. The Behavioral Health Administration was not planning to seek an extension of the grant. The notice of award indicated 16 standard terms of award.

26.     On August 10, 2021, SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments is attached as part of Exhibit A.

27.     Since September 2021, the Behavioral Health Administration has used the Second Grant for Prevention and Treatment grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and SAMHSA's grant application.

28.     Funds have been expended to prevent the spread of COVID-19 within Colorado's network of substance use disorder and crisis service organizations through the purchase of

personal protective equipment, testing supplies, and sanitation supplies such as hand sanitizer and disinfecting wipes.

29.     This award requires recipients to submit annual reports by December 31 throughout the period of performance. Colorado has maintained compliance with this requirement and all reports have been accepted by SAMHSA without revision.

30.     On March 24, 2025, without prior notice or indication, SAMHSA informed the Behavioral Health Administration that effective March 24, 2025 its Second Grant for Prevention and Treatment was being terminated. Then, on March 28, 2025, SAMHSA provided a second notice of termination providing that it, "replaces and supersedes the previous notice."   True and correct copies of the grant award termination notices are attached as Exhibits B and C.

31.     As basis for the termination of the Second Grant for Prevention and Treatment, SAMHSA provided in the First Notice of Termination as follows:

> During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses….

> On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending this grant is being terminated effective March 24, 2025.   These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

32.     As basis for the termination of the Second Grant for Prevention and Treatment, SAMHSA provided in the Second Notice of Termination as follows:

> During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.
>
> The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

33.     The receipt of the termination notice was irregular, as SAMHSA does not typically terminate grant awards that are within the period of performance without advance notice. The notice of termination was received during business hours within Colorado; however, the notice was sent outside of SAMHSA's business hours at 5:38pm Eastern Time..

34.     The Behavioral Health Administration relied and acted upon its expectation and understanding that SAMHSA would fulfill its commitment to provide the Second Grant for Prevention and Treatment funding it had awarded to the Behavioral Health Administration. The Behavioral Health Administration has relied on the expectation of these funds to prevent risk of infection to consumers of services and providers of services. The inability for subrecipients to access funds obligated for the remainder of State Fiscal Year 2025 will result in a reduction in activities to prevent the infection. Losing this funding will result in staff layoffs and a reduction in services for clients. Without these supports, clients may decompensate and increase the likelihood of being in and out of hospitals, jails and homeless shelters. In addition, they are more

likely to turn to substance abuse and experience those consequences. Currently, the Behavioral Health Administration is aware of 680 clients in Assertive Community Treatment programs that will be impacted by this funding cut.  The loss of this funding will result in staff layoffs and reduction or elimination of critical services for many who have just left treatment, incarceration, or houselessness and an overall loss in service for those struggling with behavioral health crises and Individuals experiencing longer wait times to talk to crisis specialists. This will negatively impact 250+ individuals annually. Further, Coloradans will have significantly reduced access to life-saving naloxone which is used to reduce/prevent death from opioid overdose, which directly conflicts with the Opioid Crisis Public Health Emergency declared by HHS Secretary Robert F Kennedy Jr on March 18, 2025.

35.    Prior to the grant award termination on March 24, 2025, SAMHSA did not provide the Behavioral Health Administration with notice, written or otherwise, that the Second Grant for Prevention and Treatment administered by the Behavioral Health Administration was in any way unsatisfactory.

36. **Block Grants for Community Mental Health Services (FAIN# B09SM085338) (First Grant for Community MHS)**

37.    In 2021, SAMHSA invited applications for the First Grant for Community MHS.

38.    SAMHSA indicated States must spend the Mental Health Block Grant (MHBG) funds based on 42 U.S.C. Chapter 6A, Subchapter XVII, Part B, Subpart I: Block Grants for Community Mental Health Services for adults with serious mental illness (SMI) and children with serious emotional disturbance (SED).  Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the MHBG, as deemed necessary to facilitate a grantee's response to

coronavirus. SAMHSA recommended states use the grant funds to develop or enhance the following: 1) Develop partnerships with the emerging Suicide Lifeline (9-8-8) systems, Law Enforcement, EMS, health care providers, housing authorities, Housing and Urban Development (HUD) Continuum of Care, hospital systems, peer-based recovery organizations, and substance use specific treatment providers, all of whom have a critical role in the crisis continuum; 2) Utilize five percent of funds for crisis services; 3) A comprehensive 24/7 crisis continuum for children including screening and assessment; mobile crisis response and stabilization; residential crisis services; psychiatric consultation; referrals and warm hand-offs to home- and community-based services; and ongoing care coordination; 4) Provide increased outpatient access, including same-day or next-day appointments, for those in crisis; 5) Improve information technology infrastructure, including the availability of broadband and cellular technology for providers, especially in rural and frontier areas; use of GPS, to expedite response times, and to remotely meet with the individual in crisis; 6) The adoption and use of health information technology, such as electronic health records, to improve access to and coordination of behavioral health services and care delivery; 7) Consider digital platforms, such as Network of Care, which facilitate access to behavioral health services for persons with SMI-SED; 8) Advance telehealth opportunities to expand crisis services for hard to reach locations, especially rural and frontier areas. Expand technology options for callers, including the use of texting, telephone, and telehealth. Note: States cannot use the funds to purchase any items for consumers/clients; 9) Implement an electronic bed registry that coordinates with existing HHS provider directory efforts and treatment locator system that will help people access information on crisis bed facilities, including their locations, available services, and contact information; 10) Support for crisis and school-based services that promote access to care for children with SED; 11)Develop

medication-assisted treatment (MAT) protocols to assist children and adults who are in crisis, which may leverage telehealth when possible; 12) Expand Assisted Outpatient Treatment (AOT) services; 13) Develop outpatient intensive Crisis Stabilization Teams to avert and address crisis; and 14) Technical Assistance for the development of enhanced treatment and recovery support services including planning for Certified Community Behavioral Health Clinics.

39.     As set out in its grant proposal, the Behavioral Health Administration intended to use the First Grant for Community MHS to provide increased peer support services within under-resourced communities, high-acuity individuals, and justice-involved individuals; improvements to the Learning Management System; strengthen Colorado's behavioral health workforce; expand local and regional behavioral health disorder treatment and recovery programs; expand safety net services for enhanced outpatient and/or comprehensive behavioral health services; expansion of Individual Placement and Support services; expansion of recovery housing access; expansion of mobile crisis response; improvements to rural facility-based crisis services; bridge gaps in perinatal behavioral healthcare for pregnant women and postpartum women; expand First Episode of Psychosis programming; increase availability of Assertive Community Treatment; and increased interventions for children, youth and families. The programs funded by this grant are supporting vulnerable individuals throughout the state and provide life-saving interventions to individuals experiencing behavioral health emergencies.

40.     A notice of award was issued for this grant on May 17, 2021, in the amount of $28,051,679 and the notice included 15 standard grant terms. The project period for the award was September 1, 2021 through September 30, 2025. The Behavioral Health Administration was not planning to seek an extension of this grant.

41.    On May 17, 2021, SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments is attached as part of Exhibit A.

42.    Since September 2021, the Behavioral Health Administration has used the First Grant for Community MHS grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and SAMHSA's grant application.

43.    Colorado has expended funds as described in the initial application by providing increased peer support services within under-resourced communities, high-acuity individuals, and justice-involved individuals; making improvements to the Learning Management System; strengthening Colorado's behavioral health workforce; expanding local and regional behavioral health disorder treatment and recovery programs; expanding safety net services for enhanced outpatient and/or comprehensive behavioral health services; expansion of Individual Placement and Support services; expansion of recovery housing access; expansion of mobile crisis response; improvements to rural facility-based crisis services; bridging gaps in perinatal behavioral healthcare for pregnant women and postpartum women; expanding First Episode of Psychosis programming; increasing availability of Assertive Community Treatment; and increasing interventions for children, youth and families.

44.    Recipients of funds are required to submit annual reports on December 1st throughout the period of performance. Behavioral Health Administration has maintained compliance with this requirement and SAMHSA has approved the reports that have been submitted. The federal project officer assigned to this grant has met with the Behavioral Health Administration on a monthly basis to review spending data and uses of funds; no issues have been raised during these regular meetings.

45.    On March 24, 2025, without any prior notice or indication, SAMHSA informed

the Behavioral Health Administration that effective March 24, 2025 its First Grant for

Community MHS was being terminated. A true and correct copy of the grant award termination

notice is attached as Exhibit B.

46.    As basis for the termination of the First Grant for Community MHS, SAMHSA

provided as follows:

> During the COVID-19 pandemic, the Substance Abuse and Mental
> Health Services Administration (SAMHSA) awarded several
> pandemic-related grants including the funded Coronavirus
> Preparedness and Response Supplemental Appropriations Act,
> 2020 (H.R.6074) (CRRSA) which provided funds to respond to the
> coronavirus outbreak and the American Rescue Plan (ARP) Act of
> 2021(H.R. 1319) which provided additional relief to address the
> continued impact of COVID-19 (i.e., coronavirus disease 2019) on
> the economy, public health, state and local governments,
> individuals, and businesses….
>
> On April 10, 2023, President Biden signed PL 188-3 terminating
> the national emergency concerning the COVID-19 pandemic.
> Consistent with the President's Executive Order 14222,
> Implementing the President's "Department of Government
> Efficiency" Cost Efficiency Initiative requiring a comprehensive
> review of SAMHSA grants, and where appropriate and consistent
> with applicable law, terminate such grants to reduce the overall
> Federal spending this grant is being terminated effective March 24,
> 2025.   These grants were issued for a limited purpose: To
> ameliorate the effects of the pandemic. The end of the pandemic
> provides cause to terminate COVID-related grants.  Now that the
> pandemic is over, the grants are no longer necessary.

47.    The receipt of the termination notice was irregular, as SAMHSA does not

typically terminate grant awards that are within the period of performance without any advance

notice. The notice of termination was received during business hours within Colorado; however,

the notice was sent outside of SAMHSA's business hours at 5:39pm Eastern Time.

