UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | |
|---|---|
| STATE OF COLORADO, et al., <br><br> Plaintiffs, <br><br> v. <br><br> U.S. DEPARTMENT OF HEALTH AND HUMAN SERVICES, et al., <br><br> Defendants. | Case No. 1:25-cv-00121 |

## PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO RECONSIDER OR STAY PENDING APPEAL

Defendants ask this Court to reconsider its Temporary Restraining Order ("TRO"), which temporarily restrained Defendants from implementing the agency-wide decision of the U.S. Department of Health and Human Services ("HHS") to immediately cut public health funding and programs as "no longer necessary," eliminating $11 billion in appropriations by Congress. ECF No. 54 at 2. Defendants contend that the U.S. Supreme Court's stay opinion in *Department of Education v. California*, No. 24A910, 2025 WL 1008354 (Apr. 4, 2025) (per curiam), "bears directly on the question of this Court's jurisdiction over this case," ECF No. 56 at 3; the Tucker Act controls and vests jurisdiction in the Court of Federal Claims, *id.* at 3-4, 6-8; and reconsideration or in the alternative a stay pending appeal is warranted, *id.* at 8. Defendants are wrong on all scores and, tellingly, never even try to defend the legality of their decision.

This case and this Court's TRO differ from the Supreme Court's understanding of the claims in *Department of Education v. California* in several key respects. First, Plaintiff States are not seeking payment of money to enforce contractual obligations. Rather, Plaintiff States' claims

1

rest entirely on applicable statutory, regulatory, and constitutional provisions and seek purely prospective equitable relief based on HHS's violations of those provisions. Consequently, this Court has jurisdiction. *Bowen v. Massachusetts*, 487 U.S. 879, 905 (1988). Second, as this Court recognized in its TRO decision, ECF No. 54 at 8-11, the Plaintiff States already suffer and face significant irreparable harm, most notably the harm to their public health systems, that the Plaintiff States cannot mitigate given the size and abruptness of the disruption. The unrebutted facts *in this case* thus differ substantially from the facts as characterized by the Supreme Court in *Department of Education v. California*. As a result, this Court should deny Defendants' motion for reconsideration or stay.

The Court should clarify, however, for any reviewing courts that: (1) the TRO will expire on April 17, 2025; and (2) the TRO does not require anything other than restraint of implementation of Defendants' agency-wide decision, and in particular, does not require any payment for money damages or past due obligations, or payment of money to enforce any contractual obligations.

**I.      This Court Should Deny the Motion to Reconsider.**

The Supreme Court's per curiam stay order in *Department of Education v. California* does not require reconsidering or vacating the TRO.

**A.      The Tucker Act Does Not Apply to the Claims at Issue.**

Defendants claim that the Supreme Court's per curiam stay order in *Department of Education v. California*, 2025 WL 1008354, means that this Court lacks jurisdiction. Not so. There, the Supreme Court explained only that "the APA's limited waiver of immunity does not extend to orders 'to enforce a contractual obligation to pay money' along the lines of what the District Court ordered." *Id.* at *1 (citing *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204, 212 (2002)). This appears to have been a reaction to the federal government's

argument that the allegations there "invoke essentially contractual theories of obligation as grounds to force the federal government to keep paying." Attach. 1 (Reply at 6); *id.* (Reply at 8) ("Without the alleged violation of the grant agreements, they would have no claim."); *id.* (Reply at 9) (arguing that the claims all "circle[d] back to the terms and conditions"). In other words, the Supreme Court appears to have preliminarily found that the federal government was likely to prevail that the claims in that case were breach-of-contract claims.

