**UNITED STATES DISTRICT COURT**
**DISTRICT OF RHODE ISLAND**

| | |
|---|---|
| STATE OF COLORADO, *et al.*,<br><br>        Plaintiffs,<br><br>    *v.*<br><br>U.S. DEPARTMENT OF HEALTH AND<br>HUMAN SERVICES, *et al.*,<br><br>        Defendants. | Civil Action No.<br>25cv121-MSM-AEM |

**PLAINTIFFS' BRIEF IN SUPPORT OF DISCOVERY**

**INTRODUCTION**

Defendants terminated more than $11 billion in congressionally appropriated public-health funding—critical funding supporting epidemiology, disease surveillance, and emergency preparedness. Defendants have offered multiple, conflicting explanations for this sweeping policy decision: the pandemic was "over" (ECF 69 at 1); concerns about "DEI" (*id.*); perceived delays in state spending (ECF 68 at 26); or potential reallocation of funds to other priorities (*id.* at 19, 32).[1] Yet despite the magnitude of these cuts, Defendants produced an Administrative Record limited to grant documentation (notices of funding opportunity, program descriptions, notices of awards, and grant guidance) and termination notices. *See* Ex. 1, Administrative Record Index. Markedly absent were materials about the policy decision itself, including who made the decision and what materials informed the decision. This decision frames each of the three issues the Court directed the parties to address (*see* July 20, 2026 Text Order), and these omissions underscore Plaintiffs' need for discovery.

First, Plaintiffs are entitled to discovery on their constitutional and equitable *ultra vires* claims. These claims challenge Defendants' attempt to impound billions in appropriated public health funds in violation of separation-of-powers principles and the Spending Clause. They do not depend on the Administrative Record Defendants chose to produce. Courts routinely allow discovery on constitutional and other non-APA claims—even when APA claims are also present. This is particularly true where, as here, (1) constitutional and non-APA claims raise distinct legal and factual issues from APA claims, and (2) the agency has not produced the materials necessary to understand a challenged policy decision. Discovery is especially appropriate because Defendants' primary defense is that the Court lacks jurisdiction over the APA claims—an

---

[1] All ECF citations that include a page number reference the document's page numbering.

argument that, if successful, would leave only Plaintiffs' constitutional and *ultra vires* claims, none of which would be based on an administrative record.

Second, discovery to complete and supplement the record is necessary for Plaintiffs' APA claims. The record is devoid of any documents reflecting who made this multi-billion dollar policy decision, what factors they considered or information they reviewed, or what instructions they provided to the Department of Health and Human Services (HHS) components to implement the decision. This easily meets Plaintiffs' burden to show the record is incomplete. The Administrative Record lacks the materials required for this Court to evaluate if Defendants engaged in reasoned decision-making.

Third, Plaintiffs seek to serve 10 interrogatories (Ex. 2) and 8 requests for production (Ex. 3) that are tailored to filling these gaps. If Defendants' responses indicate the need for follow-on discovery (e.g., depositions), Plaintiffs will file a status report identifying next steps.

## ARGUMENT

### I.      The Court should permit discovery on the constitutional and *ultra vires* claims.

Courts regularly permit discovery on constitutional and equitable *ultra vires* claims, even when APA claims are simultaneously pending. *Am. Fed'n of Gov't Emps. v. Trump*, 155 F.4th 1082, 1093 (9th Cir. 2025) ("Review of an ultra vires challenge would not be limited to an administrative record."); *Bos. All. of Gay, Lesbian, Bisexual & Transgender Youth v. U.S. Dep't of Health & Hum. Servs.*, 557 F. Supp. 3d 224 (D. Mass. 2021) ("The Court's scope of review on the constitutional claims . . . is not limited to the administrative record.").