48.    The Behavioral Health Administration relied and acted upon its expectation and

understanding that SAMHSA would fulfill its commitment to provide the First Grant for

Community MHS funding it had awarded to the Behavioral Health Administration. The Behavioral Health Administration has relied on the availability of these funds to support vulnerable populations in need of increased behavioral health support and the lack of prior notice and sudden termination of funding will have a drastic impact on subrecipients and citizens of Colorado. The inability for subrecipients to access funds obligated in State Fiscal Year 2025 contracts will result in financial hardship for subrecipients, reduction in workforce, and a significant and sudden reduction in behavioral health service access.

49.    The termination of funds will result in a harmful impact to all communities throughout the state of Colorado, and will have a particularly negative impact on the most vulnerable, including individuals experiencing a behavioral health crisis; high risk children, youth and families; individuals with serious mental illness; increased risk of homelessness for individuals residing in recovery residences; and individuals who are receiving or seeking behavioral health services. The untimely termination of this award will have a significant impact on the ability to operate the crisis continuum throughout the state and will impact Colorado's behavioral health work force, as the loss of these funds will likely result in a reduction in force within direct service providers throughout the state.

50.    Prior to the grant award termination on March 24, 2025, SAMHSA did not provide the Behavioral Health Administration with notice, written or otherwise, that the First Grant for Community MHS administered by the Behavioral Health Administration was in any way unsatisfactory.

51. **Block Grants for Community Mental Health Services (FAIN# B09SM085865) (Second Grant for Community MHS)**

52.     In 2021, SAMHSA invited applications for the Second Grant for Community MHS.

53.     On August 10, 2021, SAMHSA issued guidance to states which indicated funding was being provided to states to expand testing and mitigation resources to prevent, prepare for, and respond to COVID-19, particularly for people with substance use disorders seeking behavioral health interventions. SAMHSA provided a list of examples of allowable expenses and further indicated that the list of examples they provided was not exhaustive. The guidance furthered that any activity not included on the list must be directly related to COVID-19 testing and mitigation. The list of examples includes the following: 1) coordinate with state and local health departments to determine how to better align COVID-19 mitigation efforts; 2) testing education, establishment of testing sites, test result processing, and engaging in other activities within the CDC Mitigation Framework to address COVID-19; 3) rapid onsite COVID-19 testing and facilitation of access to testing services and facilitating access to behavioral health services; 4) behavioral health services for those in short-term housing for people who are at high risk for infection; 5) testing for staff and consumers in shelters, group homes, residential treatment facilities, day programs, and room and board programs to include purchase of resources for ongoing testing, hire workers to coordinate resources, and to procure COVID tests and other mitigation supplies such as handwashing stations, hand sanitizer, and masks; 6) funds may be used to relieve the financial costs for the administration of test and the purchasing of supplies necessary for administration such as personal protective equipment, supporting mobile mental health units; 7) utilize networks to promote awareness of the availability of funds, assist with providers with accessing funds, and ensure resources to mitigate COVID-19 are accessible in under-served, under-resourced, and marginalized communities; 8) expanding local or tribal

programs to implement COVID-response services for those connected to behavioral health services; 9) provide subawards to eligible entities for programs within the state that are designed to reduce the impact of substance abuse and mental illness; funding could be used for administrative expenses of the facilities to provide onsite testing and mobile health services; 10) implement strategies to address consumer hesitancy around testing; 11) install temporary structures to support testing and mitigation; 12) education, rehabilitation, prevention, treatment and support services for symptoms occurring after recovery from acute COVID-19; 13) other activities to promote COVID-19 testing; 14) promote behaviors that prevent the spread of COVID-19; 15) maintain healthy environments (clean and disinfect, proper ventilation systems, barriers to support social distancing); 16) behavioral health services to staff working as contract tracers; 17) work with consumers to discuss test results, provide instructions for self-isolation, and access patient symptom history; and 18) conduct contact tracing to notify individuals of their potential contact to the COVID-19 virus.

54.     As set out in its grant proposal, the Behavioral Health Administration intended to use the Second Grant for Community MHS to provide COVID-19 testing and mitigation funds to mental health and behavioral health crisis organizations to enhance the safety of consumers and reduce the risk of infection.

55.     Colorado received a notice of award on August 10, 2021 indicating approval of Colorado's proposed activities and awarded $965,361 to use within the project period of September 1, 2021 through September 30, 2025. The Behavioral Health Administration was not planning to seek an extension of the grant. The notice of award indicated 15 standard terms of award..

56.     On August 10, 2021, SAMHSA produced a Notice of Award setting forth the terms and conditions of the grant award. A true and correct copy of the corresponding Notice of Award and its attachments are attached as part of Exhibit A.

57.     Since September 2021, the Behavioral Health Administration has used the Second Grant for Community MHS grant funds in a manner fully consistent with SAMHSA's statements regarding the nature of the grant and SAMHSA's grant application.

58.     Funds have been expended to prevent the spread of COVID-19 within Colorado's network of substance use disorder and crisis service organizations through the purchase of personal protective equipment, testing supplies, and sanitation supplies such as hand sanitizer and disinfecting wipes.

59.     This award requires recipients to submit annual reports by December 31 throughout the period of performance. Colorado has maintained compliance with this requirement and all reports have been accepted by SAMHSA without revision.

60.     On March 24, 2025, without any prior notice or indication, SAMHSA informed the Behavioral Health Administration that effective March 24, 2025 its Second Grant for Community MHS was being terminated. Then, on March 28, 2025, SAMHSA provided a second notice of termination providing that it, "replaces and supersedes the previous notice." True and correct copies of the grant award termination notices are attached as Exhibits B and C.

61.     As basis for the termination of the Second Grant for Community MHS, SAMHSA provided in the First Notice of Termination as follows:

> During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the

2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses….

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending this grant is being terminated effective March 24, 2025.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

62.    As basis for the termination of the Second Grant for Community MHS, SAMHSA

provided in the Second Notice of Termination as follows:

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved."  The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

63.    The receipt of the termination notice was irregular, as SAMHSA does not

typically terminate grant awards that are within the period of performance without advance

notice. The notice of termination was received during business hours within Colorado; however,

the notice was sent outside of SAMHSA's business hours at 5:39pm Eastern Time..

64.     The Behavioral Health Administration relied and acted upon its expectation and understanding that SAMHSA would fulfill its commitment to provide the Second Grant for Community MHS funding it had awarded to the Behavioral Health Administration. The Behavioral Health Administration has relied on the expectation of these funds to prevent risk of infection to consumers of services and providers of services. The inability for subrecipients to access funds obligated in State Fiscal Year 2025 contracts will result in a reduction in activities to prevent the infection.

65.     SAMHSA's funding termination will impact 68 BHA grantees around the State of Colorado that provide necessary, sometimes lifesaving, services to vulnerable Coloradoans experiencing serious mental illness and/or substance use disorders.  The termination notices will have a devastating impact on the services these agencies provide.  Some of the agencies negatively affected by termination of these grant funds include, but are not limited to, the following:

- Assertive Community Treatment (ACT) programs are designed to serve adults with serious mental illness who have not responded well to traditional treatment. This is an evidence- based practice proven to reduce hospitalizations, emergency department visits and law enforcement contacts. Most of these clients are covered by Medicaid. Medicaid reimbursement does not cover the full cost of providing this care. The BHA used the terminated funds   to help these providers meet the increased demand for this vital service. Losing these funds will likely result in staff layoffs and a reduction in services for clients. Currently, there are 680 clients in ACT programs around Colorado that will be negatively impacted by termination of these funds.

- At least six providers have used these funds to expand or implement the evidence based, Individual Placement and Support model of supported employment. This program helps people with serious mental illness or those with mental illness and co-occurring substance use disorders to find competitive employment in their community. The seven programs funded by these grants have served upwards of 500 people throughout Colorado. Four out of the seven programs serve rural areas that generally have fewer resources to serve its citizens with mental illnesses or substance use disorders. This program reduces symptoms, as well as the amount of behavioral health services needed for participants and connects employers with needed employees. Losing these funds will result in staff layoffs and reduction or elimination of this service for clients through these agencies.

- The BHA's regional Administrative Services Organizations (ASOs) and starting in July 2025, our BHASOs, manage the affected funds to support the pilot Crisis Resolution Teams (CRT) project. CRTs provide intensive in-home services to families with a youth experiencing a mental health crisis. Well over 90% of the families who have received CRT services avoided an out of home placement. This program was started originally with state funding. When that funding was eliminated, the BHA prioritized continuation with both our standard Block Grant as well as Block Grant Stimulus funding. The loss of the stimulus funding may result in the termination of these programs which are used by families currently receiving services.

- Funding affected by the recent termination is also used to support Mobile Crisis Response. This is a service that can be dispatched by our 988 and Colorado Crisis

Line vendor in Colorado. When indicated, a paired response of crisis professionals can respond to a person's home. They respond within 1 hour in urban areas and within 2 hours in rural areas. Loss of the affected funding will put strain on the providers to be able to maintain these response rates. While core (ongoing) block grant dollars are dedicated for this purpose, and the 988 Enterprise Board has dedicated funding from the terminated grants for this year, the immediate impact of losing these funds may mean service interruptions for the duration of the grant term. Without this service, people may rely on 91, Emergency Department servies and a potential increase in may see suicide deaths rates due to lack of mobile crisis responses.

- Affected funds are also used to support people in recovery with the cost of their stay in a Colorado Agency for Recovery Residence (CARR)  certified recovery residence when they cannot afford it themselves. Funds used towards CARR costs support the most vulnerable and financially unstable with a scholarship to help remove financial barriers to treatment. Removal of financial barriers allows individuals to focus on sobriety and treatment goals, as opposed to scrambling to cover rent. Many of these individuals have just left treatment, incarceration, or houselessness. Scholarships provide a bridge during this transition period, creating stability for the residence.  The BHA manages roughly $4M in state funding for this purpose to support the program's demand. The loss of these funds will reduce the amount of people served. Our MSOs/BHASOs will need to increase eligibility limits to maximize the reduced funding.

- **Peer Support for the Latin X population:** The affected funding also supports Peer Support for the Latin X population. This program was created to provide Peer Support Specialists for the Spanish speaking community. Peer Support Specialists have lived experience and have a unique way of helping this population by building authentic relationships based on shared experiences. This work strengthens long term recovery, promoting wellness, and restores trust in systems. Peer Support programs also bolster the Latinx community by strengthening and expanding community bonds and fostering belonging. Loss of the affected funds will likely result in layoffs and a loss of important recovery support services for this vulnerable population. These funds were also awarded to a few grantees providing direct peer support services to vulnerable populations. Loss of these funds will likely result in staff layoffs for these vendors and a loss of necessary services for vulnerable populations.