But that is plainly not the case here. In their motion for reconsideration, Defendants do not even attempt to argue how the claims here involve breach of contract. Nor could they. The sole source of Plaintiff States' claims are statute, regulation, and the U.S. Constitution.[1] The central issues in this case are: (1) whether Congress delegated authority to Defendants to make an agency-wide decision to cut $11 billion in congressionally appropriated funds for public health funding and programs as "no longer necessary"; (2) whether Defendants violated statutes and regulations in implementing that decision through mass "for cause" terminations when the statutes and regulations *invoked by Defendants* do not, as a matter of law, apply; (3) whether those agency actions were arbitrary and capricious under the APA; and (4) whether those agency actions violate separation of powers and the Spending Clause. None of those issues involves "essentially contractual theories of obligation." Attach. 1 (Reply at 6). Indeed, adjudicating these legal questions would not require the Court to interpret the funding terms and conditions at all.[2]

---

[1] Plaintiff States have amended their complaint to add constitutional claims and to avoid any confusion as to the source of the claims. ECF No. 59.
[2] The possibility that Defendants might invoke certain terms and conditions defensively would not eliminate this Court's jurisdiction. *See Megapulse, Inc. v. Lewis*, 672 F.2d 959, 969 (D.C. Cir. 1982) (holding that the "mere existence" of "contract-related issues" in a case does not convert it "to one based on the contract," including when "[i]t is actually the Government," not the plaintiff, "which is relying on the contract").

Rather, Plaintiff States challenge agency action for violations of statute, regulation, and the Constitution, and they seek purely prospective equitable relief. This is exactly the type of claims and relief that *Bowen*, 487 U. S. at 905, held is permissible and proper for federal district courts. And the Supreme Court specifically recognized in its per curiam stay order that *Bowen* remains good law. *Dep't of Educ.,* 2025 WL 1008354, at *1.

This case is analogous to *Bowen*. There too, the federal government objected to the district court's jurisdiction based on 5 U.S.C. § 702. *Bowen*, 487 U.S. at 891. However, *Bowen* recognized that states could proceed in district court under the APA to obtain prospective equitable relief for issues arising from the "administration of Federal grant-in-aid programs." *Id.* at 898. Indeed, *Bowen* recognized that the "administration of Federal grant-in-aid programs" was one of the specific types of judicial review that Congress sought to authorize in amending 5 U.S.C. § 702, the APA's waiver of sovereign immunity.[3] *Id. Bowen* further distinguished between "money damages" claims, which belong in the Court of Federal Claims, and specific-relief claims, which may be brought in the district courts. *Id.* at 897-98. Money damages serve as compensatory relief for past harms; it is compensation that "substitute[s]" for performance of obligations. *Id.* at 895. In contrast, specific relief involves obtaining "the very thing to which [a party is] entitled." *Id.*; *see also Dep't of the Army v. Blue Fox, Inc.*, 525 U.S. 255, 262 (1999)

---

[3] Given this legislative action, the Supreme Court concluded it was "highly unlikely that Congress intended to designate an Article I court [the Court of Federal Claims] as the primary forum for judicial review of agency action that may involve questions of policy that can arise in cases such as these." *Bowen*, 487 U.S. at 908 n.46 (1988). It then quoted approvingly a district court's conclusion that, in this area, "[t]he policies of the APA take precedence over the purposes of the Tucker Act. In the conflict between two statutes, established principles of statutory construction mandate a broad construction of the APA and a narrow interpretation of the Tucker Act." *Id.* (cleaned up); *see also Maine Cmty. Health Options v. United States*, 590 U.S. 296, 323-24 (2020) ("The Tucker Act yields . . . when the Administrative Procedure Act, 60 Stat. 237, provides an avenue for relief.").

(likewise explaining *Bowen*'s § 702 analysis turns on whether the claim is for "money damages"—the "sum used as compensatory relief to substitute for a suffered loss"—or for a specific remedy to which the plaintiff is entitled).

Here, as in *Bowen*, Plaintiffs seek judicial review of HHS's decision in administering state financial assistance. They do not seek money damages or an order for payment of money; they seek a specific equitable, prospective remedy—setting aside the unlawful agency-wide decision to cut critical public health programs as "no longer necessary" by eliminating congressionally appropriated funds. This equitable, prospective remedy is necessary given the "ongoing relationship between the parties." *Bowen*, 487 U.S. at 905; *see also id.* at 904 n.39 ("[t]he APA is tailored" to litigation that involves "[m]anaging the relationships between States and the Federal Government that occur over time"). It does not matter that this equitable relief may later result in the payment of money: "The fact that a judicial remedy may require one party to pay money to another is not a sufficient reason to characterize the relief as 'money damages.'" *Id.* at 893.[4] Such equitable relief is not "money damages" because it is not "compensation" to serve as a "substitute" for the government performing as required. *Id*. at 893-95.