Constitutional and *ultra vires* claims are not brought pursuant to the APA cause of action; the standard of review is not governed by the APA; and they do not rely upon the APA waiver of sovereign immunity. On their own, constitutional and *ultra vires* claims are clearly subject to the

2

same discovery available for any other case under the Federal Rules of Civil Procedure. The mere presence of an APA claim does not change that outcome, especially here where Defendants' central argument is that the Court lacks jurisdiction over the APA claims. ECF 68 at 9-14. Should Defendants succeed on these arguments here or on appeal, that would leave only Plaintiffs' constitutional and *ultra vires* claims, none of which would be based on the administrative record. The Supreme Court addressed this situation in *Webster v. Doe*, 486 U.S. 592, 601 (1988). There, the Court concluded that the plaintiff's claims were precluded from review under the APA but nonetheless permitted discovery to proceed on the remaining constitutional claims. *Id.* at 604. The defendant agency argued that allowing discovery would entail unnecessary "rummaging" into its affairs, but the Court rejected that argument, noting that such "inquiry and discovery" were routine parts of adjudicating constitutional claims and that district courts possessed "the latitude to control any discovery process" for such claims. *Id.* The same holds here: Plaintiffs are entitled to discovery on their constitutional claims, especially given Defendants' contention that this Court lacks jurisdiction over their APA claims.[2]

Discovery on constitutional claims is particularly appropriate in this case where Plaintiffs' "constitutional claims d[o] not totally overlap with their APA claim." *Am. Ass'n of Univ. Professors v. Rubio*, 802 F. Supp. 3d 120, 190 n.46 (D. Mass. 2025). Here, Plaintiffs' APA

---

[2] Defendants have suggested that discovery is unnecessary based on the constitutional avoidance doctrine articulated in *Ashwander v. Tenn. Valley Auth.*, 297 U.S. 288, 347 (1936). *See* ECF 107 at 5. But constitutional avoidance is not a basis to deny discovery. *See, e.g.*, *Jud. Watch, Inc. v. Nat'l Energy Pol'y Dev. Grp.*, 219 F. Supp. 2d 20, 54 (D.D.C. 2002) (rejecting as "conclusory and belied by precedent" defendant federal officials' argument that the court should deny discovery because plaintiffs' claims would raise sufficiently troubling constitutional problems to warrant application of the well-settled canon of constitutional avoidance). Further, Defendants' assertion regarding constitutional avoidance is at odds with their repeated arguments that the Court lacks jurisdiction over Plaintiffs' APA claims, ECF 68 at 9-14, in which case the doctrine of constitutional avoidance would be inapplicable. And regardless, it would not bar discovery on Plaintiffs' *ultra vires* claim. *Am. Fed'n of Gov't Emps.*, 155 F.4th at 1093 ("Review of an ultra vires challenge would not be limited to an administrative record.").

claims allege that Defendants' policy decision and implementation were contrary to law because they exceeded statutory authority and violated statutory and regulatory requirements. *See, e.g.*, ECF 59 ("Am. Compl.") ¶¶ 3-4, 98-104. Likewise, Plaintiffs allege the policy decision and implementation were arbitrary and capricious for failure to engage in reasoned decision-making. *Id.* ¶¶ 5, 134-142. These are conventional APA claims. By contrast, Plaintiffs' constitutional claims focus on Defendants' motivations — seeking to override "the careful judgments of Congress" by impounding the funds in violation of "separation-of-powers constraints." *Id.* at ¶ 150. Further, Plaintiffs allege that Defendants "altered the terms upon which grants were obligated and disbursed" in violation of the Spending Clause. *Id.* at ¶¶ 157-158.

Put differently, the constitutional and *ultra vires* claims address distinct components of Defendants' unlawful conduct. *United Farm Workers v. Noem*, No. 1:25-CV-00246-JLT-CDB, 2025 WL 1490131 (E.D. Cal. May 23, 2025) ("To determine whether claims fundamentally overlap, a court must examine the particular facts of the claims involved and the discovery requested.") (citation modified). As a federal agency, HHS "can spend, award, or suspend money based only on the power Congress has given to them–they have no other spending power." *New York v. Trump*, 769 F. Supp. 3d 119, 127 (D.R.I. 2025). As a result, Defendants' motivations in making the policy decision to terminate public health funding are directly relevant to Plaintiffs' claims that Defendants violated separation-of-powers principles and sought to impound funding in violation of the Spending Clause, which bars the Executive Branch from "refus[ing] to disperse [] federal grants . . . without congressional authorization." *City & Cnty. of San Francisco v. Trump*, 897 F.3d 1225, 1231 (9th Cir. 2018); *see also Biden v. Nebraska*, 600 U.S. 477, 505 (2023) ("Among Congress's most important authorities is its control of the purse."). Plaintiffs' proposed discovery is aimed at uncovering these motivations, including by probing

Defendants' communications both internally and with the Department of Governmental Efficiency (DOGE); by identifying decisionmakers and the factors they considered; and by shedding light on efforts by Defendants to avoid spending appropriations.