- Ascent provides community-based and evidence-based treatment services and supports to youth and young adults 15-29 years old who have experienced an early onset of psychotic spectrum illness. Early intervention is critical to treating serious mental illness before it causes tragic results like serious impairment, unemployment, homelessness, poverty, and suicide. Earlier intervention not only reduces acute symptoms but may also improve long-term prognosis. Ascent serves about 250 clients per year. The goal of Ascent is to quickly stabilize and reduce symptoms of psychosis. Ascent provides the following services: individual, family, and group therapy; family education and support; case management; specialist education and employment services; nurse support; medication management; peer support; and community outreach and education. HR1319 funds provide about 35% of the total

budget of Ascent and are included in the budgets of nine of the eleven Ascent providers. The immediate impact of losing this funding is profound. Community members who are in critical need of support will find themselves without a reliable safety net during moments of vulnerability. This disruption can lead to an increase in mental health crisis, relapse rates, and general erosion of trust in community-based health services. The peer support specialist, trained in trauma-informed care, will lose their positions, which not only disrupts the lives of these skilled workers but also diminishes the community's capacity to respond effectively to crises. Individuals will lose access to their existing treatment providers.  In the long term, the cessation of this funding undermines the sustainability of recovery and wellness initiatives. The community risks losing a critical support system that has been pivotal in reducing stigma, promoting culturally relevant care, and fostering connections among individuals in recovery. At least several hundred community members who rely on this program for stability and support are now at risk of experiencing setbacks in their recovery and overall mental well-being which affects both individuals and their broader networks of families and community structures who depend on these services.

- **Naloxone Bulk Purchase Fund:** The purpose of the Naloxone Bulk Purchase Fund is to provide life-saving naloxone to eligible entities based on a priority plan within the State of Colorado. The terminated funding amounts to approximately 100,000 kits of life-saving naloxone which is used to reverse opioid overdoses that will result in death. Each kit contains two 4mg intranasal spray doses of naloxone. The Bulk Fund provides naloxone to local government agencies, school districts, harm reduction

agencies, law enforcement, first responders, correctional facilities, probation departments, and mental health professionals. The Bulk Fund is a lifesaving resource for Coloradans who, without it, will have significantly reduced access to life saving naloxone to reduce opioid overdose deaths. This directly conflicts with responding to the ongoing Opioid Crisis Public Health Emergency as declared by HHS Secretary Robert F Kennedy Jr on March 18, 2025.  In the short term, loss of these funds will lead to reduced access to naloxone for entities that serve people who use opioids and subsequently people will die preventable deaths.

66.    The BHA has utilized affected funding (Stimulus Block Grants, HR1319) to purchase the following services. Funding cuts for each of these programs will mean fewer individuals are served or programs will be entirely terminated:

- **Tough As A Mother Campaign efforts**
  - The purpose of the Tough as a Mother campaign is to decrease stigma around maternal substance use disorder, to educate Colorado communities and providers about maternal substance use disorder, and to increase awareness and utilization of statewide treatment and recovery resources by two priority populations: women with substance use disorder who have dependent children, and pregnant women with substance use disorder.
- **High Acuity Peers**

- ○ The purpose of this section is to provide peer navigator services for all Involuntary Commitment clients, pregnant and parenting women, and other high acuity clients if capacity allows.

- **High Risk Families**
  - ○ Funding is used to provide services to high-risk parents, including pregnant and parenting women, with substance use disorders and for services for high-risk families including pregnant and parenting women.

- **Recovery Supports Services**
  - ○ The purpose of this project is to provide Recovery Support Service resources for substance use disorder (SUD) treatment providers, allied health organizations and other contracted/sub-contracted entities to deliver peer delivered recovery support services.

- **Recovery Housing Assistance**
  - ○ The aim is to provide housing stability for people in recovery from a substance use disorder in a certified Colorado recovery residence. These funds are to support Colorado residents who are in recovery from a substance use disorder who temporarily are unable to afford the costs associated with living in a recovery residence located in Colorado.

- **Individualized Placement Support (IPS)**
  - ○ The purpose of this is to increase competitive employment for individuals diagnosed with a substance use disorder (SUD) who are receiving services through a (SUD) treatment facility and to assist those individuals to live successfully in their communities.

- **Recovery Residence Expansion**
  - The purpose of this project is to expand democratically run, chartered Oxford Houses, recovery residences, with specific priority to creating houses for women with children in proximity to existing Special Connections and other gender responsive treatment programs.

- **Workforce Support/Expansion**
  - The purpose of this project is to expand the Behavioral Healthcare workforce, specifically, Certified and Licensed Addiction Counselors and Colorado Peer and Family Specialists.

- **Recovery Coach Doula Programming**
  - The purpose of this Article is to create a preliminary blueprint to scale-up the University of Colorado College of Nursing Recovery Coach Doulas Program to provide care for Pregnant and Postpartum Individuals in Colorado (Scaling-up RCDs). The project will expand evidence-based recovery services for women with substance use disorder (SUD) for under- and uninsured individuals during pregnancy and through 12 months postpartum.

- **Programs that strengthen and integrate local behavioral health services for pregnant and newly parenting families in multiple rural counties:** Services include comprehensive behavioral health and social needs screening,  intervention and referrals to treatment. This cease in funding cuts all community-based work for the remainder of FY25 in Eagle, Mesa and Montrose counties. <u>Immediate harms include</u>:

- Loss of care navigation services for approximately 435 pregnant and/or postpartum families with behavioral health and/or social needs.

- Loss of peer support coaches for pregnant and parenting women with substance use disorder

- Discontinuation of a perinatal substance use stigma reduction campaign (Tough as a Mother) with localized messaging, working to outreach pregnant and parenting mothers.

- Loss of technical assistance for outpatient medical clinics (OB/GYN, Pediatric, Family Medicine) working to implement SBIRT for behavioral health into the clinics which impacts 500 opportunities to screen perinatal patients for depression, 400 opportunities to screen perinatal patients for substance use and 74 opportunities to refer patients to additional mental health or substance use support

- Loss of funding to support program evaluation, which is used to ensure comprehensive progress reports, quality programming and efficient and effective use of funding.

- Loss of funding for BHA's vendor for this program (CPCQC), who is both a backbone organization for and implementer of the IMPACT BH program.

- Cancellation of workforce development initiatives, including perinatal mental health and substance use trainings impacting at least 30 participants already registered for trainings. Big picture, this affects the entire caseload of those 30 providers (ie. providers not being as well equipped to treat perinatal individuals equitably and with gold standard best practices.)

- Loss of funding to support 7 local continuum of care groups, with an average of 10 participants across clinical, community and government agencies at each meeting to collaboratively address gaps in perinatal behavioral health care.

I declare under penalty of perjury under the laws of the United States that, to the best of my knowledge, the foregoing is true and correct.

Executed on March 28, 2025, at Denver, Colorado.

Monique Maurice
Chief Financial Officer
Behavioral Health Administration

Attachment A

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Substance Abuse Treatment

FAIN# B08TI083931
**Federal Award Date**
05/17/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, COLORADO
DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**2. Congressional District of Recipient**
01

**3. Payment System Identifier (ID)**
1840644739C3

**4. Employer Identification Number (EIN)**
840644739

**5. Data Universal Numbering System (DUNS)**
878147602

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Robert  Werthwein

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Substance Abuse Treatment
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Charlotte  Olson
Project Officer
Center for Substance Abuse Treatment
charlotte.olson@samhsa.hhs.gov
(240) 276-2541

## Federal Award Information

**11. Award Number**
1B08TI083931-01

**12. Unique Federal Award Identification Number (FAIN)**
B08TI083931

**13. Statutory Authority**
Subparts II&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Substance Abuse Prevention & Treatment Block Grant

**15. Assistance Listing Number**
93.959

**16. Assistance Listing Program Title**
Block Grants for Prevention and Treatment of Substance Abuse

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $23,406,309 |
| 20 a.  Direct Cost Amount | $23,406,309 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $23,406,309 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $23,406,309 |
| **26. Project Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $23,406,309 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.



SABG
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Substance Abuse Treatment


Notice of Award

**Issue Date:**    05/17/2021

**Award Number:**  1B08TI083931-01
**FAIN:**        B08TI083931-01
**Contact Person:** Robert  Werthwein

**Program:** Substance Abuse Prevention & Treatment Block Grant

HUMAN SERVICES, COLORADO DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**Award Period:**  09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a
grant in the amount of      $23,406,309 (see "Award Calculation" in Section I) to
HUMAN SERVICES, COLORADO DEPARTMENT OF in support of the above
referenced project. This award is pursuant to the authority of Subparts II&III,B,Title
XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and
regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the
grantee when funds are drawn down or otherwise obtained from the grant payment
system.

If you have any questions about this award, please contact your Grants Management
Specialist and your Government Project Officer listed in your terms and conditions.


Sincerely yours,
Odessa  Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B08TI083931-01

**FEDERAL FUNDS APPROVED:**                            $23,406,309

**AMOUNT OF THIS ACTION (FEDERAL SHARE):**             $23,406,309

**CUMULATIVE AWARDS TO DATE:**                         $23,406,309

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:**                                                  $0

**Fiscal Information:**
**CFDA Number:**    93.959
**EIN:**            1840644739C
                    3
**Document Number:** 21B1COSAP
                    TC6
**Fiscal Year:**    2021

| IC | CAN | 01 |
|----|-----|-----|
| TI | C96D570 | $23,406,309 |

**PCC:** SAPT / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –       1B08TI083931-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B08TI083931-01

## STANDARD TERMS AND CONDITIONS

**SABG FY2021 ARPA funding**

 **Remarks:**

This Notice of Award (NoA) provides American Rescue Plan Act (ARPA) Supplemental Funding for the Substance Abuse Prevention and Treatment (SABG) Block Grant Program, in accordance with H.R. 1319 - American Rescue Plan Act of 2021. Consistent with HHS Disaster Relief Flexibilities, SAMHSA may waive requirements with respect to allowable activities, timelines, or reporting requirements for the SABG as deemed necessary to facilitate a grantee's response to coronavirus.