The TRO neither orders payment of "money damages" nor does it order payment of money to enforce contractual obligations. The TRO does not reference any contractual terms or violations of those terms. And for good reason: whether any contracts exist here, or the terms of any such contracts, have no bearing on the merits of the claims alleged in the complaint. Instead, the TRO concluded that the Plaintiff States were likely to succeed on their claims because the

---

[4] For these reasons, this case is entirely unlike *Great-West Life & Annuity Ins. Co. v. Knudson*, 534 U.S. 204 (2002), which the Supreme Court cited in its stay order in *Department of Education v. California*, 2025 WL 1008354, at *1. *Knudson* concerned whether an order directing a one-time reimbursement of a specific sum for past medical treatment pursuant to an insurance plan was a form of "equitable relief" permitted under ERISA. 534 U.S. at 208-210.

5

Defendants' actions violated statutes and regulations. The TRO merely requires the maintenance of the status quo and restrains Defendants from enforcing their unlawful agency-wide decision to rescind billions of dollars in funding appropriated by Congress based on violations of statute and regulation.

It also bears noting that the Court of Federal Claims would not provide adequate remedy for Plaintiff States, if it could exercise jurisdiction at all. It likely cannot provide the equitable relief Plaintiffs seek to address their ongoing relationship with the federal government. *See Sergent's Mech. Sys., Inc. v. United States*, 157 Fed. Cl. 41, 47 (2021) (listing the limited non-applicable circumstances under which it has authority to provide equitable relief); *Tootle v. Sec'y of Navy*, 446 F.3d 167, 176 (D.C. Cir. 2006) (rejecting "the suggestion that a federal district court can be deprived of jurisdiction by the Tucker Act when no jurisdiction lies in the Court of Federal Claims"); *Nat'l Air Traffic Controllers Ass'n v. United States*, 160 F.3d 714, 716 (Fed. Cir. 1998) (explaining "there is no provision" of the Tucker Act "giving the Court of Federal Claims jurisdiction to grant equitable relief when it is unrelated to a claim for monetary relief pending before the court"). APA claims cannot be brought there. *See, e.g.*, *Gilham v. United States*, 164 Fed. Cl. 1, 8 (2023). And it has rejected jurisdiction over claims involving cooperative agreements and block grants, similar to the ones at issue in this case. *Cf. Am. Near E. Refugee Aid v. U.S. Agency for Int'l Dev.*, 703 F. Supp. 3d 126, 133 (D.D.C. 2023) (holding USAID cooperative agreement is not a contract absent tangible benefits to the federal agency); *Lummi Tribe of the Lummi Rsrv., Wash. v. United States*, 870 F.3d 1313, 1317-19 (Fed. Cir. 2017) (holding block grant statutes did not mandate damages and therefore the Court of Federal Claims lacks jurisdiction).

Finally, Defendants try to make hay about the Plaintiff States using the phrase "identical circumstances" in their TRO motion. This rhetorical shorthand was referring to specific applications of law by the First Circuit, not any sort of assertion that the claims in both cases were identical. The claims here differ in certain key respects for the reasons listed above.

In sum, this case is not about retrospective money damages or enforcing contractual obligations to pay money. Instead, Plaintiff States seek review of unlawful agency action based on violations of statute, regulation, and the Constitution, and they seek purely prospective relief concerning their ongoing relationship with the federal government. This Court has jurisdiction over these claims. The motion for reconsideration should be denied.

However, so that there is no confusion for reviewing courts, this Court should clarify that the TRO does not require any payment for money damages or past due obligations, or payment of money to enforce any contractual obligations.