Finally, discovery is needed here because of the significant deficiencies in Defendants' Administrative Record. *See infra* at 5-8. Where "the administrative record is demonstrably incomplete, the presence of a constitutional claim makes it all the more imperative that the record be completed to include the materials relied upon by all agencies and officials who participated in the ultimate decision," which includes "access to the sequence of events and the contemporaneous communications of agency decisionmakers." *Authors Guild v. Nat'l Endowment for the Humans.*, No. 1:25-cv-03657-CM, 2025 WL 3678097 (S.D.N.Y. Dec. 18, 2025).

## II.    Discovery is also appropriate to complete the Administrative Record.

Even if this case were limited only to Plaintiffs' APA claims, discovery would still be appropriate to complete and supplement the Administrative Record. "Federal administrative agencies are required to engage in reasoned decisionmaking." *Michigan v. E.P.A.*, 576 U.S. 743, 750 (2015) (citation modified). "The reasoned explanation requirement of administrative law . . . is meant to ensure that agencies offer genuine justifications for important decisions, reasons that can be scrutinized by courts and the interested public." *Dep't of Com. v. New York*, 588 U.S. 752, 785 (2019). To enable such scrutiny, a court's review of agency action under the APA is generally based on "the existing administrative record." *Atieh v. Riodan,* 727 F.3d 73, 76 (1st Cir. 2013). The record must contain "all documents and materials directly or indirectly considered by the agency." *New York v. McMahon*, 826 F. Supp. 3d 184, 194 (D. Mass. 2026) (quotation omitted)*.* "When a showing is made that the record may not be complete, limited discovery is appropriate to resolve that question." *Id.* at 195 (citation modified).

5

Plaintiffs challenge Defendants' overarching policy decision to terminate $11 billion in congressionally appropriated public health funding. *See, e.g.*, Am. Compl. ¶¶ 3-5. But the Administrative Record that Defendants produced does not contain a single document, let alone all records, considered directly or indirectly in making that policy decision. *See McMahon*, 826 F. Supp. 3d at 194. Instead, their record is limited to grant documentation, such as notices of funding opportunity, program descriptions, notices of awards, and related grant guidance, as well as post hoc termination notices. *See* Ex. 1.

By any reasonable measure, Defendants' certified administrative record is not just incomplete—it is a "sham." *See, e.g.*, *Am. Fed'n of Gov't Emps. v. Trump*, 799 F. Supp. 3d 967, 979 (N.D. Cal. 2025) (describing administrative record as a "sham," including because it relied on "post hoc statements" and "pages of irrelevant documents" but was "silent" on the "calls, discussions, documents, and decisions that underpin" the government's actions), appealed on other grounds, No. 25-5875 (9th Cir.). It omits any internal or inter-agency materials directly or indirectly considered by Defendants in making the decision to terminate $11 billion in public health funding. Nor does the record provide any contemporaneous documentation to explain or justify any of Defendants' shifting rationales for these decisions or instructions to component agencies as to how to implement the decision. The most the record contains is post-hoc, cursory boilerplate contained in the grant termination notices that Defendants used as a means to paper over their prior policy decision. *See, e.g.*, *McMahon*, 826 F.Supp.3d at 199 (ordering supplementation of record where "[a]s the AR currently stands, there is virtually *no* reasoning backing the agency's decision-making process reflected in the record"); *Authors Guild*, 2025 WL 3678097 at *9 (explaining that when the record "is barren of a reasoned explanation linking the facts found to the choice made, review on the existing record collapses . . . because it lacks the