A proposal of the state's spending plan must be submitted by July 2, 2021 via the Web Block Grant Application System (WebBGAS). Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, grantees are required to upload the Plan document (Microsoft Word or pdf), using the associated tab in the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority [SA]. Please title this document "ARPA Funding Plan 2021-SA" (States must upload separate proposals based on MHBG and SABG guidance into the WebBGAS system.

Further information on this is included in the letter from Acting Assistant Secretary for Mental Health and Substance Use, Tom Coderre.

**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a SABG. Once a recipient accepts an award, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**Certification Statement:**

By drawing down funds, The recipient agrees to abide by the statutory requirements of all sections of the Substance Abuse Prevention and Treatment Block Grant (SABG) (Public Health Service Act, Sections 1921-1935 and sections 1941-1957) (42 U.S.C. 300x-21-300x-35 and 300x-51-300x-67, as amended), and other administrative and legal requirements as applicable for the duration of the award.

**2) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**3)  Fiscal and administrative requirements**

This NoA issued is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, as applicable, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

**Fiscal control and accounting procedures** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

ARPA funding is being issued under a separate grant award number and has a unique subaccount in the Payment Management System. Accordingly, ARPA funds must be tracked and reported separately from other FY 2021 awarded funds, including COVID-19 Supplemental funding and the Annual Block Grant Allotment.

**Audits** - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

Except for any waiver granted explicitly elsewhere in this section, this award does not constitute approval for waiver of any Federal statutory/regulatory requirements for a SABG.

## 4) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351-75.353, Sub-recipient monitoring and management.

## 5) Executive Pay

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level. However, no additional funds will be provided to these grant awards.

## 6) Marijuana Restriction:

Grant funds may not be used, directly or indirectly, to purchase, prescribe, or provide marijuana or treatment using marijuana. Treatment in this context includes the treatment of opioid use disorder. Grant funds also cannot be provided to any individual who or organization that provides or permits marijuana use for the purposes of treating substance use or mental disorders. See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended . . . in full accordance with U.S. statutory . . . requirements.); 21 U.S.C. 812(c) (10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana). This prohibition does not apply to those providing such treatment in the context of clinical research permitted by the DEA and under an FDA-approved investigational new drug application where the article being evaluated is marijuana or a constituent thereof that is otherwise a banned controlled substance under federal law.

### 7) SAM and DUNS Requirements

THIS AWARD IS SUBJECT TO REQUIREMENTS AS SET FORTH IN 2 CFR 25.110 CENTRAL CONTRACTOR REGISTRATION CCR) (NOW SAM) AND DATA UNIVERSAL NUMBER SYSTEM (DUNS) NUMBERS. 2 CFR Part 25 - Appendix A4

System of Award Management (SAM) and Universal Identifier Requirements

A. Requirement for System of Award Management:

Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.

B. Requirement for unique entity identifier If you are authorized (reference project description) to make subawards under this award, you:

1. Must notify potential subrecipients that no entity (see definition in paragraph C of this award term) may receive a subaward from you, unless the entity has provided its unique entity identifier to you.

2. May not make a subaward to an entity, unless the entity has provided its unique entity identifier to you.

C. Definitions. For purposes of this award term:

1. System of Award Management (SAM) means the federal repository into which an entity must provide information required for the conduct of business as a recipient. Additional information about registration procedures may be found at the SAM Internet site (currently at: http://www.sam.gov).

2. Unique entity identifier means the identifier required for SAM registration to uniquely identify business entities.

3. Entity, as it is used in this award term, means all of the following, as defined at 2 CFR Part 25, Subpart C:

a. A governmental organization, which is a state, local government, or Indian Tribe; b. A foreign public entity; c. A domestic or foreign nonprofit organization; d. A domestic or foreign for-profit organization; and e. A Federal agency, but only as a sub-recipient under an award or sub-award to a nonfederal entity.

4. Sub-award:

a. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible sub-recipient. b. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see 2 CFR 200.330). c. A sub-award may be provided through any legal agreement, including an agreement that you consider a contract.

5. Sub-recipient means an entity that: a. Receives a sub-award from you under this award; and b. Is accountable to you for the use of the federal funds provided by the sub-award.

### 8) Federal Financial Accountability and Transparency Act (FFATA)

Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170

a. Reporting of first tier subawards.

1. Applicability. Unless you are exempt as provided in paragraph d. of this award term, you must report each action that obligates $25,000 or more in Federal funds that does not include Recovery funds (as defined in section 1512(a)(2) of the American Recovery and Reinvestment Act of 2009, Pub. L. 111-5) for a subaward to an entity (see definitions in paragraph e. of this award term).

2. Where and when to report.

i. You must report each obligating action described in paragraph a.1. of this award term to http://www.fsrs.gov.

ii. For subaward information, report no later than the end of the month following the month in which the obligation was made. (For example, if the obligation was made on November 7, 2010, the obligation must be reported by no later than December 31, 2010.)

3. What to report. You must report the information about each obligating action that the submission instructions posted at http://www.fsrs.gov specify.

b. Reporting Total Compensation of Recipient Executives.

1. Applicability and what to report. You must report total compensation for each of your five most highly compensated executives for the preceding completed fiscal year, if

i. the total Federal funding authorized to date under this award is $25,000 or more;

ii. in the preceding fiscal year, you received (A) 80 percent or more of your annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170. 320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and

iii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report executive total compensation described in paragraph b. 1. of this award term:

i. As part of your registration profile at https://www.sam.gov.

ii. By the end of the month following the month in which this award is made, and annually thereafter.

c. Reporting of Total Compensation of Subrecipient Executives.

1. Applicability and what to report. Unless you are exempt as provided in paragraph d. of this award term, for each first tier subrecipient under this award, you shall report the names and total compensation of each of the subrecipient's five most highly

compensated executives for the subrecipient's preceding completed fiscal year, if

i. in the subrecipient's preceding fiscal year, the subrecipient received (A) 80 percent or more of its annual gross revenues from Federal procurement contracts (and subcontracts) and Federal financial assistance subject to the Transparency Act, as defined at 2 CFR 170.320 (and subawards); and (B) $25,000,000 or more in annual gross revenues from Federal procurement contracts (and subcontracts), and Federal financial assistance subject to the Transparency Act (and subawards); and

ii. The public does not have access to information about the compensation of the executives through periodic reports filed under section 13(a) or 15(d) of the Securities Exchange Act of 1934 (15 U.S.C. 78m(a), 78o(d)) or section 6104 of the Internal Revenue Code of 1986. (To determine if the public has access to the compensation information, see the U.S. Security and Exchange Commission total compensation filings at http://www.sec.gov/answers/execomp.htm.)

2. Where and when to report. You must report subrecipient executive total compensation described in paragraph c. 1. of this award term:

i. To the recipient.

ii. By the end of the month following the month during which you make the subaward. For example, if a subaward is obligated on any date during the month of October of a given year (i.e., between October 1 and 31), you must report any required compensation information of the subrecipient by November 30 of that year.

d. Exemptions If, in the previous tax year, you had gross income, from all sources, under $300,000, you are exempt from the requirements to report:

i. Subawards, and

ii. The total compensation of the five most highly compensated executives of any subrecipient.

e. Definitions. For purposes of this award term:

1. Entity means all of the following, as defined in 2 CFR part 25:

i. A Governmental organization, which is a State, local government, or Indian tribe;

ii. A foreign public entity;

iii. A domestic or foreign nonprofit organization;

iv. A domestic or foreign for-profit organization;

v. A Federal agency, but only as a subrecipient under an award or subaward to a non-Federal entity.

2. Executive means officers, managing partners, or any other employees in management positions.

3. Subaward:

i. This term means a legal instrument to provide support for the performance of any portion of the substantive project or program for which you received this award and that you as the recipient award to an eligible subrecipient.

ii. The term does not include your procurement of property and services needed to carry out the project or program (for further explanation, see Sec. __. 210 of the attachment to OMB Circular A-133, Audits of States, Local Governments, and Nonprofit Organizations).

iii. A subaward may be provided through any legal agreement, including an agreement that you or a subrecipient considers a contract.

4. Subrecipient means an entity that: i. Receives a subaward from you (the recipient) under this award; and ii. Is accountable to you for the use of the Federal funds provided by the subaward.

5. Total compensation means the cash and noncash dollar value earned by the executive during the recipient's or subrecipient's preceding fiscal year and includes the following (for more information see 17 CFR 229.402(c)(2)):

i. Salary and bonus.

ii. Awards of stock, stock options, and stock appreciation rights. Use the dollar amount recognized for financial statement reporting purposes with respect to the fiscal year in accordance with the Statement of Financial Accounting Standards No. 123 (Revised 2004) (FAS 123R), Shared Based Payments.

iii. Earnings for services under non-equity incentive plans. This does not include group life, health, hospitalization or medical reimbursement plans that do not discriminate in favor of executives and are available generally to all salaried employees.

iv. Change in pension value. This is the change in present value of defined benefit and actuarial pension plans.

v. Above-market earnings on deferred compensation which is not tax-qualified. vi. Other compensation, if the aggregate value of all such other compensation (e.g. severance, termination payments, value of life insurance paid on behalf of the employee, perquisites or property) for the executive exceeds $10,000. [75 FR 55669, Sept. 14, 2010, as amended at 79 FR 75879, Dec. 19, 2014]

**9) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email:

MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

**10) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175**

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

**11) Drug-Free Workplace Requirements**

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

**12) Lobbying**

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

**13) Accessibility Provisions**

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see

http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

**14) Audits**

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.
Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

**Reporting Requirements:**

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA

may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

**Annual Report**

Reporting on the ARPA funding is required.  States must prepare and submit their respective reports utilizing WebBGAS.  Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of SABG grants.

Your assigned SABG Program Official will provide further guidance and additional submission information.