### B. Plaintiff States Still Face Irreparable Harm.

In granting the TRO, this Court found, based on unrebutted evidence, that Defendants' actions disrupted the Plaintiff States' public health systems and caused direct and irreparable harm to public health. This Court highlighted:

- the total disruption HHS's termination of funding would have on the States' public health systems, causing direct and irreparable harm to public health;
- the immediate chaos and uncertainty as to funding public health initiatives, resulting in layoffs and discontinued support to community health centers; and
- the significant threat to public health concerning the spread of infectious diseases, substance abuse prevention, and mental health treatment.

ECF No. 54 at 8-11. Given that irreparable harm to Plaintiff States, the balance of equities easily weighed in favor of the States and the public interest in operating public health systems. *Id.* at 11-12.

In *Department of Education v. California*, the Supreme Court preliminarily found the plaintiffs would *not* suffer irreparable harm because, according to the per curiam order, the plaintiffs "have represented in this litigation that they have the financial wherewithal to keep their programs running" even without the federal funding. 2025 WL 1008354, at *1. That statement has no application to this case.

First, the unrebutted evidence shows that *in this case*, Plaintiff States do not have the financial wherewithal to keep these public health programs running, and that the massive loss of billions of dollars in funding without any warning cannot be made up through other sources. *See, e.g.*, ECF No. 4-4, Ferrer Decl. ¶ 13; ECF No. 4-6, Perez Decl. ¶ 30; ECF No. 4-8, Rudman Decl. ¶ 57; ECF No. 4-10, Bookman Decl. ¶ 21; ECF No. 4-25, Williams-Devane Decl. ¶¶ 5, 7; ECF No. 4-24, Gresczyk Decl. ¶ 46. Defendants make no attempt to rebut or address that evidence and instead rely purely on the Supreme Court's statement regarding its preliminary understanding of representations made in a different case.

Second, this Court relied on other types of irreparable harm not addressed in *Department of Education v. California*. In particular, this Court found that "the record [was] clear" that Plaintiff States faced irreparable harm through a "significant threat to public health and safety." ECF No. 54 at 9. Defendants again do not address this type of irreparable harm, nor do they attempt to rebut the evidence found by the Court.

In sum, the Supreme Court's limited observations with respect to the TRO record in *Department of Education v. California* provide no basis for reconsidering this Court's findings on irreparable harm based on the unrebutted evidence in this case.

Finally, Defendants face no irreparable harm here because HHS regulations specifically allow the federal government to offset any funds "in excess of the amount to which the non-Federal entity is finally determined to be entitled." 45 C.F.R. § 75.391; *see also* HHS Grants Policy Statement at 62, https://www.hhs.gov/sites/default/files/hhs-grants-policy-statement-october-2024.pdf. HHS provides billions of dollars in aid to Plaintiff States every year from which they could offset in the event they ultimately prevail. As such, it is unclear why Defendants are claiming irreparable harm here.

## II. This Court Should Deny the Motion to Stay.

Defendants alternatively request that the Court stay the TRO while they appeal the decision. The Court should deny that motion. In reviewing a motion to stay pending appeal, courts consider the following factors: "(1) [W]hether the stay applicant has made a strong showing that [it] is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Nken v. Holder*, 556 U.S. 418, 434 (2009) (citation omitted). For the same reasons as above, this Court should deny Defendants' motion to stay. Indeed, these reasons apply with even greater force with respect to the stay application given that Defendants, as the applicants, bear the burden of justifying extraordinary relief. This is particularly so given the irreparable harm Plaintiff States and public health writ large would suffer. *See id*. at 433 (recognizing that a "stay is not a matter of right, even if irreparable injury might otherwise result").

Defendants have not made a showing, let alone a strong showing, that they will succeed on the merits; on the contrary, Defendants simply gesture at *Department of Education v. California* without explaining why that case controls or why the claims at issue *in this case* entitle Defendants to adjudication by the Court of Federal Claims, instead of this Court. But more importantly, under the second and third factors, Plaintiff States will be irreparably injured by a stay, whereas Defendant HHS will not because it has a regulation to offset improperly paid funds. That same rationale weighs heavily in favor of Plaintiff States for the fourth factor—the public interest surely lies in receiving congressional funding allocations that Plaintiff States have received and expect to receive.