6

materials necessary to assess whether the agency engaged in reasoned decision-making at all"). Merely collecting routine grant documentation with no bearing on the decision-making process, such as "Program Descriptions" and "Application Guidance," *see* Ex. 1, provides no insight into the factors Defendants considered (or failed to consider) in reaching this policy decision. And it strains credulity that no additional correspondence or analysis exists to support a decision of this magnitude. These glaring omissions rebut any presumption that Defendants' submissions constitute the "whole administrative record," including "everything that was before the agency pertaining to the merits of its decision," as required for the Court to adjudicate Plaintiffs' claims. *Doe v. Trump*, No. 3:19-CV-1743-SI, 2020 WL 1853657, at *2 (D. Or. Apr. 13, 2020); *see also Illinois v. Vought*, No. 26-CV-1566, 2026 WL 962382, at *1 (N.D. Ill. Feb. 25, 2026) (granting the plaintiffs' motion for expedited discovery where "[t]he administrative record filed by the government does not adequately explain how plaintiffs found themselves subject to the specific grant reviews leading to the notifications of grant termination included in the administrative record").

At bottom, Defendants pretend that the agency-wide policy decision never happened, and that one morning multiple HHS component agencies all decided at the exact same time to terminate $11 billion in public health funding. Defendants have failed to disclose basic facts from the beginning, refusing in prior filings and hearings to reveal even the most rudimentary information about this policy decision, including who made the decision. *See, e.g.*, ECF 77 at 89:11-18; ECF 80 at 3-15 (referring to HHS's decisions and terminations, without identifying responsible individuals). Plaintiffs have clearly demonstrated "reasonable, non-speculative grounds to believe that materials considered in the decision-making process are not included in

7

the record." *McMahon*, 826 F. Supp. 3d at 195 (quotation omitted). They should thus be permitted to conduct discovery to complete and supplement the administrative record.

### III.   Plaintiffs' proposed discovery is limited in scope.

Plaintiffs' proposed discovery requests are carefully tailored to obtain core factual information that is absent from Defendants' Administrative Record and that is essential to adjudicate Plaintiffs' separation-of-powers, Spending Clause, APA, and *ultra vires* claims. *See* Exs. 2 and 3.

Interrogatories 1-4 seek foundational information that the Administrative Record does not provide. *See* Ex. 2. These interrogatories focus on (1) how the policy decision was made to terminate public health funding, (2) what analyses Defendants conducted regarding impacted grantees, (3) what analyses Defendants conducted regarding congressional appropriations and statutory obligations, and (4) whether and how Defendants reallocated terminated funds to other programs. This information is directly relevant to Plaintiffs' constitutional and *ultra vires* claims, which require evidence of Defendants' motivations. It is also necessary to fill in holes in the Administrative Record, which should have included all materials directly or indirectly considered in reaching the decision.

Interrogatories 5-10 seek information about who made the policy decision to terminate public health funding, how they communicated about it, and whether their communications and documentation were preserved. These interrogatories address two critical issues: (1) decisionmaker identification and contemporaneous communications, which are necessary to evaluate whether Defendants engaged in reasoned decision-making under the APA and are highly relevant to Plaintiffs' constitutional claims concerning improper motives; and (2) record-preservation practices, which are necessary to determine whether Defendants failed to maintain records or destroyed relevant materials. This latter information is vital to determining whether

depositions are necessary. For example, in numerous prior cases, discovery revealed that decisionmakers were utilizing Signal in order to avoid preserving records. *See, e.g.*, *Am. Fed'n of Gov't Emps. v. Trump*, No. 3:25-cv-03698-SI (N.D. Cal.), ECF No. 380 (ordering preservation of Signal communications after discovery revealed high-level government officials using Signal for official duties and setting messages to disappear); *Am. Oversight v. Hegseth*, 788 F. Supp. 3d 14, 26-27 (D.D.C. 2025) (finding that plaintiff is "likely to succeed in showing" defendant administration official had "[Federal Records Act]-noncompliant Signal chats" and "neglected to fulfill" recordkeeping obligations under that statute); *Citizens for Responsibility and Ethics in Washington v. U.S. DOGE Service*, 769 F. Supp. 3d 8, 30-31 (D.D.C. 2025) (ordering preservation of Signal communications where "USDS employees acknowledged using Signal, an encrypted messaging app with an auto-delete function," including for official duties).