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Charlotte  Olson, Program Official
**Phone**: (240) 276-2541  **Email:** charlotte.olson@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Substance Abuse Treatment

FAIN# B08TI084572
**Federal Award Date**
08/10/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, COLORADO
DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**2. Congressional District of Recipient**
01

**3. Payment System Identifier (ID)**
1840644739C3

**4. Employer Identification Number (EIN)**
840644739

**5. Data Universal Numbering System (DUNS)**
878147602

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Robert  Werthwein

robert.werthwein@state.co.us

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Substance Abuse Treatment
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Charlotte  Olson
Project Officer
Center for Substance Abuse Treatment
charlotte.olson@samhsa.hhs.gov
(240) 276-2541

## Federal Award Information

**11. Award Number**
1B08TI084572-01

**12. Unique Federal Award Identification Number (FAIN)**
B08TI084572

**13. Statutory Authority**
Subparts II&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Substance Abuse Prevention & Treatment Block Grant

**15. Assistance Listing Number**
93.959

**16. Assistance Listing Program Title**
Block Grants for Prevention and Treatment of Substance Abuse

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

| | |
|---|---|
| **19. Budget Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **20. Total Amount of Federal Funds Obligated by this Action** | $970,369 |
| 20 a.  Direct Cost Amount | $970,369 |
| 20 b.  Indirect Cost Amount | $0 |
| **21.** Authorized Carryover | |
| **22.** Offset | |
| **23.** Total Amount of Federal Funds Obligated this budget period | $970,369 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $970,369 |
| ------------------------------------------------------------------ | |
| **26. Project Period Start Date** 09/01/2021 – End Date 09/30/2025 | |
| **27.** Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $970,369 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.





| | Notice of Award | |
|---|---|---|
| SABG | | **Issue Date:** 08/10/2021 |

Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

Center for Substance Abuse Treatment

**Award Number:** 1B08TI084572-01
**FAIN:** B08TI084572-01
**Contact Person:** Robert Werthwein

**Program:** Substance Abuse Prevention & Treatment Block Grant

HUMAN SERVICES, COLORADO DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**Award Period:** 09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a grant in the amount of $970,369 (see "Award Calculation" in Section I) to HUMAN SERVICES, COLORADO DEPARTMENT OF in support of the above referenced project. This award is pursuant to the authority of Subparts II&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.

Sincerely yours,
Odessa Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B08TI084572-01

**FEDERAL FUNDS APPROVED:**                                           $970,369

**AMOUNT OF THIS ACTION (FEDERAL SHARE):**            $970,369

**CUMULATIVE AWARDS TO DATE:**                               $970,369

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:**                                                           $0

**Fiscal Information:**
**CFDA Number:**       93.959
**EIN:**                        1840644739C3
**Document Number:**  21B3COSAPTC6
**Fiscal Year:**            2021

| IC | CAN | 01 |
|---|---|---|
| SU | C96D212 | $970,369 |

**PCC:** SAPT / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –        1B08TI084572-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B08TI084572-01

## STANDARD TERMS AND CONDITIONS

**SABG FY2021 ARP Mitigation**

**Remarks:**

This Notice of Award (NoA) provides one-time funding made available by the American Rescue Plan Act of 2021, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2], available at  https://www.congress.gov/117/bills/hr1319/BILLS-117hr1319enr.pdf.

This funding is available to expand dedicated testing and mitigation resources for people with mental health and substance use disorders.  These funds will provide resources and flexibility for states to prevent, prepare for, and respond to the coronavirus disease 2019 (COVID-19) public health emergency and ensure the continuity of services to support individuals connected to the behavioral health system.

**Required Plan Submission:**

**Due by October 1, 2021. COVID-19 Response Workplan and Overview**

States must submit separate plans for expending these funds for both MHBG and SABG.  States must explain the types of activities, including expenditures.  Provide a detailed plan on how the state plan to implement COVID-19 testing and mitigation activities within the public mental health and or substance abuse system.

**Due by October 1, 2021.  COVID-19 Response Budget and Budget Justification**

States must submit a budget and a budget justification capturing all expenses, including costs for administration at the state level and a plan to distribute it to providers, and subsequent reasons for the expenses in narrative format.

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority. Please title this document "COVID Mitigation Funding Plan 2021(MH)" for MHBG and "COVID Mitigation Funding Plan 2021 (SA)" for SABG."

States must upload separate proposals based on Mental Health Block Grant and Substance Abuse Block Grant guidance into the WebBGAS system.  Upon submission, SAMHSA will review the proposal to ensure it is complete and responsive.  Proposals must be submitted to WebBGAS by Friday, October 1, 2021.

**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**2) Official Form Designee**

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the SABG Program Officer

must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

**3) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**4) Fiscal and administrative requirements**

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

***Fiscal control and accounting procedures*** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

**Audits - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.**

**Financial settlement - The State must repay to the Department amounts found after audit resolution to have been expended improperly. In the event that repayment is not made voluntarily, the Department will undertake recovery.**

**5) Flow-down of requirements to sub-recipients**

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351 75.353, Sub-recipient monitoring and management.

**6) Executive Pay**

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level.  However, no additional funds will be provided to these grant awards.

**7) Marijuana Restriction**

SAMHSA grant funds may not be used to purchase, prescribe, or provide

marijuana or treatment using marijuana.  See, e.g., 45 C.F.R. 75.300(a) (requiring HHS to ensure that Federal funding is expended in full accordance with U.S. statutory and public policy requirements); 21 U.S.C. 812(c)(10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana).

### 8) Anti-discrimination

You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

• You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

• For information on your specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see* http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

• HHS funded health and education programs must be administered in an environment free of sexual harassment, *see* https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

• For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

### 9) System for Award Management (SAM)

### This award is subject to requirement set forth in 2 CFR 25.110

Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.  This requirement flows down to subrecipients and contractors under awards or subawards.   SAM website: **System for Award Management (SAM)**

**10) Federal Financial Accountability and Transparency Act (FFATA)**

**Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170**

The Federal Funding Accountability and Transparency Act (FFATA) was signed on September 26, 2006.

Unless you are exempt, you must report each action that obligates $25,000 or more in Federal funds.  The FFATA Subaward Reporting System (FSRS) is the reporting tool federal prime awardees (i.e. prime contractors and prime grants recipients) must use to capture and report subaward and executive compensation data regarding their first-tier subawards to meet the FFATA reporting requirements.  Prime contract awardees must report against sub-contracts awarded.  Prime grant awardees will report against sub-grants awarded.  The sub-award information you enter in FSRS will display on USASpending.gov associated with the prime award. This furthers federal spending transparency.

You must report each obligating action to http://www.fsrs.gov

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

> U.S. Department of Health and Human Services Office of Inspector General
>
> ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,
>
> SW, Cohen Building Room5527 Washington, DC 20201
>
> Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

**12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175**

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees:   a) Engage in severe forms of trafficking in persons during the period of time that the award is in

effect; b) Procure a commercial sex act during the period of time that the award is in effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

### 15) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

**16) Audits**

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.

Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

**Reporting Requirements:**

**Annual Report**

Reporting on the ARPA funding is required.  After the end of each fiscal year, a FY annual report is required on December 31, until the funds expire, and states must upload a narrative report including activities and expenditures.  States must prepare and submit their respective reports utilizing WebBGAS.  Your assigned SABG Program Official will provide further guidance and additional submission information.

Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of SABG grants.

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Charlotte  Olson, Program Official
**Phone**: (240) 276-2541  **Email:** charlotte.olson@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

**Department of Health and Human Services**
Substance Abuse and Mental Health Services Administration
Center for Mental Health Services

Notice Of Award
FAIN# B09SM085865
Federal Award Date
08/10/2021

## Recipient Information

**1. Recipient Name**
HUMAN SERVICES, COLORADO
DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**2. Congressional District of Recipient**
01

**3. Payment System Identifier (ID)**
1846002852A1

**4. Employer Identification Number (EIN)**
846002852

**5. Data Universal Numbering System (DUNS)**
878147602

**6. Recipient's Unique Entity Identifier**

**7. Project Director or Principal Investigator**
Robert  Werthwein

**8. Authorized Official**

## Federal Agency Information

**9. Awarding Agency Contact Information**
Wendy Pang
Grants Management Specialist
Center for Mental Health Services
wendy.pang@samhsa.hhs.gov
(240) 276-1419

**10. Program Official Contact Information**
Kent  Forde

Center for Mental Health Services
kent.forde@samhsa.hhs.gov
240-276-2096

## Federal Award Information

**11. Award Number**
1B09SM085865-01

**12. Unique Federal Award Identification Number (FAIN)**
B09SM085865

**13. Statutory Authority**
Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96

**14. Federal Award Project Title**
Block Grants for Community Mental Health Services

**15. Assistance Listing Number**
93.958

**16. Assistance Listing Program Title**
Block Grants for Community Mental Health Services

**17. Award Action Type**
New Competing

**18. Is the Award R&D?**
No

### Summary Federal Award Financial Information

**19. Budget Period Start Date** 09/01/2021 **– End Date** 09/30/2025

| | |
|---|---|
| **20. Total Amount of Federal Funds Obligated by this Action** | $965,361 |
| 20 a.  Direct Cost Amount | $965,361 |
| 20 b.  Indirect Cost Amount | $0 |
| **21. Authorized Carryover** | |
| **22. Offset** | |
| **23. Total Amount of Federal Funds Obligated this budget period** | $965,361 |
| **24. Total Approved Cost Sharing or Matching, where applicable** | $0 |
| **25. Total Federal and Non-Federal Approved this Budget Period** | $965,361 |

**26. Project Period Start Date** 09/01/2021 **– End Date** 09/30/2025

| | |
|---|---|
| 27. Total Amount of the Federal Award including Approved Cost Sharing or Matching this Project Period | $965,361 |

**28. Authorized Treatment of Program Income**
Additional Costs

**29. Grants Management Officer - Signature**
Odessa  Crocker

**30. Remarks**

Acceptance of this award, including the "Terms and Conditions," is acknowledged by the recipient when funds are drawn down or otherwise requested from the grant payment system.





Notice of Award

MHBG
Department of Health and Human Services
Substance Abuse and Mental Health Services Administration

**Issue Date:** 08/10/2021

Center for Mental Health Services

**Award Number:** 1B09SM085865-01
**FAIN:** B09SM085865-01
**Contact Person:** Robert  Werthwein

**Program:** Block Grants for Community Mental Health Services

HUMAN SERVICES, COLORADO DEPARTMENT OF
1575 SHERMAN ST

DENVER, CO 80203

**Award Period:** 09/01/2021 – 09/30/2025

Dear Grantee:

The Substance Abuse and Mental Health Services Administration hereby awards a grant in the amount of     $965,361 (see "Award Calculation" in Section I) to HUMAN SERVICES, COLORADO DEPARTMENT OF in support of the above referenced project. This award is pursuant to the authority of Subparts I&III,B,Title XIX,PHS Act/45 CFR Part96 and is subject to the requirements of this statute and regulation and of other referenced, incorporated or attached terms and conditions.