Finally, it is worth emphasizing that at no point have Defendants actually defended the legality of their actions here.

## CONCLUSION

For these reasons, Plaintiff States respectfully request that the Court deny the motion for reconsideration.

Respectfully submitted,

| | |
|---|---|
| **PHILIP J. WEISER**<br>Attorney General of Colorado<br><br>By: */s/ David Moskowitz*<br>David Moskowitz\*<br>*Deputy Solicitor General*<br>Joseph G. Michaels<br>*Assistant Solicitor General*<br>Sam Wolter\*<br>*Assistant Attorney General*<br>1300 Broadway, #10<br>Denver, CO 80203<br>(720) 508-6000<br>David.Moskowitz@coag.gov<br>Samuel.Wolter@coag.gov<br><br>*Counsel for the State of Colorado* | **PETER F. NERONHA**<br>Attorney General of Rhode Island<br><br>By: */s/ Sarah W. Rice*<br>Sarah W. Rice (RI Bar No. 10465)<br>*Deputy Chief, Public Protection Bureau*<br>*Assistant Attorney General*<br>Keith Hoffmann (RI Bar No. 9874)<br>*Chief of Policy*<br>*Assistant Attorney General*<br>Julia Harvey (RI Bar No. 10529)<br>*Special Assistant Attorney General*<br>150 South Main Street<br>Providence, RI 02903<br>(401) 274-4400, Ext. 2054<br>srice@riag.ri.gov<br>khoffmann@riag.ri.gov<br>jharvey@riag.ri.gov<br><br>*Counsel for the State of Rhode Island* |
| **ROB BONTA**<br>Attorney General of California<br><br>By: */s/ Crystal Adams*<br>Neli Palma\*<br>*Senior Assistant Attorney General*<br>Crystal Adams\*<br>Anna Rich\*\*<br>*Deputy Attorneys General*<br>1300 I Street<br>Sacramento, CA 95814<br>(916) 210-7522<br><br>*Counsel for the State of California* | **KEITH ELLISON**<br>Attorney General of Minnesota<br><br>By: */s/ Brian S. Carter*<br>Brian S. Carter\*<br>Jennifer Moreau\*<br>*Assistant Attorneys General*<br>445 Minnesota Street, Suite 1400<br>St. Paul, Minnesota, 55101<br>(651) 300-7403<br>Brian.Carter@ag.state.mn.us<br>Jennifer.Moreau@ag.state.mn.us<br><br>*Counsel for the State of Minnesota* |

| | |
|---|---|
| **NICHOLAS W. BROWN**<br>Attorney General of Washington<br><br>By: *s/ Ellen Range*<br>Ellen Range*<br>*Assistant Attorney General*<br>Office of the Washington State Attorney General<br>7141 Cleanwater Drive SW<br>P.O. Box 40111<br>Olympia, WA 98504-0111<br>(360) 709-6470<br>Ellen.Range@atg.wa.gov<br><br>Cristina Sepe*<br>*Deputy Solicitor General*<br>1125 Washington Street SE<br>PO Box 40100<br>Olympia, WA 98504-0100<br>(360) 753-6200<br>Cristina.Sepe@atg.wa.gov<br><br>*Counsel for the State of Washington* | **KRISTIN K. MAYES**<br>Attorney General of Arizona<br><br>By: */s/ Mary M. Curtin*<br>Mary M. Curtin*<br>*Senior Litigation Counsel*<br>Arizona Attorney General's Office<br>2005 North Central Avenue<br>Phoenix, Arizona 85004<br>(602) 542-3333<br>Mary.Curtin@azag.gov<br><br>*Counsel for the State of Arizona* |
| **WILLIAM TONG**<br>Attorney General of Connecticut<br><br>*/s/ Andrew Ammirati*<br>Andrew Ammirati*<br>*Assistant Attorney General*<br>165 Capitol Avenue<br>Hartford, CT 06106<br>Phone: (860) 808 5090<br>Andrew.Ammirati@ct.gov<br><br>*Counsel for the State of Connecticut* | **KATHLEEN JENNINGS**<br>Attorney General of Delaware<br><br>By: */s/ Vanessa L. Kassab*<br>Ian R. Liston**<br>*Director of Impact Litigation*<br>Vanessa L. Kassab**<br>*Deputy Attorney General*<br>Delaware Department of Justice<br>820 N. French Street<br>Wilmington, DE 19801<br>(302) 683-8899<br>vanessa.kassab@delaware.gov<br><br>*Counsel for the State of Delaware* |