Plaintiffs' Requests for Production largely track and request documents pertaining to these same topics. *See* Ex. 3. Request for Production No. 8 also specifically asks for documents or communications with the DOGE regarding the decision to terminate public health funding.[3] At the time of the decision, DOGE's own website listed the thousands of HHS grants covered by this $11 billion decision on its "Wall of Receipts," purportedly accounting at that time for over 1/3 of all grant "savings" across the federal government. Dep't of Government Efficiency, *Savings* (updated March 24, 2025), available from the Internet Archive at https://web.archive.org/web/20250328002030/https://doge.gov/savings. As another district court correctly recognized, "the administrative record is not complete," and discovery is warranted, where DOGE participated in the decision-making process to terminate funding, yet the

---

[3] The discovery requests also define "Defendants" and "you" to include individuals in the Department of Government Efficiency (DOGE) acting on Defendants' behalf.

government failed to include any DOGE-related documents or communications in the administrative record. *Authors Guild*, 2025 WL 3678097 at *9.

These discovery requests are proportional and tailored to the missing information needed to adjudicate Plaintiffs' claims. They are focused on the challenged overarching policy decision, the analyses underlying it, the individuals involved, and the contemporaneous communications that are absent from the record Defendants provided.

Depending on Defendants' responses to these requests, Plaintiffs may obtain all necessary information from written discovery alone or may need limited follow-on discovery, such as depositions. Plaintiffs propose to file a further status report once initial discovery, including any privilege issues, is completed and resolved. That status report will identify proposed next steps, including any additional discovery.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court order that: 1) Plaintiffs are entitled to discovery on their constitutional and *ultra vires* claims and that record-completion and supplementation discovery is warranted given the clear gaps in the produced Administrative Record, and 2) Defendants are required to respond to Plaintiffs' interrogatories (Ex. 2) and requests for production (Ex. 3); and 3) the parties file a status update, addressing any unresolved discovery issues and whether any additional discovery is warranted, within 30 days after completion of Defendants' responses to the interrogatories and requests for production, including the resolution of any discovery and privilege disputes.

Dated: August 3, 2026

Respectfully submitted,

**PHILIP J. WEISER**
Attorney General of Colorado

By: */s/ David Moskowitz*
David Moskowitz*
*Deputy Solicitor General*
Sam Wolter*
*Assistant Attorney General*
1300 Broadway, #10
Denver, CO 80203
(720) 508-6000
David.Moskowitz@coag.gov
Samuel.Wolter@coag.gov

*Counsel for the State of Colorado*

**ROB BONTA**
Attorney General of California

By: */s/ Crystal Adams*
Neli Palma*
*Senior Assistant Attorney General*
Crystal Adams*
Anna Rich*
*Deputy Attorneys General*
1515 Clay Street, 20th Floor
Oakland, CA 94612
(510) 879-3428

*Counsel for the State of California*

**PETER F. NERONHA**
Attorney General of Rhode Island

By: */s/ Sarah W. Rice*
Sarah W. Rice (RI Bar No. 10465)
*Deputy Chief, Public Protection Bureau*
*Assistant Attorney General*
150 South Main Street
Providence, RI 02903
(401) 274-4400, Ext. 2054
srice@riag.ri.gov

*Counsel for the State of Rhode Island*

**KEITH ELLISON**
Attorney General of Minnesota

By: */s/ Brian S. Carter*
Brian S. Carter*
Jennifer Moreau*
*Assistant Attorneys General*
445 Minnesota Street, Suite 1400
St. Paul, Minnesota, 55101
(651) 300-7403
Brian.Carter@ag.state.mn.us
Jennifer.Moreau@ag.state.mn.us

*Counsel for the State of Minnesota*

11

**NICHOLAS W. BROWN**
Attorney General of Washington

By: */s/ Ellen Range*
Ellen Range*
*Assistant Attorney General*
Office of the Washington State Attorney General
7141 Cleanwater Drive SW
P.O. Box 40111
Olympia, WA 98504-0111
(360) 709-6470
Ellen.Range@atg.wa.gov
Cristina Sepe*
*Deputy Solicitor General*
1125 Washington Street SE
PO Box 40100
Olympia, WA 98504-0100
(360) 753-6200
Cristina.Sepe@atg.wa.gov