Acceptance of this award including the "Terms and Conditions" is acknowledged by the grantee when funds are drawn down or otherwise obtained from the grant payment system.

If you have any questions about this award, please contact your Grants Management Specialist and your Government Project Officer listed in your terms and conditions.


Sincerely yours,
Odessa  Crocker
Grants Management Officer
Division of Grants Management

See additional information below

## SECTION I – AWARD DATA – 1B09SM085865-01

**FEDERAL FUNDS APPROVED:** $965,361

**AMOUNT OF THIS ACTION (FEDERAL SHARE):** $965,361

**CUMULATIVE AWARDS TO DATE:** $965,361

**UNAWARDED BALANCE OF CURRENT YEAR'S FUNDS:** $0

**Fiscal Information:**
**CFDA Number:** 93.958
**EIN:** 1846002852A1
**Document Number:** 21B3COCMHSC6
**Fiscal Year:** 2021

| IC | CAN | 01 |
|----|-----|-----|
| SU | C96D210 | $965,361 |

**PCC:** CMHS / **OC:** 4115

## SECTION II – PAYMENT/HOTLINE INFORMATION –    1B09SM085865-01

Payments under this award will be made available through the HHS Payment Management System (PMS). PMS is a centralized grants payment and cash management system, operated by the HHS Program Support Center (PSC), Division of Payment Management (DPM). Inquiries regarding payment should be directed to: The Division of Payment Management System, PO Box 6021, Rockville, MD 20852, Help Desk Support – Telephone Number: 1-877-614-5533.

The HHS Inspector General maintains a toll-free hotline for receiving information concerning fraud, waste, or abuse under grants and cooperative agreements. The telephone number is: 1-800-HHS-TIPS (1-800-447-8477). The mailing address is: Office of Inspector General, Department of Health and Human Services, Attn: HOTLINE, 330 Independence Ave., SW, Washington, DC 20201.

## SECTION III – TERMS AND CONDITIONS – 1B09SM085865-01

## STANDARD TERMS AND CONDITIONS

**MHBG FY2021 ARP Mitigation**

**Remarks:**

This Notice of Award (NoA) provides one-time funding made available by the American Rescue Plan Act of 2021, in accordance with H.R. 1319 – American Rescue Plan Act of 2021 the ARPA Act, 2021 [P.L. 117-2], available at  https://www.congress.gov/117/bills/hr1319/BILLS-117hr1319enr.pdf.

This funding is available to expand dedicated testing and mitigation resources for people with mental health and substance use disorders.  These funds will provide resources and flexibility for states to prevent, prepare for, and respond to the coronavirus disease 2019 (COVID-19) public health emergency and ensure the continuity of services to support individuals connected to the behavioral health system.

**Required Plan Submission:**

**Due by October 1, 2021.  COVID-19 Response Workplan and Overview**

States must submit separate plans for expending these funds for both MHBG and SABG.  States must explain the types of activities, including expenditures.  Provide a detailed plan on how the state plan to implement COVID-19 testing and mitigation activities within the public mental health and or substance abuse system.

**Due by October 1, 2021.  COVID-19 Response Budget and Budget Justification**

States must submit a budget and a budget justification capturing all expenses, including costs for administration at the state level and a plan to distribute it to providers, and subsequent reasons for the expenses in narrative format.

Using the WebBGAS Revision Request for the FFY 2021 Block Grant Application, upload the document (Microsoft Word or pdf) using the tab into the State Information Section, Chief Executive Officer's Funding Agreement – Certifications and Assurances/Letter Designating Signatory Authority. Please title this document "COVID Mitigation Funding Plan 2021(MH)" for MHBG and "COVID Mitigation Funding Plan 2021 (SA)" for SABG."

States must upload separate proposals based on Mental Health Block Grant and Substance Abuse Block Grant guidance into the WebBGAS system.  Upon submission, SAMHSA will review the proposal to ensure it is complete and responsive.  Proposals must be submitted to WebBGAS by Friday, October 1, 2021.

**Standard Terms of Award:**

**1) Acceptance of the Terms of an Award**

By drawing or otherwise obtaining funds from the HHS Payment Management System, the recipient acknowledges acceptance of the terms and conditions of the award and is obligated to perform in accordance with the requirements of the award. Once an award is accepted by a recipient, the contents of the Notice of Award (NoA) are binding on the recipient unless and until modified by a revised NoA signed by the GMO.

**2) Official Form Designee**

The States Chief Executive Officer, or authorized designee is considered the official form designee for this grant. The SAMHSA GMS and the MHBG Program Officer

must be notified immediately before any changes in this key position are made. Please note that individuals that are suspended or debarred are prohibited from serving on Federal grant awards.

**3) Availability of Funds**

Funds provided under this grant must be obligated and expended by September 30, 2025.

**4) Fiscal and administrative requirements**

This award is subject to the administrative requirements for HHS block grants under 45 CFR Part 96, Subpart C, and 45 CFR Part 75, as specified. Except for section 75.202 of Subpart C, and sections 75.351 through 75.353 of Subpart D, the requirements in Subpart C, Subpart D, and Subpart E do not apply to this program (reference 45 CFR Part 75 Subpart B, 75.101(d)).

***Fiscal control and accounting procedures*** - Fiscal control and accounting procedures must be sufficient to (a) permit preparation of reports required by the statute authorizing the block grant and (b) permit the tracing of funds to a level of expenditure adequate to establish that such funds have not been used in violation of the restrictions and prohibitions of the statute authorizing the block grant.

Audits - Grantees and subgrantees are responsible for obtaining audits in accordance with the Single Audit Act Amendments of 1996 (31 U.S.C. 7501-7507) and revised OMB Circular A-133, "Audits of State, Local Governments, and Non-Profit Organizations." The audits shall be made by an independent auditor in accordance with generally accepted Government auditing standards covering financial audits.

Financial settlement - The State must repay to the Department amounts found after audit resolution to have been expended improperly. In the event that repayment is not made voluntarily, the Department will undertake recovery.

5) Flow-down of requirements to sub-recipients

The grantee, as the awardee organization, is legally and financially responsible for all aspects of this award including funds provided to sub-recipients, in accordance with 45 CFR 75.351 75.353, Sub-recipient monitoring and management.

**6) Executive Pay**

The Consolidated Appropriations Act, 2021 (Public Law 116-260), signed into law on December 27, 2020 restricts the amount of direct salary to Executive Level II of the Federal Executive Pay scale. Effective January 3, 2021, the salary limitation for Executive Level II is $199,300.

For awards issued prior to this change, if adequate funds are available in active awards, and if the salary cap increase is consistent with the institutional base salary, recipients may re-budget to accommodate the current Executive Level II salary level.  However, no additional funds will be provided to these grant awards.

**7) Marijuana Restriction**

SAMHSA grant funds may not be used to purchase, prescribe, or provide marijuana or treatment using marijuana.  See, e.g., 45 C.F.R. 75.300(a)

(requiring HHS to ensure that Federal funding is expended in full accordance with U.S. statutory and public policy requirements); 21 U.S.C. 812(c)(10) and 841 (prohibiting the possession, manufacture, sale, purchase or distribution of marijuana).

**8) Anti-discrimination**

You must administer your project in compliance with federal civil rights laws that prohibit discrimination on the basis of race, color, national origin, disability, age and, in some circumstances, religion, conscience, and sex (including gender identity, sexual orientation, and pregnancy). This includes taking reasonable steps to provide meaningful access to persons with limited English proficiency and providing programs that are accessible to and usable by persons with disabilities. The HHS Office for Civil Rights provides guidance on complying with civil rights laws enforced by HHS. See https://www.hhs.gov/civil-rights/for-providers/provider-obligations/index.html and https://www.hhs.gov/civil-rights/for-individuals/nondiscrimination/index.html.

• You must take reasonable steps to ensure that your project provides meaningful access to persons with limited English proficiency. For guidance on meeting your legal obligation to take reasonable steps to ensure meaningful access to your programs or activities by limited English proficient individuals, see https://www.hhs.gov/civil-rights/for-individuals/special-topics/limited-english-proficiency/fact-sheet-guidance/index.html and https://www.lep.gov.

• For information on your specific legal obligations for serving qualified individuals with disabilities, including providing program access, reasonable modifications, and taking appropriate steps to provide effective communication , *see* http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html.

• HHS funded health and education programs must be administered in an environment free of sexual harassment, *see* https://www.hhs.gov/civil-rights/for-individuals/sex-discrimination/index.html.

• For guidance on administering your project in compliance with applicable federal religious nondiscrimination laws and applicable federal conscience protection and associated anti-discrimination laws, *see* https://www.hhs.gov/conscience/conscience-protections/index.html and https://www.hhs.gov/conscience/religious-freedom/index.html.

**9) System for Award Management (SAM)**

**This award is subject to requirement set forth in 2 CFR 25.110**

Unless you are exempted from this requirement under 2 CFR 25.110, you, as the recipient, must maintain the currency of your information in the SAM, until you submit the final financial report required under this award or receive the final payment, whichever is later. This requires that you review and update the information at least annually after the initial registration, and more frequently if required by changes in your information or another award term.  This requirement flows down to subrecipients and contractors under awards or subawards.   SAM website: **System for Award Management (SAM)**

**10) Federal Financial Accountability and Transparency Act (FFATA)**

**Reporting Subawards and Executive Compensation, 2 CFR, Appendix A to Part 170**

The Federal Funding Accountability and Transparency Act (FFATA) was signed on September 26, 2006.

Unless you are exempt, you must report each action that obligates $25,000 or more in Federal funds. The FFATA Subaward Reporting System (FSRS) is the reporting tool federal prime awardees (i.e. prime contractors and prime grants recipients) must use to capture and report subaward and executive compensation data regarding their first-tier subawards to meet the FFATA reporting requirements. Prime contract awardees must report against sub-contracts awarded. Prime grant awardees will report against sub-grants awarded. The sub-award information you enter in FSRS will display on USASpending.gov associated with the prime award. This furthers federal spending transparency.