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

*/s/ Samantha Hall*
Samantha Hall*
*Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
(202) 788-2081
Samantha.hall@dc.gov

*Counsel for the District of Columbia*

**KWAME RAOUL**
Attorney General of Illinois

By: /s/ John Hazinski
John Hazinski*
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 590-6944
john.hazinski@ilag.gov

*Counsel for the State of Illinois*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
David D. Day*
*Special Assistant to the Attorney General*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

**OFFICE OF THE GOVERNOR** *ex rel.* **ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

*/s/ Travis Mayo*
S. Travis Mayo*
*General Counsel*
Taylor Payne*
*Chief Deputy General Counsel*
Laura C. Tipton*
*Deputy General Counsel*
Kentucky Office of the Governor
700 Capitol Avenue, Suite 106
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
taylor.payne@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*

**AARON M. FREY**
Attorney General of Maine

By: */s/ Margaret Machaiek*
Margaret Machaiek*
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME  04333-0006
Tel.:  207-626-8800
Fax:  207-287-3145

*Counsel for the State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
*Chief State Trial Counsel*
Phoebe Lockhart*
Assistant Attorney General
1 Ashburton Pl.
Boston, MA  02108
(617.963.2277)
katherine.dirks@mass.gov
phoebe.lockhart@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ James C. Luh*
James C. Luh*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Jennifer M. Jackson*
Jennifer M. Jackson (P67126)*
Carl Hammaker (P81203)*
Assistant Attorneys General
Michigan Department of Attorney General
Attorneys for State of Michigan
525 W. Ottawa St.
Lansing, MI 48933-1067
517.335.7573
jacksonj5@michigan.gov
hammakerc@michigan.gov

*Counsel for the State of Michigan*

**AARON D. FORD**
Attorney General of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)*
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*

**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
asamant@nmdoj.gov
(505) 270-4332

*Counsel for the State of New Mexico*

**JEFF JACKSON**
Attorney General of North Carolina

By */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
*Associate Deputy Attorney General*
Laura Howard
*Chief Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*

**MATTHEW J. PLATKIN**
Attorney General of New Jersey

*/s/ Jessica L. Palmer*
Jessica L. Palmer*
Anaiis Gonzalez*
*Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-4607
Jessica.Palmer@law.njoag.gov
Anaiis.Gonzales@law.njoag.gov

*Counsel for the State of New Jersey*

**LETITIA JAMES**
Attorney General of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
*Special Counsel for Federal Initiatives*
Gina Bull*
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
(929) 638-0447
rabia.muqaddam@ag.ny.gov
gina.bull@ag.ny.gov

*Counsel for the State of New York*

**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Deanna J. Chang*
Deanna J. Chang*
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Deanna.J.Chang@doj.oregon.gov

*Counsel for the State of Oregon*

**JOSH SHAPIRO**
in his official capacity as Governor of the Commonwealth of Pennsylvania

Jennifer Selber
*General Counsel*

*/s/ Aimee D. Thomson*
Aimee D. Thomson*
Jonathan D. Koltash*
*Deputy General Counsel*
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov
jokoltash@pa.gov

*Counsel for Governor Josh Shapiro*

*Admitted pro hac vice
**Pending pro hac vice applications to be filed

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Lynn K. Lodahl*
Lynn K. Lodahl*
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6219
lodahllk@doj.state.wi.us

*Counsel for the State of Wisconsin*

## CERTIFICATE OF SERVICE

      I hereby certify that, on April 10, 2025, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rules Gen 304.

                                                 /s/ David Moskowitz
                                                 *Deputy Solicitor General*