*Counsel for the State of Washington*

**WILLIAM TONG**
Attorney General of Connecticut

By: */s/ Andrew Ammirati*
Andrew Ammirati*
*Assistant Attorney General*
165 Capitol Avenue
Hartford, CT 06106
Phone: (860) 808 5090
Andrew.Ammirati@ct.gov

*Counsel for the State of Connecticut*

**BRIAN L. SCHWALB**
Attorney General for the District of Columbia

By: */s/ Samantha Miyahara Hall*
Samantha Miyahara Hall*
*Assistant Attorney General*
Public Advocacy Division
Office of the Attorney General for the District of Columbia
400 Sixth Street, N.W.
Washington, D.C. 20001
(202) 788-2081
Samantha.hall@dc.gov

*Counsel for the District of Columbia*

**KRISTIN K. MAYES**
Attorney General of Arizona

By: */s/ Mary M. Curtin*
Mary M. Curtin*
*Senior Litigation Counsel*
Arizona Attorney General's Office
2005 North Central Avenue
Phoenix, Arizona 85004
(602) 542-3333
Mary.Curtin@azag.gov

*Counsel for the State of Arizona*

**KATHLEEN JENNINGS**
Attorney General of Delaware

By: */s/ Vanessa L. Kassab*
Vanessa L. Kassab*
*Deputy Attorney General*
Delaware Department of Justice
820 N. French Street
Wilmington, DE 19801
(302) 683-8899
vanessa.kassab@delaware.gov

*Counsel for the State of Delaware*

**ANNE E. LOPEZ**
Attorney General of Hawaiʻi

By: */s/ Kalikoʻonālani D. Fernandes*
Kalikoʻonālani D. Fernandes*
*Solicitor General*
425 Queen Street
Honolulu, HI 96813
(808) 586-1360
kaliko.d.fernandes@hawaii.gov

*Counsel for the State of Hawaiʻi*

12

**KWAME RAOUL**
Attorney General of Illinois

By: */s/ Rebekah Newman*
Paul Berks*
*Complex Litigation Counsel*
Rebekah Newman*
*Assistant Attorney General*
Office of the Illinois Attorney General
115 S. LaSalle St.
Chicago, IL 60603
(773) 590-6944
rebekah.newman@ilag.gov

*Counsel for the State of Illinois*


**AARON M. FREY**
Attorney General of Maine

By: */s/ Margaret Machaiek*
Margaret Machaiek*
*Assistant Attorney General*
Office of the Attorney General
6 State House Station
Augusta, ME 04333-0006
Tel.: 207-626-8800
Fax: 207-287-3145

*Counsel for the State of Maine*

**ANDREA JOY CAMPBELL**
Attorney General of Massachusetts

By: */s/ Katherine B. Dirks*
Katherine B. Dirks*
*Chief State Trial Counsel*
Phoebe Lockhart*
Assistant Attorney General
1 Ashburton Pl.
Boston, MA 02108
(617.963.2277)
katherine.dirks@mass.gov
phoebe.lockhart@mass.gov

*Counsel for the Commonwealth of Massachusetts*

**OFFICE OF THE GOVERNOR *ex rel.* ANDY BESHEAR**
in his official capacity as Governor of the Commonwealth of Kentucky

By: */s/ Travis Mayo*
S. Travis Mayo*
*General Counsel*
Laura C. Tipton*
*Deputy General Counsel*
Kentucky Office of the Governor
501 High Street
Frankfort, KY 40601
(502) 564-2611
travis.mayo@ky.gov
laurac.tipton@ky.gov

*Counsel for the Office of the Governor*


**ANTHONY G. BROWN**
Attorney General of Maryland

By: */s/ James C. Luh*
James C. Luh*
Senior Assistant Attorney General
Office of the Attorney General
200 Saint Paul Place, 20th Floor
Baltimore, Maryland 21202
410-576-6411
jluh@oag.state.md.us