You must report each obligating action to http://www.fsrs.gov

**11) Mandatory Disclosures**

Consistent with 45 CFR 75.113, applicants and recipients must disclose in a timely manner, in writing to the HHS Office of Inspector General (OIG), all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Subrecipients must disclose, in a timely manner, in writing to the prime recipient (pass through entity) and the HHS OIG, all information related to violations, or suspected violations, of Federal criminal law involving fraud, bribery, or gratuity violations potentially affecting the Federal award. Disclosures must be sent in writing to the awarding agency and to the HHS OIG at the following addresses:

U.S. Department of Health and Human Services Office of Inspector General

ATTN: Mandatory Grant Disclosures, Intake Coordinator 330 Independence Avenue,

SW, Cohen Building Room5527 Washington, DC 20201

Fax: (202) 205-0604 (Include "Mandatory Grant Disclosures" in subject line) or email: MandatoryGranteeDisclosures@oig.hhs.gov

Failure to make required disclosures can result in any of the remedies described in 45 CFR 75.371 remedies for noncompliance, including suspension or debarment (see 2 CFR parts 180 & 376 and 31 U.S.C. 3321).

**12) The Trafficking Victims Protection Act of 2000 (22 U.S.C. 7104(G)), as amended, and 2 C.F.R. PART 175**

The Trafficking Victims Protection Act of 2000 authorizes termination of financial assistance provided to a private entity, without penalty to the Federal government, if the recipient or subrecipient engages in certain activities related to trafficking in persons. SAMHSA may unilaterally terminate this award, without penalty, if a private entity recipient, or a private entity subrecipient, or their employees: a) Engage in severe forms of trafficking in persons during the period of time that the award is in effect; b) Procure a commercial sex act during the period of time that the award is in

effect; or, c) Use forced labor in the performance of the award or subawards under the award. The text of the full award term is available at 2 C.F.R. 175.15(b). See http://www.gpo.gov/fdsys/pkg/CFR-2012-title2-vol1/pdf/CFR-2012-title2-vol1-sec175-15.pdf.

### 13) Drug-Free Workplace Requirements

The Drug-Free Workplace Act of 1988 (41 U.S.C. 701 et seq.) requires that all organizations receiving grants from any Federal agency agree to maintain a drug-free workplace. When the AR signed the application, the AR agreed that the recipient will provide a drug-free workplace and will comply with the requirement to notify SAMHSA if an employee is convicted of violating a criminal drug statute.   Failure to comply with these requirements may be cause for debarment. Government wide requirements for Drug-Free Workplace for Financial Assistance are found in 2 CFR part 182; HHS implementing regulations are set forth in 2 CFR part 382.400. All recipients of SAMHSA grant funds must comply with the requirements in Subpart B (or Subpart C if the recipient is an individual) of Part 382.

### 14) Lobbying

No funds provided under the attached Notice of Award (NoA) may be used by you or any sub-recipient under the grant to support lobbying activities to influence proposed or pending federal or state legislation or appropriations. The prohibition relates to the use of federal grant funds and is not intended to affect your right or that of any other organization, to petition Congress or any other level of government, through the use of other nonfederal resources.   Reference 45 CFR Part 93.

### 15) Accessibility Provisions

Grant recipients of Federal financial assistance (FFA) from HHS must administer their programs in compliance with Federal civil rights law. This means that recipients of HHS funds must ensure equal access to their programs without regard to a person s race, color, national origin, disability, age, and in some circumstances, sex and religion. This includes ensuring your programs are accessible to persons with limited English proficiency.   The HHS Office for Civil Rights also provides guidance on complying with civil rights laws enforced by HHS. Please see http://www.hhs.gov/ocr/civilrights/understanding/section1557/index.html. Recipients of FFA also have specific legal obligations for serving qualified individuals with disabilities. Please see http://www.hhs.gov/ocr/civilrights/understanding/disability/index.html. Please contact the HHS Office for Civil Rights for more information about obligations and prohibitions under Federal civil rights laws at https://www.hhs.gov/civil-rights/index.html or call 1-800-368-1019 or TDD 1-800-537-7697.   Also note that it is an HHS Departmental goal to ensure access to quality, culturally competent care, including long-term services and supports, for vulnerable populations. For further guidance on providing culturally and linguistically appropriate services, recipients should review the National Standards for Culturally and Linguistically Appropriate Services in Health and Health Care at https://minorityhealth.hhs.gov/omh/browse.aspx?lvl=1&lvlid=6.

### 16) Audits

Non-Federal recipients that expend $750,000 or more in federal awards during the recipient's fiscal year must obtain an audit conducted for that year in accordance with the provisions of 45 CFR 96.31.

Recipients are responsible for submitting their Single Audit Reports and the Data Collections Forms (SF-FAC) electronically to the to the Federal Audit Clearinghouse Visit disclaimer page (FAC) within the earlier of 30 days after receipt or nine months after the FY s end of the audit period. The FAC operates on behalf of the OMB.

For specific questions and information concerning the submission process: Visit the Federal Audit Clearinghouse at https://harvester.census.gov/facweb  or Call FAC at the toll-free number: (800) 253-0696

### Reporting Requirements:

**Annual Report**

Reporting on the ARPA funding is required.  After the end of each fiscal year,  a FY annual report is required on December 31, until the funds expire, and states must upload a narrative report including activities and expenditures.  States must prepare and submit their respective reports utilizing WebBGAS.  Your assigned MHBG Program Official will provide further guidance and additional submission information.

Failure to comply with these requirements may cause the initiation of enforcement actions that can culminate in discontinuation of MHBG grants.

**Federal Financial Report (FFR)**

The recipient is required to submit a Federal Financial Report (FFR) 90 days after the close of the performance period (project period).  The SF-425 shall report total funds obligated and total funds expended by the grantee.

Effective January 1, 2021, award recipients are required to submit the SF-425 Federal Financial Report (FFR) via the Payment Management System (PMS).  If the individual responsible for FFR submission does not already have an account with PMS, please contact PMS to obtain access.

Recipients must liquidate all obligations incurred under an award not later than ninety (90) days after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, *Federal Financial Report* (FFR).  After ninety (90) days, letter of credit accounts are locked.  SAMHSA does not approve extensions to the ninety (90) day post-award reconciliation/liquidation period.  Therefore, recipients are expected to complete all work and reporting within the approved project period and the aforementioned 90-day post-award reconciliation/liquidation period.  Recipients (late) withdrawal requests occurring after the aforementioned periods are denied.  In rare instances, SAMHSA may approve an extension to submit a FINAL SF-425 FFR report, but this is *not* an extension of the 90-day post award reconciliation/liquidation period, but rather only an extension to submit the Final SF-425 report (FFR).

In accordance with the regulatory requirements provided at 45 CFR 75.113 and Appendix XII to 45 CFR Part 75, recipients that have currently active Federal grants, cooperative agreements, and procurement contracts with cumulative total value greater than $10,000,000 must report and maintain information in the System for Award Management (SAM) about civil, criminal, and administrative proceedings in connection with the award or performance of a Federal award that reached final disposition within the most recent five-year period. The recipient must also make semiannual disclosures regarding such proceedings. Proceedings information will be made publicly available in the designated integrity and performance system (currently the Federal Awardee Performance and Integrity Information System (FAPIIS)). Full reporting requirements and procedures are found in Appendix XII to 45 CFR Part 75.

**Staff Contacts:**

Kent  Forde, Program Official
**Phone**: 240-276-2096  **Email:** kent.forde@samhsa.hhs.gov

Wendy  Pang, Grants Specialist
**Phone:** (240) 276-1419  **Email:** wendy.pang@samhsa.hhs.gov  **Fax:** (240) 276-1430

Attachment B



## STATE OF COLORADO

**Maurice - CDHS She Her, Monique <monique.maurice@state.co.us>**

## Fwd: B08TI083931: Termination Notice for COVID-19 Grant Funding

**Swiatkowski - BHA, Kasha** <kasha.swiatkowski@state.co.us>                    Mon, Mar 24, 2025 at 4:03 PM
To: Monique Maurice - CDHS She Her <monique.maurice@state.co.us>

---------- Forwarded message ---------
From: <wendy.pang@samhsa.hhs.gov>
Date: Mon, Mar 24, 2025 at 3:38 PM
Subject: B08TI083931: Termination Notice for COVID-19 Grant Funding
To: <robert.werthwein@state.co.us>, <stephen.peng@state.co.us>
Cc: <anthony.provenzano@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

 The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 6531c4d0-9f17-41df-ba63-c00d41aa9bdc]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.



**STATE OF COLORADO**

Maurice - CDHS She Her, Monique <monique.maurice@state.co.us>

---

## Fwd: B08TI084572: Termination Notice for COVID-19 Grant Funding

**Swiatkowski - BHA, Kasha** <kasha.swiatkowski@state.co.us>      Mon, Mar 24, 2025 at 4:03 PM
To: Monique Maurice - CDHS She Her <monique.maurice@state.co.us>

---------- Forwarded message ---------
From: <wendy.pang@samhsa.hhs.gov>
Date: Mon, Mar 24, 2025 at 3:38 PM
Subject: B08TI084572: Termination Notice for COVID-19 Grant Funding
To: <robert.werthwein@state.co.us>, <stephen.peng@state.co.us>
Cc: <anthony.provenzano@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**. These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants. Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

 The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: c748bb72-ee23-43ed-90c8-32dcb9decc5b]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

3/25/25, 1:38 AM    State of Colorado Executive Branch Mail - Fwd: B09SM085338: Termination Notice for COVID-19 Grant Funding

Case 1:25-cv-00121-MSM-LDA    Document 62    Filed 04/09/25    Page 67 of 74 PageID #: 4625



**STATE OF COLORADO**

Maurice - CDHS She Her, Monique <monique.maurice@state.co.us>

---

## Fwd: B09SM085338: Termination Notice for COVID-19 Grant Funding

**Swiatkowski - BHA, Kasha** <kasha.swiatkowski@state.co.us>                    Mon, Mar 24, 2025 at 4:02 PM
To: Monique Maurice - CDHS She Her <monique.maurice@state.co.us>

---------- Forwarded message ---------
From: <katrina.morgan@samhsa.hhs.gov>
Date: Mon, Mar 24, 2025 at 3:50 PM
Subject: B09SM085338: Termination Notice for COVID-19 Grant Funding
To: <robert.werthwein@state.co.us>, <stephen.peng@state.co.us>
Cc: <christopher.mckinney@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025**.  These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 0a97e831-ca25-4bac-b401-d6d437ea9c81]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.