*Counsel for the State of Maryland*

**DANA NESSEL**
Attorney General of Michigan

By: */s/ Jennifer M. Jackson*
Jennifer M. Jackson (P67126)*
Carl Hammaker (P81203)*
Assistant Attorneys General
Michigan Department of Attorney General
Attorneys for State of Michigan
525 W. Ottawa St.
Lansing, MI 48933-1067
517.335.7573
jacksonj5@michigan.gov
hammakerc@michigan.gov

*Counsel for the State of Michigan*

13

**AARON D. FORD**
Attorney General of Nevada

By: */s/ Heidi Parry Stern*
Heidi Parry Stern (Bar. No. 8873)*
*Solicitor General*
Office of the Nevada Attorney General
1 State of Nevada Way, Ste. 100
Las Vegas, NV 89119
HStern@ag.nv.gov

*Counsel for the State of Nevada*


**RAÚL TORREZ**
Attorney General of New Mexico

By: */s/ Anjana Samant*
Anjana Samant*
*Deputy Counsel*
New Mexico Department of Justice
408 Galisteo Street
Santa Fe, New Mexico 87501
asamant@nmdoj.gov
(505) 270-4332

*Counsel for the State of New Mexico*


**JEFF JACKSON**
Attorney General of North Carolina

By */s/ Daniel P. Mosteller*
Daniel P. Mosteller*
*Associate Deputy Attorney General*
North Carolina Department of Justice
PO Box 629
Raleigh, NC 27602
919-716-6026
dmosteller@ncdoj.gov

*Counsel for State of North Carolina*


**JENNIFER DAVENPORT**
Attorney General of New Jersey

By: */s/ Andrea I. Cavazos*
Andrea I. Cavazos**
Anaiis Gonzalez*
*Deputy Attorneys General*
Office of the Attorney General
124 Halsey Street, 5th Floor
Newark, NJ 07101
(609) 696-5276
Andrea.Cavazos@law.njoag.gov
Anaiis.Gonzalez@law.njoag.gov

*Counsel for the State of New Jersey*


**LETITIA JAMES**
Attorney General of New York

By: */s/ Rabia Muqaddam*
Rabia Muqaddam*
*Chief Counsel for Federal Initiatives*
Gina Bull*
*Assistant Attorney General*
28 Liberty St.
New York, NY 10005
(212) 416-8883
rabia.muqaddam@ag.ny.gov
gina.bull@ag.ny.gov

*Counsel for the State of New York*


**DAN RAYFIELD**
Attorney General of Oregon

By: */s/ Deanna J. Chang*
Deanna J. Chang*
*Senior Assistant Attorney General*
100 SW Market Street
Portland, OR 97201
(971) 673-1880
Deanna.J.Chang@doj.oregon.gov

*Counsel for the State of Oregon*

14

**JOSH SHAPIRO**
in his official capacity as Governor of the Commonwealth of Pennsylvania

Jennifer Selber
*General Counsel*

By: */s/ Aimee D. Thomson*
Aimee D. Thomson*
Jonathan D. Koltash*
*Deputy General Counsel*
Pennsylvania Office of the Governor
30 N. 3rd St., Suite 200
Harrisburg, PA 17101
(223) 234-4986
aimeethomson@pa.gov
jokoltash@pa.gov

*Counsel for Governor Josh Shapiro*


*Admitted pro hac vice
**Pro hac vice forthcoming

**JOSHUA L. KAUL**
Attorney General of Wisconsin

By: */s/ Lynn K. Lodahl*
Lynn K. Lodahl*
*Assistant Attorney General*
17 West Main Street
Post Office Box 7857
Madison, Wisconsin 53707-7857
(608) 264-6219
lodahllk@doj.state.wi.us

*Counsel for the State of Wisconsin*


## CERTIFICATE OF SERVICE

I hereby certify that, on August 3, 2026, I filed the foregoing document through this Court's Electronic Case Filing (ECF) system, thereby serving it upon all registered users in accordance with Federal Rule of Civil Procedure 5(b)(2)(E) and Local Rules Gen 304.


/s/ David Moskowitz
*Deputy Solicitor General*


15