**STATE OF COLORADO**

Maurice - CDHS She Her, Monique <monique.maurice@state.co.us>

## Fwd: B09SM085865: Termination Notice for COVID-19 Grant Funding

**Swiatkowski - BHA, Kasha** <kasha.swiatkowski@state.co.us>                    Mon, Mar 24, 2025 at 4:03 PM
To: Monique Maurice - CDHS She Her <monique.maurice@state.co.us>

---------- Forwarded message ---------
From: <katrina.morgan@samhsa.hhs.gov>
Date: Mon, Mar 24, 2025 at 3:50 PM
Subject: B09SM085865: Termination Notice for COVID-19 Grant Funding
To: <robert.werthwein@state.co.us>, <stephen.peng@state.co.us>
Cc: <christopher.mckinney@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>

Dear Single State Authority Director and State Mental Health Commissioner,

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants including the funded Coronavirus Preparedness and Response Supplemental Appropriations Act, 2020 (H.R.6074) (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act of 2021(H.R. 1319) which provided additional relief to address the continued impact of COVID-19 (i.e., coronavirus disease 2019) on the economy, public health, state and local governments, individuals, and businesses.

On April 10, 2023, President Biden signed PL 188-3 terminating the national emergency concerning the COVID-19 pandemic. Consistent with the President's Executive Order 14222, Implementing the President's "Department of Government Efficiency" Cost Efficiency Initiative requiring a comprehensive review of SAMHSA grants, and where appropriate and consistent with applicable law, terminate such grants to reduce the overall Federal spending **this grant is being terminated effective March 24, 2025.**   These grants were issued for a limited purpose: To ameliorate the effects of the pandemic. The end of the pandemic provides cause to terminate COVID-related grants.  Now that the pandemic is over, the grants are no longer necessary.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) within 90 days of the close of the applicable statutory grant period. Recipients must liquidate all obligations incurred under an award after the end of the award obligation and expenditure period (i.e., the project period) which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if it results from obligations which were properly incurred before the effective date of this termination.

Recipients are expected to complete all work immediately and the reconciliation/liquidation process no later than 90-days after the award period end date.

The related Payment Management System accounts will be restricted from drawdown going further. Additional information will be provided in the revised Notice of Award that will be issued to initiate the award period end date.

[[Correspondence Token: 73660d36-830b-4c84-aba6-c18e87599a57]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

Attachment C

3/28/25, 10:32 AM    State of Colorado Mail - Fwd: B08TI084572: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

---------- Forwarded message ---------
From: <wendy.pang@samhsa.hhs.gov>
Date: Fri, Mar 28, 2025, 10:50 AM
Subject: B08TI084572: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
To: <robert.werthwein@state.co.us>, <dannette.smith@state.co.us>
Cc: <anthony.provenzano@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>


Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated. This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025. Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**

Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov. The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.


Enclosure

[[Correspondence Token: d755f22b-65bf-4092-a381-25e0788f9a19]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@od.nih.gov from the list of recipients or change the subject line.

---

 **95-8648 BG hearing procedure.pdf**
119K

---

**Dr. Aisha Rousseau - BHA** <aisha.rousseau@state.co.us>                    Fri, Mar 28, 2025 at 11:02 AM
To: Aaron Pratt <aaron.pratt@coag.gov>, Ann Pogue <ann.pogue@coag.gov>

FYI....Will drop in the BHA legal folder also.


-----
**Aisha Rousseau, Ph.D., CRC (she/her)**
(pronounced: i-e-sha, roo-so)
**Chief Strategy Officer, Behavioral Health Administration**



**STATE OF COLORADO**

Rousseau - BHA, Aisha <aisha.rousseau@state.co.us>

---

## Fwd: B09SM085865: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
1 message

---

**Smith - BHA, Dannette** <dannette.smith@state.co.us>                    Fri, Mar 28, 2025 at 12:53 PM
To: Aisha Rousseau - BHA <aisha.rousseau@state.co.us>

FYI

Dannette

---------- Forwarded message ---------
From: <katrina.morgan@samhsa.hhs.gov>
Date: Fri, Mar 28, 2025, 11:05 AM
Subject: B09SM085865: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
To: <robert.werthwein@state.co.us>, <dannette.smith@state.co.us>
Cc: <christopher.mckinney@samhsa.hhs.gov>, <wendy.pang@samhsa.hhs.gov>, <eracorrespondence@od.nih.gov>

Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated. This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved." The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025. Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR). Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**

3/28/25, 1:08 PM    Gmail - State Opioid Executive Branch Mail - ERA COUBBSMD0385: Block Grant Termination Notice (COVID-19 Awards (BRS-II) and ARP)

Case 1:25-cv-00121-MSM-LDA    Document 62    Filed 04/09/25    Page 72 of 74 PageID #: 4630

Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov.  The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.


Enclosure

[[Correspondence Token: 41de8b05-2ffd-4975-a05a-c48af0e24668]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

---

 **95-8648 BG hearing procedure.pdf**
119K



Rousseau - BHA, Aisha <aisha.rousseau@state.co.us>

---

## Fwd: FW: B09SM085338: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

2 messages

---

**Smith - BHA, Dannette** <dannette.smith@state.co.us>                    Mon, Mar 31, 2025 at 4:01 AM
To: Aisha Rousseau - BHA <aisha.rousseau@state.co.us>

You may have put this in the portal already.

Dannette R. Smith, MSW
Commissioner, Behavioral Health Administration
My pronouns are [ she/her/hers ] (and here is why that matters).



Cell: 303-263-8849
710 S. Ash St, Denver, CO 80246
dannette.smith@state.co.us  |  https://bha.colorado.gov/

BHA Values: Truth, Equity, Collaboration, Community-Informed Practice, Generational Impact

*** If you are attempting to schedule a meeting with me, please contact johannah.baca@state.co.us ***

---------- Forwarded message ---------
From: **Mckinney, Christopher (SAMHSA/CMHS)** <Christopher.Mckinney@samhsa.hhs.gov>
Date: Fri, Mar 28, 2025 at 11:10 AM
Subject: FW: B09SM085338: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)
To: Swiatkowski, Kasha <kasha.swiatkowski@state.co.us>
Cc: dannette.smith@state.co.us <dannette.smith@state.co.us>

---

**From:** katrina.morgan@samhsa.hhs.gov <katrina.morgan@samhsa.hhs.gov>
**Sent:** Friday, March 28, 2025 11:06 AM
**To:** robert.werthwein@state.co.us; robert.werthwein@state.co.us
**Cc:** Mckinney, Christopher (SAMHSA/CMHS) <Christopher.Mckinney@samhsa.hhs.gov>; Pang, Wendy (SAMHSA/OFR) <Wendy.Pang@samhsa.hhs.gov>; eracorrespondence@od.nih.gov
**Subject:** B09SM085338: Block Grant Termination Notice for COVID-19 Awards (CRRSA and ARP)

Dear Single State Authority Director and State Mental Health Commissioner,

You received notification on March 24, 2025, that your award was being terminated.  This notice replaces and supersedes the previous notice.

During the COVID-19 pandemic, the Substance Abuse and Mental Health Services Administration (SAMHSA) awarded several pandemic-related grants funded by the Coronavirus Response and Relief Supplemental Appropriations Act (CRRSA) which provided funds to respond to the coronavirus outbreak and the American Rescue Plan (ARP) Act which provided additional relief to address the continued impact of COVID-19.

The termination of this award is for cause. The block grant provisions at 42 U.S.C. §300x-55 permit termination if the state "has materially failed to comply with the agreements or other conditions required for the receipt of a grant under the program involved."  The end of the pandemic provides cause to terminate COVID-related grants and cooperative agreements. These grants and cooperative agreements were issued for a limited purpose: to ameliorate the effects of the pandemic. Now that the pandemic is over, the grants and cooperative agreements are no longer necessary as their limited purpose has run out. Termination of this award is effective as of 11:59PM EDT, March 24, 2025.

In accordance with 45 CFR 96.30 (4), block grant award recipients are required to provide a Financial Status Report (FFR) no later than 90 calendar days after March 24, 2025.  Recipients must liquidate all obligations incurred under an award no later than 90 calendar days after March 24, 2025, which also coincides with the due date for submission of the FINAL SF-425, Federal Financial Report (FFR).  Reimbursements after termination are allowable if the reimbursements result from obligations which were properly incurred on or before March 24, 2025.

Recipients are expected to cease all activities immediately and complete the reconciliation/liquidation process no later than 90 calendar days after the termination effective date.

**Opportunity for Hearing:**

Per the enclosed hearing procedures, block grant recipients may request a hearing to dispute this decision by submitting a written notice to the Substance Abuse and Mental Health Services Administration (SAMHSA) requesting a hearing within 15 calendar days of the date of this notice to: SAMHSAgrants@samhsa.hhs.gov.  The request for a hearing must include a copy of this termination notice and a brief statement of why this decision should not be upheld.

Enclosure

[[Correspondence Token: 614ec47c-de3f-4dbe-8233-11e9eda9edc0]] -- Do not delete or change this line. --
Please "Reply All" and do NOT delete eracorrespondence@nih.gov from the list of recipients or change the subject line.

 **95-8648 BG hearing procedure.pdf**
119K

---

**Dr. Aisha Rousseau - BHA** <aisha.rousseau@state.co.us>                    Mon, Mar 31, 2025 at 9:59 AM
To: Aaron Pratt <aaron.pratt@coag.gov>, Ann Pogue <ann.pogue@coag.gov>, Monique Maurice - CDHS She Her
<monique.maurice@state.co.us>

This is number 3. I've also added it to the BHA folder. We are only waiting on one more.

Thanks,
-----
**Aisha Rousseau, Ph.D., CRC (she/her)**
(pronounced: i-e-sha, roo-so)
**Chief Strategy Officer, Behavioral Health Administration**